**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **INTELLECTUAL VENTURES II LLC,** | |
| **Plaintiff,** | |
| **v.** | |
| **FEDEX CORP., FEDERAL EXPRESS CORP., FEDEX GROUND PACKAGE SYSTEM, INC., FEDEX FREIGHT, INC., FEDEX CUSTOM CRITICAL INC., FEDEX OFFICE AND PRINT SERVICES, INC., and GENCO DISTRIBUTION SYSTEM, INC.,** | **Civil Action No. 2:16-cv-00980-JRG**<br><br>**JURY TRIAL DEMANDED** |
| **Defendants.** | |

**MOTION TO TRANSFER**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     FACTS ........................................................................................................... 3

III.    LEGAL STANDARD...................................................................................... 7

IV.     ARGUMENT ................................................................................................. 8

        A.      This Action Could Have Been Filed in the Western District of Tennessee............ 8

        B.      Private-Interest Factors Favor Transfer ................................................. 8

                1.      Relative Ease of Access to Sources of Proof ............................... 8

                2.      Availability of Compulsory Process ........................................ 9

                3.      Cost of Attendance for Willing Witnesses................................ 10

                4.      Other Practical Problems ....................................................... 11

        C.      Public-Interest Factors ......................................................................... 13

                1.      Administrative Difficulties Flowing From Court Congestion .................. 13

                2.      Local Interest in Having Localized Interests Decided at Home .............. 14

                3.      Familiarity of the Forum with the Law and Avoidance of
                        Unnecessary Problems of Conflict of Laws........................................ 15

V.      CONCLUSION............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*DietGoal Innovations LLC v. Time Inc.*,
　No. 2:12-cv-337, Dkt. No. 61 (E.D. Tex. Mar. 25, 2013) ......................................................13

*In re EMC Corp.*,
　501 F. App'x 973 (Fed. Cir. 2013) .........................................................................................12

*Eolas Techs., Inc. v. Adobe Sys., Inc.*,
　2010 WL 3835762 (E.D. Tex. Sept. 28, 2010), *aff'd*, *In re Google Inc.*, 412 F.
　App'x 295 (Fed. Cir. 2011)......................................................................................................12

*In re Genentech*,
　566 F.3d 1338 (Fed. Cir. 2009)...................................................................................... *passim*

*Hanby v. Shell Oil Co.*,
　144 F. Supp. 2d 673 (E.D. Tex. 2001) ......................................................................................8

*Hertz Corp. v. Friend*,
　559 U.S. 77 (2010).....................................................................................................................2

*In re Hoffman-La Roche, Inc.*,
　587 F.3d 1333 (Fed. Cir. 2009).........................................................................................1, 14

*Innovative Global Sys. v. OnStar LLC*,
　No. 6:10-cv-574, 2012 U.S. Dist. LEXIS 114504 (E.D. Tex. Feb. 14 2012).........................14

*Intellectual Ventures I LLC et al. v. Sally Beauty Holdings, Inc. et al*,
　No. 2:15-cv-01414 (E.D. Tex., February 26, 2016) ...............................................................12

*Intellectual Ventures I LLC v. FTD Companies, Inc.*,
　No. 6:16-cv-00195 (E.D. Tex. Jun. 6, 2016) ..........................................................................12

*IPVenture, Inc. v. FedEx Corp., et al.*,
　No. 4:11-cv-05467 (N.D. Cal. Nov. 4. 2011) ......................................................................2, 5

*IPVenture, Inc. v. FedEx Corp., et al.*,
　No. 4:14-cv-04894 (N.D. Cal. Nov. 4, 2014) ......................................................................2, 5

*In re Microsoft Corp.*,
　630 F.3d 1361 (Fed. Cir. 2011)................................................................................................8

*In re Morgan Stanley*,
　417 F. App'x. 947 (Fed. Cir. 2011) ........................................................................................13

*Neil Bros. v. World Wide Lines, Inc.*,
   425 F. Supp. 2d 325 (E.D.N.Y. 2006) ...........................................................................9, 10

*Network Prot. Scis., LLC v. Juniper Networks, Inc.*,
   No. 2:10-CV-224, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ...............................................9

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009)...........................................................................................7, 15

*Promote Innovation LLC v. Schering Corp.*,
   No. 2:10-cv-248, 2011 WL 665817 (E.D. Tex. Feb. 14, 2011).................................................10

*Refined Recommendation Corp. v. Netflix, Inc.*,
   No. 07-CV-04981, 2008 WL 474106 (D.N.J. Feb. 15, 2008) ...............................................14

*Ronald A. Katz Tech. Licensing, L.P. v. Am. Airlines, Inc., et al.*,
   No. 2:06-cv-0034 (E.D. Tex. Dec. 18, 2014 (Motion, D.I. No. 106); Apr. 20,
   2015 (Order, D.I. No. 117)) ....................................................................................................3

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988)...................................................................................................................7

*In re TS Tech*,
   551 F.3d 1315 (Fed. Cir. 2008)....................................................................................8, 9, 14

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)..............................................................................................................7, 8

*In re Verizon Bus. Network Servs., Inc.*,
   635 F.3d 559 (Fed. Cir. 2011)................................................................................................12

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010)..............................................................................................13

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ........................................................................................ *passim*

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) (en banc) ........................................................................ *passim*

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010)..........................................................................2, 8, 11, 12

**Federal Statutes**

28 U.S.C. § 1391 ............................................................................................................................8

28 U.S.C. § 1400(b) .......................................................................................................................8

28 U.S.C. § 1404(a) .............................................................................................................. *passim*

**Rules**

Federal Rule of Civil Procedure 45(c)(1)(B)(ii) ...............................................................9

## I.      INTRODUCTION

Defendants FedEx Corp., Federal Express Corp., FedEx Ground Package System, Inc., FedEx Freight, Inc., FedEx Custom Critical Inc., FedEx Office and Print Services, Inc., and GENCO Distribution System, Inc. (collectively, "Defendants") respectfully move the Court under 28 U.S.C. § 1404(a) to transfer this patent infringement action to the United States District Court for the Western District of Tennessee, Memphis Division.

Because of its significant connections to this case, the Western District of Tennessee is the most appropriate forum to decide this matter.  FedEx Corp. and Federal Express Corp. are headquartered in Memphis, Tennessee, a venue in which the action could have been brought.  No named FedEx subsidiary other than FedEx Office and Print Services, Inc. ("FedEx Office") is headquartered in this District, and FedEx Office should not even be a party to this case. The services and technologies identified in the Complaint are largely based in the Western District of Tennessee, which is also where employees of the Defendants with relevant information reside.  Most, if not all, Defendants' fact-witness depositions are likely to occur in the Western District of Tennessee.  Most, if not all, expected Defendant trial witnesses are likely to reside in the Western District of Tennessee.  The Western District of Tennessee has absolute subpoena power over these likely witnesses, and is a more convenient location for trial.  Significantly, it is also the forum with the greatest interest in the outcome.  By contrast, this case has "no relevant factual connection to the Eastern District of Texas."  *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).  There are no relevant witnesses, documents, or information located here.  And, there is no local interest in deciding this case in Marshall, Texas.

In an attempt to tie this case to the Eastern District of Texas, Plaintiff Intellectual Ventures II LLC ("IV2") named FedEx Corp.'s subsidiary FedEx Office as a defendant.  FedEx

Office is headquartered in Plano, Texas.  IV2's complaint, however, does not implicate FedEx Office in any of the allegedly infringing actions, as IV2 cannot in good faith do.  FedEx Office, acquired as Kinko's by FedEx Corp. in 2004, operates a chain of retail photocopying and office service and supply outlets.  Although customers can ship packages of FedEx's shipping subsidiaries from FedEx Office locations, ***FedEx Office is not responsible for developing, operating, managing, maintaining, and/or servicing any of the FedEx shipping technologies named in the Complaint***.  FedEx Office employees at its Plano headquarters or in its retail outlets have no technical knowledge of the accused systems and have no significance in this case.  Thus, their presence in the Eastern District of Texas cannot outweigh the factors supporting transfer.

Tellingly, Plaintiff IV2 failed to name FedEx Corporate Services, Inc. ("FedEx Services") as a defendant, even though Plaintiff's outside counsel is well aware that FedEx Services is largely responsible for development of accused technologies, such as SenseAware. *See IPVenture, Inc. v. FedEx Corp., et al.*, No. 4:11-cv-05467, D.I. 1 (N.D. Cal. Nov. 4. 2011); *IPVenture, Inc. v. FedEx Corp., et al.*, No. 4:14-cv-04894, D.I. 1 (N.D. Cal. Nov. 4, 2014). FedEx Services is also based in the Western District of Tennessee, where it maintains documents and employs individuals who are knowledgeable regarding the accused FedEx technologies. *See* Ex. 1 (Decl. of J. Ferguson) at ¶¶ 14-18, 23.  IV2's deliberate attempt to manipulate venue by including FedEx Office and excluding FedEx Services should not be countenanced by this Court. *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (courts should "ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempts at manipulation") (citing *Hertz Corp. v. Friend*, 559 U.S. 77 (2010)).

Defendants note that under similar circumstances this Court recently granted FedEx's motion to transfer to Tennessee, highlighting many of the same facts, where patents were asserted against FedEx's Memphis-based technologies by a plaintiff having no connection to this District. *See Ronald A. Katz Tech. Licensing, L.P. v. Am. Airlines, Inc., et al.*, No. 2:06-cv-0034 (E.D. Tex. Dec. 18, 2014 (Motion, D.I. No. 106); Apr. 20, 2015 (Order, D.I. No. 117)).

FedEx respectfully submits that this case should also be transferred to the Western District of Tennessee pursuant to 28 U.S.C. § 1404(a).  Transfer is proper and reasonable under the applicable private- and public-interest factors:

- The Western District of Tennessee has greater access to sources of proof in Memphis, where FedEx depositions are likely to occur, it enjoys compulsory process over likely witnesses, and it is a more convenient trial location for these witnesses.  These three private-interest factors favor transfer.

- The Western District of Tennessee's strong local interest in the case favors transfer.  This District lacks a connection to this case and there are no co-defendants.  Thus, there is no judicial economy that counsels against transfer. The interests of justice would be better served by transfer.

In sum, the Western District of Tennessee is a more convenient forum.

## II.    FACTS

FedEx Express has been based in Memphis, Tennessee since the early 1970s.  *See* Ex. 1 at ¶ 5.  It is a global leader in shipping and tracking packages, currently moving more than one million packages per day through its Memphis, Tennessee hub.  *Id.* at ¶ 6.  FedEx Corp. itself is simply a holding company for a variety of distinct subsidiaries including those named as defendants.  *Id.* at ¶ 2.  Through FedEx's subsidiaries, a large technology and marketing team in

the Memphis area focuses on research, development, deployment, operation, and improvement of computer systems and technology for shipping processes and systems, monitoring and tracking shipments, and processing and distributing data related to those systems. *Id.* at ¶ 7. Importantly for this motion, the Tennessee-based technology team works on the FedEx technologies named in IV2's complaint, e.g., COSMOS, FedEx PowerPad, Zebra Technologies MC9500-K, SenseAware, and Ship Manager. *Id.* The table below summarizes the FedEx technologies accused in IV2's August 31, 2016 complaint.

| U.S. Patent No. | Accused FedEx Technology | Citation |
|---|---|---|
| 6,633,900 | COSMOS, PowerPad, Zebra Tech.  MC9500-K | D.I. 1 at ¶¶ 37-41. |
| 6,909,356 | SenseAware, RFID | D.I. 1 at ¶¶ 48-51. |
| 7,199,715 | GENCO warehouse systems, RFID | D.I. 1 at ¶¶ 58-61. |
| 8,494,581 | MC9500-K, COSMOS | D.I. 1 at ¶¶ 68-71. |
| 9,047,586 | Ship Manager | D.I. 1 at ¶¶ 78-81. |

These FedEx technologies were or are mostly developed and maintained in Tennessee, and not in this District. Ex. 1 at ¶ 26.  Briefly, COSMOS, the Customer Operations Service Master On-line System, is a computer and database system from the early days of FedEx Express that has been used to store and process various types of customer related data, including package tracking data.[1] *Id.* at ¶ 8.  The FedEx PowerPad is a handheld computer system originally made by third-party Motorola, Inc., that is used by delivery personnel to enter information in to a remote FedEx computer system programmed for package tracking. *Id.* at ¶ 9.  To the extent any FedEx entity is in the possession, custody, or control of information regarding the specification or requirements for FedEx's operation or use of the PowerPad, such information would be located in Memphis. *Id.*  The MC9500-K, made by third party Zebra Technologies, is a handheld computer system used by FedEx delivery drivers. *Id.* at ¶ 10.  Again, to the extent any

---

[1] *See* http://www.fedex.com/ma/about/overview/innovation.html (last visited Nov. 10, 2016).

FedEx entity is in the possession, custody, or control of information regarding the specification or requirements for FedEx's operation or use of the MC9500-K, such information would be located in Memphis and Pittsburgh.  *Id.*  SenseAware is a device that allows users to monitor certain conditions of associated packages.  *Id.* at ¶ 12.  SenseAware was developed by a group within the technology team in Tennessee.[2]  *Id.*  Ship Manager is software designed to aid shippers in arranging package pickup and deliveries, managing shipment information, and monitoring their deliveries.  *Id.* at ¶ 13.  Ship Manager was designed in and is managed from Memphis.  *Id.* FedEx witnesses located in the Memphis area are knowledgeable about all of these systems and willing to testify, if necessary.  *See id.* at ¶ 14 (Bobby Nations: MC-9500-K, PowerPad), ¶ 15 (Keith Yarmowich: PowerPad, COSMOS), ¶ 16 (Chris Swearingen: SenseAware), ¶17 (Robert Nassal: Ship Manager), ¶18 (Hari K. Thapa: Ship Manager), ¶¶20-22.

Many of these technologies were conceived and are maintained by FedEx Services, a wholly-owned subsidiary of FedEx Corp. that IV2 has chosen not to name as a defendant. FedEx Services is based in Tennessee, and is responsible for developing, operating, managing, maintaining, and/or servicing COSMOS, FedEx PowerPad, Zebra Technologies MC9500-K used by FedEx Express, SenseAware, and Ship Manager.  *Id.* at ¶ 23.  The individuals identified above are all employed by FedEx Services.  *Id.* at ¶¶ 14-18. *See also IPVenture, Inc.*,  No. 4:11-cv-05467, D.I. 1 (N.D. Cal. Nov. 4, 2011); *IPVenture, Inc.*, No. 4:14-cv-04894, D.I. 1 (N.D. Cal. Nov. 4, 2014).

GENCO is a FedEx subsidiary based in Pittsburgh, Pennsylvania, that maintains a network of distribution warehouses.  Ex. 1 at ¶ 33.  IV2's complaint argues that GENCO only

_____

[2] *See* http://about.van.fedex.com/newsroom/global-english/fedex-introduces-senseaware-the-next-generation-supply-chain-information-platform/ (last visited Nov. 10, 2016).

infringes the '715 patent, and IV2 lacked a reasonable basis to assert the '715 patent against GENCO.[3]  *See* D.I. 1 at ¶¶ 58-61.  Individuals knowledgeable about GENCO are located in Pittsburgh.  Ex. 1 at ¶ 19.  To the extent GENCO is even relevant to this case, Pittsburgh is substantially closer to Memphis than Marshall.  *See* Ex. 4.

FedEx Office, the only named FedEx subsidiary with any corporate presence in the Eastern District of Texas, is not responsible for and does not maintain documents or employ knowledgeable personnel regarding *any* of the accused FedEx technologies.  Ex. 1 at ¶ 24.  FedEx Office operates retail photocopying locations.  *Id.*  It was acquired by FedEx Corp. as Kinko's in 2004.  *Id.*  Although FedEx Office employees may receive packages for shipping, they have no relevant technical knowledge of the FedEx technologies named in the complaint.

In short, all of FedEx's relevant activities take place outside Texas, and largely in Memphis, Tennessee. *See id.* at ¶¶ 29-31.

Plaintiff IV2 is a Delaware limited liability company with its principal place of business in Bellevue, Washington.  *See* D.I. 1 at ¶ 1.  Its only other U.S. locations are in California and Washington, D.C., not in Texas.  *See* Ex. 2.  IV2 has no known presence in this District other than as a plaintiff in patent infringement lawsuits.  Notably, since 2010, IV2 has filed over 60 patent lawsuits in forums across the country.  *See* Ex. 8.

Other potential witnesses, e.g., the named inventors, are spread across the country in California, New Mexico, Iowa, Wisconsin, and North Carolina.  Only one out of 12 total named inventors across the five patents appears to reside in Texas.  *See* D.I. 1, Exs. A-E.

---

[3] On November 10, 2016, FedEx served a Rule 11 motion on IV2 explaining its position that IV2 lacked a reasonable basis to assert the '715 patent against GENCO in its Complaint.

III.    **LEGAL STANDARD**

Section 1404(a) of 28 U.S.C. provides that "[f]or the convenience of parties and

witnesses, in the interest of justice, a district court may transfer any civil action to any other

district court or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  This

transfer provision is to "prevent plaintiffs from . . . subjecting defendants to venues that are

inconvenient." *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 313 (5th Cir. 2008)

(en banc).  The Supreme Court has stressed: "Section 1404(a) is intended to place discretion in

the district court to adjudicate motions for transfer according to an 'individualized, case-by-case

consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29

(1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The threshold question in a § 1404(a) analysis is whether the suit could have originally

been brought in the proposed transferee district.  *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d

201, 203 (5th Cir. 2004).  If so, the Court must weigh the relative public and private factors. *Id*.

The private-interest factors include "(1) the relative ease of access to sources of proof; (2) the

availability of compulsory process to secure the attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make trial of a case

easy, expeditious and inexpensive." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009)

(citations omitted).  The public-interest factors include "(1) the administrative difficulties

flowing from court congestion; (2) the local interest in having localized interests decided at

home; (3) the familiarity of the forum with the law that will govern the case; and (4) the

avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In

re Nintendo*, 589 F.3d at 1198 (citations omitted).  These factors "are not necessarily exhaustive

or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

The plaintiff's choice of venue is not a factor in this analysis.  *Volkswagen II*, 545 F.3d at 314-15; *see also In re TS Tech*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis").  Further, "the usual deference accorded the plaintiff's choice of forum is of minimal value when none of the parties reside in this division of this District."  *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001).  Section 1404(a) must also "be construed to prevent parties who are opposed to a change of venue from defeating a transfer which, but for their own deliberate acts or omissions, would be proper, convenient and just."  *Van Dusen*, 376 U.S. at 624.  The Federal Circuit has repeatedly checked attempts by plaintiffs to establish contacts for the sole purpose of manufacturing venue.  *See In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (per curiam); *In re Zimmer*, 609 F.3d at 1381-82.

## IV.    ARGUMENT

### A.    This Action Could Have Been Filed in the Western District of Tennessee

This threshold requirement is satisfied.  The headquarters of FedEx Corp. and FedEx Express has long been located in Memphis, which is within the Western District of Tennessee.  Ex. 1 at ¶¶ 4-5.  Under 28 U.S.C. § 1400(b), a plaintiff may file a patent-infringement action in any district "where the defendant resides."  Thus, this action could have been brought in the Western District of Tennessee.  *See* 28 U.S.C. §§ 1391, 1400(b); *Volkswagen I*, 371 F.3d at 203.

### B.    Private-Interest Factors Favor Transfer

#### 1.    Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech*, 566 F.3d 1338,1345 (Fed. Cir. 2009)

(quoting *Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be weighed as a private-interest factor.  *See Volkswagen II*, 545 F.3d at 316; *In re TS Tech*, 551 F.3d at 1321; *In re Genentech*, 566 F.3d at 1345.  This case is no exception.

Documentation for the accused FedEx technologies are located in Tennessee.  Ex. 1 at ¶ 25.  While discovery has not yet begun, searches for relevant documents and their production will almost certainly occur in Memphis.  If the need ever arose, in pretrial, trial, or beyond, the sources of information are most conveniently accessible in the Western District of Tennessee. Substantially all of Defendants' documents relevant to the named technologies—technical, operational, and financial—are located in or otherwise available in Memphis.  *Id.* at ¶ 26.

Regarding the '715 patent, GENCO is based in Pennsylvania, and relevant witnesses and documents would be located there.  *Id.* at ¶ 33.  Memphis is substantially closer to Pennsylvania than this District, and so would be more convenient for those witnesses.  *See* Ex. 4.

As Plaintiff is not located in this District either (*see* Ex. 2), it does not provide easy access to any sources of proof if needed.  Consequently, this factor favors transfer.

### 2.     Availability of Compulsory Process

A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not.  *Volkswagen II*, 545 F.3d at 316; *Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224, 2012 WL 194382, at *5 (E.D. Tex. Jan. 23, 2012) (citing *Volkswagen II*, 545 F.3d at 316).  Federal Rule of Civil Procedure 45(c)(1)(B)(ii) authorizes a trial subpoena to any person residing, working, or regularly transacting business in the state so long as it does not entail "substantial expense."  It is highly likely that a greater number of

relevant witnesses will be subject to compulsory process in the Western District of Tennessee, if needed.  Though either district can compel depositions, only the Western District of Tennessee can compel those witnesses to testify live at trial.  This subpoena power would likely cover most FedEx witnesses if they ever become non-parties before trial.  Ex. 1 at ¶ 27.  FedEx is not aware of any nonparty or party witness under the direct trial subpoena power of this Court.  While of slight importance at present, this favors transfer.

### 3.     Cost of Attendance for Willing Witnesses

A transfer would substantially reduce the cost and burden of attendance at trial for both party and nonparty witnesses.  *Promote Innovation LLC v. Schering Corp.*, No. 2:10-cv-248, 2011 WL 665817, at *3 (E.D. Tex. Feb. 14, 2011).  The convenience of attendance for trial witnesses "is probably the single most important factor in [a] transfer analysis."  *In re Genentech*, 566 F.3d at 1343 (quoting *Neil Bros.*, 425 F. Supp. 2d at 329).  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen I*, 371 F.3d at 204-05.  This factor favors transfer when a "substantial number of material witnesses reside within the transferee venue" and no witnesses reside in the transferor venue. *In re Genentech*, 566 F.3d at 1344-45.

As the Western District of Tennessee and this District are more than 100 miles apart (Ex. 3), the Court must assess the convenience of witnesses having to travel to the two venues.  It is likely that most if not all FedEx fact-witness depositions will be held in Memphis.  *See* Ex. 1 at ¶ 32.  FedEx preliminarily identifies the employees in Ex. 1 who are knowledgeable about the named FedEx technologies and are therefore potentially may be called at trial.  *See id.* at ¶¶ 14-

-10-

18.  These individuals work and reside in the Memphis area.  *Id*.  It does not appear there are any relevant witnesses within 100 miles of this District.  *Id.* at ¶¶ 30-32.

Continuing this case in this Court would require FedEx's Memphis witnesses to make a roundtrip trek spanning over 700 miles to attend trial.  *See* Ex. 3 (over 350 miles from Memphis, Tennessee to Marshall, Texas).  GENCO's Pennsylvania witnesses would literally have to pass through or over Memphis to get to Marshall.  *See* Ex. 4.  Under the Fifth Circuit's 100-mile rule—which provides that when the distance between possible venues is greater than 100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled," *Volkswagen II*, 545 F.3d at 317—this difference favors transfer.

Further, there is no IV2 presence in Texas that can be given "weight in the transfer analysis." *In re Zimmer*, 609 F.3d at 1381.  As IV2 witnesses were willing to travel anyway based on its forum selection, it should be noted that the distance between Bellevue and Marshall (about 2,216 miles, Ex. 5), is almost the same between Bellevue and Memphis (about 2,281 miles, Ex. 6).  Their need to travel thus does not counsel against transfer.  *Cf. In re Genentech*, 566 F.3d at 1345 (because plaintiff's witnesses "will be traveling a great distance no matter which venue the case is tried in . . . , the parties' convenience factor favored transfer").  Indeed, IV2 litigates cases around the country.  *See* Ex. 8.  IV2's activities in Texas appear to be limited to patent enforcement.  Moreover, since IV2 does not practice the asserted patents, it is unlikely to have any witnesses in Texas.  Ultimately, this District does not appear to be convenient for any witness.  The Western District of Tennessee is more convenient, heavily favoring transfer.

### 4.    Other Practical Problems

In deciding whether to transfer, "all other practical problems that make trial of a case easy, expeditious and inexpensive," *Volkswagen II*, 545 F.3d at 315, must be considered.  Courts

consider the practical considerations associated with such a transfer, including "those that are rationally based on judicial economy."  *Eolas Techs., Inc. v. Adobe Sys., Inc.*, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010), *aff'd*, *In re Google Inc.*, 412 F. App'x 295 (Fed. Cir. 2011).  However, considerations of judicial economy must not "dominate the transfer inquiry." *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013).

In this case, there are no practical problems that weigh against transfer.  In the present action, this Court has not handled any substantial issues nor is it handling codefendants.  Another case brought by a related plaintiff involving one of the asserted patents in this case is also pending transfer.  *See Intellectual Ventures I LLC v. FTD Companies, Inc.*, No. 6:16-cv-00195, D.I. No. 17 (E.D. Tex. Jun. 6, 2016).  Thus, with virtually no judicial economy, it is clear that the other private-interest factors favor transfer.  Because this case has only recently been filed, this Court has no more familiarity with the substance of the case than the transferee court.

The existence of co-pending cases brought by related IV2 entities against other defendants does not factor into the transfer analysis where, as here, the locations of witnesses and the convenience factors otherwise favor the transferee forum.  *In re Zimmer*, 609 F.3d at 1379-82 (directing transfer despite existence of a co-pending suit in the Eastern District of Texas).  The *FTD* case is in its infancy, shares only one common patent with this case, and is pending a motion to transfer to the Northern District of Illinois.  Similarly, only one of the three patents involved in this case is still at issue in the *Sally Beauty* case (*Intellectual Ventures I LLC et al. v. Sally Beauty Holdings, Inc. et al*, No. 2:15-cv-01414, Dkt. No. 43 (E.D. Tex., Feb. 26, 2016).  Moreover, the Federal Circuit has rejected the argument that the preservation of judicial economy based on prior knowledge of a patent should preclude transfer to a far more convenient venue.  *In re Verizon Bus. Network Servs., Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) ("[t]o

interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)") (quoting *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 n.3 (Fed. Cir. 2010) ("Our holding today does not mean that, once a patent is litigated in a particular venue the patent owner will necessarily have a free pass to maintain all future litigation involving that patent in that venue.")). Similarly, in *In re Morgan Stanley*, the Federal Circuit stated that "the proper administration of justice may be to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation." 417 F. App'x. 947, 949 (Fed. Cir. 2011). Applying these principles, this Court has granted motions to transfer even when there was significant co-pending litigation in this Court that was further along than the cases in which transfer was sought. *See, e.g., DietGoal Innovations LLC v. Time Inc.*, No. 2:12-cv-337, Dkt. No. 61 at 2 (E.D. Tex. Mar. 25, 2013) (citing *Volkswagen II*, 545 F.3d at 314-15).

Accordingly, any potential efficiencies between the *Sally Beauty* and *FTD* lawsuits and this lawsuit are overridden by the fact that most if not all relevant witnesses and documents reside in the Western District of Tennessee.

### C.    Public-Interest Factors

### 1.    Administrative Difficulties Flowing From Court Congestion

Another public-interest factor is court congestion, which favors a district that can bring a case to trial faster. *In re Genentech*, 566 F.3d at 1347. The Western District of Tennessee, based on The Federal Court Management Statistics for June 30, 2015 to June 30, 2016[4], saw 2,060 cases filed; this district, in the same period, saw almost three times as many cases filed, at 5,919.

---

[4] *See* Ex. 7, excerpt from United States District Courts — National Judicial Caseload Profile, http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/06/30-1 (last visited Nov. 10, 2016).

"[W]hen, as here, several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347. This is especially true because, "as this Court has repeatedly found in the past, the parties' reliance on general civil statistics provides the court with little guidance as to the speed with which patent cases reach trial." *Innovative Global Sys. v. OnStar LLC*, No. 6:10-cv-574, 2012 U.S. Dist. LEXIS 114504, at *25 (E.D. Tex. 2012).

### 2.   Local Interest in Having Localized Interests Decided at Home

This factor weighs heavily in favor of transfer. Interests that "could apply virtually to any judicial district or division in the United States"—such as the nationwide use of a FedEx system—are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321. Local interest arises when a district is home to a party in the litigation. *In re Hoffmann-LaRoche*, 587 F.3d at 1336. This infringement suit "calls into question the work and reputation" of individuals who reside in the Western District of Tennessee and "presumably conduct business in that community." *Id.* FedEx Corp., as is well-known, is headquartered in Memphis, where the FedEx family of companies has employed tens of thousands over the last forty years. *See* Ex. 1 at ¶¶ 4-7. That court accordingly has significant interest in the outcome of this case. *Refined Recommendation Corp. v. Netflix, Inc.*, No. 07-CV-04981, 2008 WL 474106, at *4 (D.N.J. Feb. 15, 2008) ("[A]s a general rule, the preferred forum is that which is the center of gravity of the accused activity." (citation omitted)).

With the exception of FedEx Office—whose activities are not implicated by the asserted patents—none of the named parties is found in the Eastern District of Texas. This Court considers the local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*,

371 F.3d at 206 (alteration in original) (citation omitted).  The fact that FedEx's allegedly infringing services are accessible within Texas does not carry any weight, as "[t]he Fifth Circuit has unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have a 'substantial interest' in adjudicating a case locally because some allegedly infringing products found their way into the Texas market."  *In re Nintendo*, 589 F.3d at 1198 (citing *Volkswagen II*, 545 F.3d at 317-18).  The Eastern District of Texas has no more interest in this litigation than any other judicial district in the United States.  As explained above, none of the likely relevant witnesses or documents is located in this District, the patents-in-suit were invented elsewhere, the accused FedEx technologies were not developed in this District, and neither IV2 nor the relevant FedEx entities are based here. As a result, the local interest factor favors transfer.  The Western District of Tennessee's more significant interest in this litigation is beyond dispute.

### 3.    Familiarity of the Forum with the Law and Avoidance of Unnecessary Problems of Conflict of Laws

Courts consider "the familiarity of the forum with the law that will govern the case" and "unnecessary problems of conflict of laws."  *Volkswagen I*, 371 F.3d at 203.  Both the Western District of Tennessee and the Eastern District of Texas are fully capable to try a patent case.  Further, there are no conflict-of-law issues.  The final two public considerations are neutral.

## V.    CONCLUSION

The Western District of Tennessee is a more convenient forum than this Court for this case, and the interests of justice favor a change in venue.  For all of the reasons above, FedEx respectfully requests that the Court grant its motion and transfer this action to the Western District of Tennessee, Memphis Division, pursuant to 28 U.S.C. § 1404(a).

Dated: November 11, 2016           Respectfully submitted,

                                */s/Jeffrey A. Berkowitz*
                   Jeffrey A. Berkowitz (VA Bar No. 65149)
                   Email: jeffrey.berkowitz@finnegan.com
                   Michael V. Young, Sr. (*pro hac vice*)
                   Email: michael.young@finnegan.com
                   Daniel C. Tucker (*pro hac vice*)
                   Email: daniel.tucker@finnegan.com
                   FINNEGAN, HENDERSON, FARABOW,
                   GARRETT & DUNNER, LLP
                   Two Freedom Square
                   11955 Freedom Drive, Suite 800
                   Reston, VA 20190-5675
                   (571) 203-2700
                   Fax: 202-408-4400

                   Aidan C. Skoyles (*pro hac vice*)
                   Email: aidan.skoyles@finnegan.com
                   FINNEGAN, HENDERSON, FARABOW,
                   GARRETT & DUNNER, LLP
                   901 New York Avenue, N.W.
                   Washington, D.C. 20001
                   (202) 408-4000
                   Fax: (202) 408-4400

                   Eric H. Findlay (Bar No. 00789886)
                   Email: efindlay@findlaycraft.com
                   FINDLAY CRAFT, P.C.
                   102 North College Avenue, Suite 900
                   Tyler, TX 75702
                   (903) 534-1100
                   Fax: (903) 534-1137

                   *Attorneys for Defendants*
                   *FEDEX CORPORATION;*
                   *FEDERAL EXPRESS CORPORATION;*
                   *FEDEX GROUND PACKAGE SYSTEM, INC.;*
                   *FEDEX FREIGHT, INC.;*
                   *FEDEX CUSTOM CRITICAL, INC.;*
                   *FEDEX OFFICE PRINT SERVICES, INC.; and*
                   *GENCO DISTRIBUTION SYSTEM, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 11th day of November, 2016, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Jeffrey A. Berkowitz*

## CERTIFICATE OF CONFERENCE

FedEx certifies that (1) the parties have met and conferred pursuant to the requirements of Local Rule CV-7(h), and (2) this motion is opposed.  FedEx specifically informed IV2 of its intention to seek a transfer to the Western District of Tennessee and met and conferred by telephone on November 10, 2016.  Jeffrey Berkowitz participated on behalf of FedEx, and Lauren Nowierski participated on behalf of IV2.  Ms. Nowierski indicated that IV2 opposes the motion.  As IV2 indicated that it will oppose the FedEx motion because it does not agree that transfer to the Western District of Tennessee is warranted, the parties are at an impasse.

*/s/ Jeffrey A. Berkowitz*

-17-