IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | |
| FEDEX CORPORATION, FEDERAL EXPRESS CORPORATION, FEDEX GROUND PACKAGE SYSTEM, INC., FEDEX FREIGHT, INC., FEDEX CUSTOM CRITICAL, INC., FEDEX OFFICE AND PRINT SERVICES, INC., GENCO DISTRIBUTION SYSTEM, INC., | § § § § § § § § § § | CIVIL ACTION NO. 2:16-CV-00980-JRG |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Intellectual Ventures II LLC's ("Intellectual Ventures") Motion for Leave to Amend its Infringement Contentions (Dkt. No. 113) ("the Motion"). Having considered the Motion and for the reasons set forth herein, the Court finds that the Motion should be and hereby is **GRANTED**.

### I.  Background

This case relates to allegations of patent infringement by Plaintiff Intellectual Ventures II LLC ("Intellectual Ventures" or "Plaintiff") against FedEx Corporation, Federal Express Corporation, FedEx Ground Package System, Inc., FedEx Freight, Inc., FedEx Custom Critical, Inc., FedEx Office and Print Services, Inc., and GENCO Distribution System, Inc. (collectively, "FedEx" or "Defendants"). (Dkt. No. 1.) Plaintiff alleges that Defendants infringe five different patents: U.S. Patent Nos. 6,633,900 ("the '900 Patent"); 6,909,356 ("the 356 Patent"); 7,199,715 ("the '715 Patent"); 8,494,581 ("the '581 Patent"); and 9,047,586 ("the '586 Patent") (collectively,

"the Asserted Patents"). These allegations span fifty-one claims and at least two dozen products. (Dkt. No. 104 at 1; Dkt. No. 112 at 3 ("Many of the '24' products work together to provide a single infringing service, and are thus charted together as a single infringement theory.").)

Intellectual Ventures now seeks to amend its original infringement contentions to include allegations against additional products, the Intermec Devices[1] and the RFID Antenna Array and xArray Systems. (Dkt. No. 113 at 2–3.) Both have already been the subject of considerable discovery.

### A. <u>Discovery on the Intermec Devices</u>

In December 2016, Plaintiff sent a letter to Defendants outlining Plaintiff's understanding of the scope of relevant discovery in this case. Among other things, Plaintiff indicated that it would seek "[d]ocuments sufficient to show Defendants' use of the FedEx PowerPad, Motorola lnc./Zebra Technologies MC9500-K, *or any other handheld device in conjunction with COSMOS, DADS, or any other enterprise computing system for work order assignment and/or dispatch* . . . ." (Dkt. No. 113-1 at 2 (emphasis added).) In response to an interrogatory, Defendants identified the Intermec Devices as examples of handheld, mobile devices "used . . . for dispatching personnel or distributing Assignments." (Dkt. No. 113 at 3.) FedEx also made an exemplary Intermec Device available for inspection along with the relevant source code. (Dkt. No. 124 at 4.) However, Intellectual Ventures sought additional discovery with respect to the Intermec Devices, which Defendants produced on August 11, 2017. (Dkt. No. 113 at 3–4.) Plaintiff then filed the instant

---

[1] While FedEx also objects to Plaintiff adding other systems to this case - FedEx Data Center, ACCOPS, FedEx Management System (FMS), BW, and FedEx Net - these systems essentially operate along with the Intermec Devices. (Dkt. No. 124 at 1; Dkt. No. 129 at 1.) Accordingly, for the reasons set forth below with respect to the Intermec Devices the Court is also unpersuaded by FedEx's arguments with respect to these various systems.

Motion to add allegations against the Intermec Devices on September 15, 2017. (Dkt. No. 113 at 1.)

### B. Discovery on the RFID Systems

In December 2016, Plaintiff also informed Defendants that it would seek information relating to "Defendants' tracking of tags, including but not limited to RFID tags . . . ." (Dkt. No. 113-1 at 2.) On March 1, 2017, Plaintiff served interrogatories asking Defendants to "[d]escribe in detail each Defendant's use of RFID tags for tracking packages, warehousing, and/or reverse logistics since 2007 . . . ." (Dkt. No. 113-2.) In its response, FedEx originally identified a single system, the same one identified as potentially infringing in Plaintiff's Initial Infringement Contentions. (Dkt. No. 113 at 2.) Defendants later supplemented this response, after initially arguing that it was already complete, to include the RFID Antenna Array/XArray systems. (*Id.*) Defendants produced source code for these systems about a month later on August 21, 2017. (*Id.* at 2–3.) Plaintiff then filed the instant Motion to add allegations against these systems on September 15, 2017. (*Id.* at 1.)

### C. The Stage of the Case

As explained above, both sides have engaged in substantial discovery (Dkt. No. 112 at 12) and the Parties claim construction briefing was already largely complete by the time Plaintiff filed the instant Motion. (Dkt. No. 91; Dkt. No. 102.) However, trial is set trial is set for May 7, 2018, with the close of discovery and the beginning of expert reports still months away. (Dkt. No. 135.)

## II. Legal Standard

"Local Patent Rule 3-1 requires a party claiming infringement to identify each accused product in its infringement contentions." *Tivo Inc. v. Samsung Elecs. Co.*, No. 2:15-CV-1503-JRG, 2016 WL 5172008, at *1 (E.D. Tex. 2016). Amendments to these contentions are permitted

"by order of the Court . . . upon showing of good cause." *Id.* at *3. Good cause in this context "requires a showing of diligence." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) (internal quotation marks omitted). Courts also consider four factors in determining whether to grant leave to amend infringement contentions: (1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded if the proposed amendment is not allowed; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice. *Packet Intelligence LLC v. NetScout Sys.*, No. 2:16-cv-230, 2017 U.S. Dist. LEXIS 92090, at *4 (E.D. Tex. Apr. 27, 2017).

### III. Discussion

#### A. The Intermec Devices

##### 1. The Explanation for Failing to Meet the Original Deadline

Plaintiff argues that it sought discovery regarding the Intermec Devices from the outset of this case and ultimately waited until now to formally accuse those devices because it took time to determine that the Intermec Devices actually infringe. (Dkt. No. 113 at 5–8.) According to Plaintiff, once it acquired sufficient information to conclude that the Intermec Devices infringe every element of at least one asserted claim, it diligently sought to amend its contentions. (*Id.*)

Defendants' central objection is that Plaintiff had all the information it needed to amend its contentions with respect to the Intermec Devices as of March 2017 (Dkt. No. 124 at 5 (arguing that available materials at that point "describe[ed] all imaginable detail[s] on how [the Intermec devices] function.").) Therefore, it follows that Plaintiff's effort to amend at this juncture is not timely nor excused. In support of this position, Defendants identify several documents cited in Plaintiff's Third Amended Infringement Contentions that reference documents produced well

before August 2017. (Dkt. No. 124 at 5–6.) In response, Plaintiff points out that its amended contentions *also* reference numerous documents produced in August 2017. (Dkt. No. 129 at 1–2.)

Having reviewed both sides' arguments, the Court concludes that Plaintiff's explanation for its delay is reasonable and therefore its effort to amend within a month of Defendants' August 11 production was diligent. This is evident from the fact that Plaintiff relies extensively on documents produced by Defendants in August 2017. (*Id.*)

### 2. Importance of the Intermec Devices

Plaintiff argues that the Intermec Devices are important because their exclusion would mean that this case does not "fully adjudicate[]" the dispute between the Parties. (Dkt. No. 113 at 8 (citing *TiVo, Inc. v. Verizon Commc'ns, Inc.*, No. 2:09-CV-257-JRG, 2012 WL 2036313, at *2 (E.D. Tex. June 6, 2012).) Defendants do not address this argument in their responsive briefing. Ultimately, the Court agrees with Plaintiff that this consideration weighs in favor of granting leave to amend.

### 3. Prejudice to Defendants if Leave is Granted

Plaintiff argues that FedEx will suffer "no prejudice" if Plaintiff is permitted to amend its Infringement Contentions because Defendants have been on notice since at least March 2017 that the Intermec Devices may be accused of infringing. (Dkt. No. 113 at 9–10.) Indeed, Defendants argue that at that point in the case they had produced enough information for Plaintiff to reasonably conclude that the products may infringe the Asserted Patents. (Dkt. No. 124 at 5.) Either way, both sides agree that substantial discovery related to the Intermec Devices has already been completed.

Defendants maintain that allowing the Intermec Devices to be added to this case would be "highly prejudicial" because Defendants have already "filed two *inter partes* review petitions for

the '900 patent [for which the Intermec Devices are alleged to infringe], developed noninfringement positions, and filed two claim construction briefs." (Dkt. No. 124 (citing *Adaptix, Inc. v. T-Mobile USA, Inc.*, No. 6:12CV122, 2014 WL 12639945, at *3 (E.D. Tex. Nov. 12, 2014)).) With respect to its petitions, FedEx does not explain how its petitions to the Patent Trial and Appeal Board ("PTAB"), in particular its follow-on petitions filed shortly before the instant Motion, would have been altered had it known that the Intermec Devices were going to be added to the case given that it already knew that similar handheld devices were already accused. Likewise, Defendants filed their claim construction briefs having already engaged in significant discovery relating to the Intermec Devices, based at least in part on the fact that Defendants identified these devices as relevant to Plaintiff's infringement allegations. (Dkt. No. 113 at 3.) Defendants' arguments regarding its noninfringement positions fail for the same reason. Indeed, discovery has not closed and the exchange of expert reports is still months away. *Cf. Adaptix*, 2014 WL 12639945, at *3 (finding prejudice where expert reports had already been filed).

Accordingly, the Court is unpersuaded that Defendants would suffer significant prejudice if Plaintiff were permitted to add the Intermec Devices to this case.

### 4. Availability of a Curative Continuance

As stated above, the Court concludes that the prejudice to FedEx with respect to the Intermec Devices is minimal. However, whatever prejudice may result could be cured by a continuance.

### B. The RFID Systems

#### 1. The Explanation for Failing to Meet the Deadline

As with the Intermec Devices, Plaintiff argues that it diligently sought to amend its contentions once Defendants produced information that led it to conclude the RFID Antenna Array and xArray systems infringed the Asserted Patents. (Dkt. No. 113 at 5–6.) Plaintiff learned of the RFID Antenna Array and xArray systems for the first time on July 18, 2017. (*Id.*) Defendants do not dispute this point. Instead, they focus on the potential prejudice that would result from adding the RFID Antenna Array and xArray systems and Plaintiff's related infringement theories to this case. However, regardless of whether Defendants may be prejudiced, which the Court addresses below, it is clear that Plaintiff diligently sought to amend its contentions after Defendants identified the RFID Antenna Array and xArray systems and produced the relevant source code, which was months after these systems began to be tested within FedEx. (Dkt. No. 113 at 5–6.)

#### 2. Importance of the Intermec Devices

As with the Intermec Devices, Plaintiff argues that the RFID Antenna Array and xArray systems are important because their exclusion would mean that this case does not "fully adjudicate[]" the dispute between the Parties. (Dkt. No. 113 at 8 (citing *TiVo, Inc. v. Verizon Commc'ns, Inc.*, No. 2:09-CV-257-JRG, 2012 WL 2036313, at *2 (E.D. Tex. June 6, 2012).) Defendants similarly do not address this argument. Ultimately, the Court agrees with Plaintiff.

#### 3. Prejudice to Defendants if Leave is Granted

Defendants argue that the inclusion of the RFID Antenna Array and xArray systems would subject them to significant prejudice because these products are not related to the already accused products and the allegations against these newly accused products include many additional theories, such as inducement, that were not originally identified in Plaintiff's Initial Infringement

Contentions.[2] (Dkt. No. 124 at 14–15.) However, as with the Intermec Devices, discovery has been substantially completed for the RFID Antenna Array and xArray systems (*id.*), claim construction briefing was completed against that backdrop, and the Parties have not filed any expert reports or completed fact discovery. Taken together, this minimizes the prejudice to Defendants of allowing Plaintiff to add its allegations against the RFID Antenna Array and xArray systems to this case. Moreover, Plaintiff seeks to add these theories now because Defendants did not produce information about these products for months after they began testing them. (Dkt. No. 113 at 2–3 (explaining that FedEx explained for the first time on July 18, 2017 that it had been testing the RFID Antenna Array and xArray systems since at least March 2017).)

### 4. Availability of a Curative Continuance

Again, to the extent Defendants are subjected to prejudice by Plaintiff adding additional theories to the case, such may be cured by a continuance as necessary. This weighs in favor of permitting Plaintiff to amend its contentions.

### IV. Conclusion

Accordingly, the Court concludes that the facts and circumstances of this case support a finding of good cause for leave to amend. Such leave, as requested in Plaintiff's Motion for Leave to Amend (Dkt. No. 113), is therefore **GRANTED**.

---

[2] To the extent Defendants urge the Court to deny Plaintiff's motion simply because it advances new theories, (Dkt. No. 124 at 9–11), these arguments are unpersuasive. Defendants do not identify any authority for the proposition that an amendment to a plaintiff's infringement contentions cannot include new theories and the Court is aware of no case holding as such. *See Packet Intelligence*, No. 2:16-cv-230, 2017 U.S. Dist. LEXIS 92090, at *4 (explaining the proper inquiry for assessing whether a court should permit plaintiffs to add new theories to a case).

**So ORDERED and SIGNED this 25th day of October, 2017.**

 

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE