IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| FEDEX CORPORATION, FEDERAL EXPRESS CORPORATION, FEDEX GROUND PACKAGE SYSTEM, INC., FEDEX FREIGHT, INC., FEDEX CUSTOM CRITICAL, INC., FEDEX OFFICE AND PRINT SERVICES, INC., GENCO DISTRIBUTION SYSTEM, INC., | § § § § § § § § | CIVIL ACTION NO. 2:16-CV-00980-JRG |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

According to the FedEx Defendants' advertising, they are "everywhere" you need them to be. However, in their Motion to Dismiss (Dkt. No. 84) ("the Motion") Defendants argue that they are everywhere but this District, at least with respect to venue. The Court disagrees. Accordingly, and for the reasons set forth herein, Defendants' Motion is **DENIED**.

### I.  Background

This case relates to allegations of patent infringement by Plaintiff Intellectual Ventures II LLC ("Intellectual Ventures" or "Plaintiff") against FedEx Corporation ("FedEx Corp."), Federal Express Corporation ("FedEx Express"), FedEx Ground Package System, Inc. ("FedEx Ground"), FedEx Freight, Inc. ("FedEx Freight"), FedEx Custom Critical, Inc. ("FedEx Custom Critical"), FedEx Office and Print Services, Inc. ("FedEx Office"), and GENCO Distribution System, Inc. (now known as "FedEx Supply Chain") (collectively "Defendants"). (Dkt. No. 1.)

Plaintiff alleges that Defendants infringe five different patents: U.S. Patent Nos. 6,633,900 ("the '900 Patent"); 6,909,356 ("the '356 Patent"); 7,199,715 ("the '715 Patent"); 8,494,581 ("the '581 Patent"); and 9,047,586 ("the '586 Patent") (collectively "the Asserted Patents"). These patents generally relate to shipping and transportation technology.

A. **The Defendants**

FedEx Corp. is a Delaware corporation with its principal place of business in Memphis, Tennessee. (Dkt. No. 84 at 3.) It operates as a holding company for a variety of wholly-owned subsidiaries, including the other defendants in this case, to which the parent FedEx Corp. provides "general financial, legal, and business guidance . . . in the logistics, freight, and package transportation, and print and copying fields." (Dkt. No. 32 ¶ 2.) These subsidiaries are organized into several business segments that all operate under the "FedEx" brand, including FedEx Services, FedEx Express, FedEx Ground, and FedEx Freight. (Dkt. No. 86-30.) However, each defendant in this case, including those organized in the same business segment, are separately incorporated. (Dkt. No. 84 at 3.)

FedEx Office is a Texas corporation with its principal place of business in Plano, Texas. (Dkt. No. 84 at 4.) It exists as part of the FedEx Services business segment. (Dkt. No. 86-30.) Plaintiff alleges that FedEx Office operates at least 17 locations in this District and that FedEx Office engages in infringing activity from these locations. (*See, e.g.,* Dkt. No. 85 at 6 ("FedEx Office uses the Accused Instrumentalities in the District at those stores . . . .").)

FedEx Express is a Delaware corporation with its principal place of business in Memphis, Tennessee. (Dkt. No. 84 at 3.) It exists as part of its own FedEx Express business segment. (Dkt. No. 86-30.) Plaintiff alleges that FedEx Express provides infringing services in this District, including from FedEx Office Print and Ship Centers. (Dkt. No. 85 at 5.)

FedEx Ground is a Delaware corporation with its principal place of business in Moon Township, Pennsylvania. (Dkt. No. 84 at 3.) It exists as part of its own FedEx Ground business segment. (Dkt. No. 86-30.) Plaintiff alleges, *inter alia*, that FedEx Ground infringes the Asserted Patents through the use of instrumentalities, such as the MC9500, which FedEx Ground uses as part of services carried out in this District, including as part of services it offers from physical locations in this District. (Dkt. No. 85 at 6.)

FedEx Supply Chain, formerly known as GENCO Distribution Systems, Inc., is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania. (Dkt. No. 84 at 4.) It operates as part of the FedEx Ground business segment. (Dkt. No. 86-30.) Plaintiff alleges that FedEx Supply Chain provides infringing services in this District through the use of, *inter alia*, RFID tags. (Dkt. No. 1 at ¶¶ 16, 61.)

FedEx Freight is an Arkansas corporation with its principal place of business in Harrison, Arkansas. (Dkt. No. 84 at 3.) It exists as part of its own FedEx Freight business segment. (Dkt. No. 86-30.) Defendants admit that FedEx Freight operates several service centers throughout Texas, including at least six locations in this District. (Dkt. No. 32 at ¶ 16.) Plaintiff further alleges that FedEx Freight infringes the Asserted Patents at these service centers and in distributing freight in this District. (Dkt. No. 85 at 6.)

FedEx Custom Critical is an Ohio corporation with its principal place of business in Uniontown, Ohio. (Dkt. No. 84 at 4.) It operates as part of the FedEx Freight business segment. (Dkt. No. 86-30.) Plaintiff alleges that FedEx Custom Critical provides infringing products and services from and in this District. (Dkt. No. 85 at 7.)

## B. Procedural History

Plaintiff filed this case on August 31, 2016. (Dkt. No. 1.) Defendants filed their Answer on November 10, 2016. (Dkt. No. 32.) In that Answer, Defendants included a single sentence objecting to venue: "FedEx denies that venue is proper in this District under 28 U.S.C. § 1400(b). *See In re TC Heartland LLC*, 821 F.3d 1338 (Fed. Cir. 2016), *petition for cert. filed*, No. 16-341 (Sept. 15, 2016)." (*Id.*) Defendants did not file any other motion under Rule 12.

On November 11, 2016, Defendant filed a Motion to Transfer under § 1404. (Dkt. No. 34.) A hearing was held on this motion on February 16, 2016. (Dkt. Nos. 56, 60). However, at the hearing Defendants never raised an objection to venue, never mentioned § 1406, and never discussed the petition in *TC Heartland*. (Dkt. No. 60.) Moreover, for the next several months, Defendants actively litigated this case. (Dkt. No. 86-1.) For example, Defendants agreed to the appointment of a mediator (*id.* at 2), served initial disclosures (*id.*), appeared before this Court multiple times (Dkt. Nos. 35, 36, 54), engaged in extensive discovery, including document and source code production (Dkt. No. 86-1 at 2–6), and filed a joint claim construction statement with the Court (*id.* at 6). During this same time, Defendants filed several petitions for *Inter Partes* Review ("IPR") of the Asserted Patents. (*Id.* at 2.) Institution decisions on these petitions, granting in part and denying in part, were announced on July 25, 2017. (*Id.* at 6.)

On July 27, 2017, after litigating this case for more than a year and more than two months after the Supreme Court decided *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017), Defendants filed the instant Motion asserting that venue in the Eastern District of Texas was improper and seeking dismissal or transfer under 28 U.S.C. § 1406. (Dkt. No. 84 at 2 ("Because venue is improper, 28 U.S.C. § 1406(a) mandates that the Court either dismiss the case, or transfer to where it could have been brought, if in the interests of justice.").)

## II. Discussion

### A. Waiver

"Venue relates to the locale in which a suit may properly be instituted, and not to the power of the court to hear the case or reach the parties." *Minnesota Min. & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1264 (Fed. Cir. 1985) (citing *Neirbo Co. v. Bethlehem Corp.*, 308 U.S. 165, 167–68 (1939)). For this reason, the venue requirement is regarded as a "privilege" afforded to defendants, a privilege that may be surrendered "by failure to assert [an objection] seasonably, by formal submission in a cause, or by submission through conduct." *Neirbo*, 308 U.S. at 168. *See also* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.").

The Federal Circuit recently discussed this principle in *In re Micron Tech., Inc.*, No. 2017-138, 2017 WL 5474215 (Fed. Cir. Nov. 15, 2017). There, the Federal Circuit concluded that reliance on the Supreme Court's interpretation of § 1400(b) in *Fourco Glass Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 229 (1957) was not sufficiently "available" under Rule 12(g)(2) and (h)(1)(A) until the Supreme Court reaffirmed that *Fourco* was still good law in *TC Heartland*. *Micron*, 2017 WL 5474215, at *6. However, the Federal Circuit also explained that district courts possess an inherent power to find a venue objection forfeited based on conduct or other circumstances. *Id.* at *7 ("[W]e think it clear that, apart from Rule 12(g)(2) and (h)(1)(A), district courts have authority to find forfeiture of a venue objection."). *See also In re Cutsforth, Inc.*, 17-135 (Fed. Cir. Nov. 15, 2017) (unpublished) (granting mandamus relief where district court "clearly erred in not considering non-Rule 12 bases for waiver"). This forfeiture inquiry is not confined to the moment when a new defense becomes available. *Micron*, 2017 WL 5474215,

at *8 ("[W]hereas the waiver rule of Rule 12(g)(2) and (h)(1)(A) requires a focus on the time the *TC Heartland* venue objection was 'available' for the district court to adopt (i.e., on or after May 22, 2017), the non-Rule authority's general concern with timeliness is not necessarily so limited."). Nevertheless, the Federal Circuit has suggested that the forfeiture inquiry should at least start with an examination of the "time from when the defense becomes available to when it is asserted," along with "other factors . . . which may implicate efficiency or other interests of the judicial system and of the other participants in the case." *Id.*

In light of this instruction in *Micron*, the Court begins by examining Defendants' conduct after *TC Heartland* was decided. Even at this point, Defendants continued actively litigating this case for months. (Dkt. No. 86-1 at 5–6.) For example, Defendants served subpoenas (*id.* at 5), propounded interrogatories (*id.* at 5–6), filed responsive briefing (Dkt. No. 76), and sought favorable constructions of the Asserted Patents (Dkt. No. 82). In fact, it was not until a few days after their IPR petitions were denied and more than two months after *TC Heartland* was decided that Defendants finally sought to dismiss this case for improper venue. (Dkt. No. 86-1.) *Micron* does not invite defendants who have substantially engaged in a case to reassert an abandoned defense once it becomes convenient or advantageous for them. 2017 WL 5474215, at *8 (noting that defendants who take a "tactical wait-and-see" approach in objecting to venue present "an obvious starting point for a claim of forfeiture"); *Boston Sci. Corp. & Boston Sci. SciMed, Inc. v. Cook Grp. Inc. & Cook Med. LLC*, No. CV 15-980-LPS-CJB, 2017 WL 3996110, at *9 (D. Del. Sept. 11, 2017) (Stark, J.) ("Prototypical examples of where the Court might [find waiver in spite of *TC Heartland* being an intervening change in the law] include where a defendant raises venue for the first time on the eve of trial, or many months (or years) after *TC Heartland* was handed down, or where dismissal or transfer would unduly prejudice a plaintiff."). *Cf. Treehouse Avatar*

*LLC v. Valve Corporation*, No. CV 1:15-427, 2017 WL 5564153, at *3 (D. Del. Nov. 20, 2017) (declining to find waiver under the non-Rule 12 bases discussed in *Micron* where the defendant renewed their motion to dismiss within a few days of *TC Heartland*); *Ironburg Inventions Ltd. v. Valve Corp.*, No. 1:15-CV-4219-TWT, 2017 WL 3307657, at *3 (N.D. Ga. Aug. 3, 2017) (finding no intentional delay where the defendant waited "a little over a month" after *TC Heartland* was decided to renew venue objection).

Moreover, before *TC Heartland* was decided, Defendants took several steps indicating that they had relinquished their original venue objection.[1] For example, Defendants sought to transfer this case to the Western District of Tennessee under § 1404 rather than § 1406. (Dkt. No. 34 at 15 ("The Western District of Tennessee is a more convenient . . . . [and] FedEx respectfully requests that the Court grant its motion and transfer this action to the Western District of Tennessee, Memphis Division, pursuant to 28 U.S.C. § 1404(a).").) This is particularly significant because a motion under § 1404 is premised on venue being proper in the transferor court whereas a motion under § 1406 reflects an objection to the current venue as being improper. *See Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964) (explaining that § 1404 applies where venue is proper in the transferor court while § 1406 applies when it is not); *Katz v. Lear Siegler, Inc.*, 5 F.3d 1502, 1993 WL 262564, at *8 (Fed. Cir. 1993) (unpublished) ("[T]ransfer under section 1404(a) . . . applies to a transfer from a proper venue."); 15 Wright & Miller, *Federal Practice & Procedure* § 3845 (4th ed. 2017) (same). Defendants also attended hearings before this Court (Dkt. No. 35, 36, 54, 60), including a hearing on their Motion to Transfer under § 1404, and engaged in extensive

---

[1] Plaintiff also argues that Defendants' initial objection to venue in their answer was inadequate under either a "fair notice" standard or a plausibility standard. (Dkt. No. 85 at 13–14.) The Court declines to address this question because even if Defendants' objection was properly raised it was eventually waived. However, the Court does note that Defendants' original objection suggested that venue was improper as to "FedEx" collectively (Dkt. No. 32 at ¶ 18) even though venue would have been (and is) indisputably proper as to FedEx Office under *Fourco* because FedEx Office is incorporated in Texas, with its principal place of business in this District (*id.* at ¶ 16).

discovery, including document and source code production (Dkt. No. 86-1 at 2–6), without "seasonably" asserting their venue objection. *Neirbo*, 308 U.S. at 168. Taken together, this conduct "gave every indication to Plaintiff[] and this Court that [Defendants] were defending the case on the merits." *Restoration Hardware, Inc. v. Haynes Furniture Co.*, No. 16-cv-10665, 2017 WL 2152438, at *2 (N.D. Ill. May 17, 2017). *See also Realtime Data LLC v. NetApp, Inc.*, No. 6:16-CV-00961-RWS, 2017 WL 3588047 (E.D. Tex. Aug. 21, 2017) (finding waiver based on conduct where defendant filed a § 1404 motion, engaged in discovery, and pursued claim construction); *Koninklijke Philips N.V. v. ASUSTeK Computer Inc.*, No. CV 15-1125-GMS, 2017 WL 3055517, at *2 (D. Del. July 19, 2017) (finding waiver by conduct where defendant, *inter alia*, attended a scheduling conference, engaged in discovery, and attended a *Markman* hearing); *Infogation Corp. v. HTC Corp.*, No. 16-CV-01902-H-JLB, 2017 WL 2869717, at *3 (S.D. Cal. July 5, 2017) (finding waiver by conduct where defendant served invalidity contentions, filed a motion for judgment on the pleadings, and participated in claim construction).

Accordingly, the Court concludes that Defendants' venue objection has been waived based on their own conduct, the judicial resources already expended in this case by the Court, the prejudice to Plaintiff in reopening a dormant venue dispute simply because it has become convenient for Defendants to litigate the issue now, and in light of all of these considerations taken together. Such a result reflects a "reasonable response to the problems and needs confronting the court[]"and is not in tension with any other statute or rule. *Micron*, 2017 WL 5474215, at *7 (citing *Dietz v. Bouldin, Inc.*, 136 S. Ct. 1885, 1891–1892 (2016) (internal quotation marks omitted)); 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.").

B.  **Whether Venue is Proper in the Eastern District of Texas**

Although Defendants have waived any properly raised objection to venue, the Court finds it appropriate to analyze the underlying venue question with respect to FedEx Office, FedEx Express, FedEx Custom Critical, FedEx Ground, FedEx Freight, and FedEx Supply Chain.[2] Engaging in this inquiry requires addressing which party bears the burden of proof here.

a.  **The Burden of Proof**

Although the burden to object to improper venue is definitively on the defendant, *Neirbo*, 308 U.S. at 167–68 (venue is a privilege that defendants must preserve through objection), circuit courts,[3] district courts,[4] and scholars[5] have reached different answers in allocating the ultimate

---

[2] On the existing record, the Court finds that there is not sufficient evidence to justify imputing these subsidiaries' contacts to FedEx Corp. *See Soverain IP, LLC v. AT&T, Inc.*, No. 217CV00293RWSRSP, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017) (noting that the standard to treat the place of business of subsidiary as a place of business of the parent is "a difficult standard to meet"). However, Intellectual Ventures has requested additional discovery in this case. (Dkt. No. 85 at 20 n. 14.) Moreover, the Court is persuaded that additional discovery could provide a basis for finding that the various places of business from which FedEx Corp.'s subsidiaries operate should be treated as a place of business of FedEx Corp. *See, e.g., Am. GNC Corp. v. ZTE Corp.*, No. 417CV00620ALMKPJ, 2017 WL 5163605, at *2 (E.D. Tex. Oct. 4, 2017), *report and recommendation adopted*, No. 4:17CV620, 2017 WL 5157700 (E.D. Tex. Nov. 7, 2017) (recognizing that the regular and established place of business for even a third party may be treated as a place of business of the defendant where that defendant has simply delegated responsibilities to the third party to carry out its own business there). For example, Plaintiff has provided uncontroverted evidence that at least one corporate officer of FedEx Corp. (Dkt. No. 86-36) serves as an officer for several FedEx subsidiaries, including FedEx Ground (Dkt. No. 86-7), FedEx Custom Critical (Dkt. No. 86-9), and FedEx Office (Dkt. No. 86-4), and that other corporate officers for FedEx Corp. at least represent that they have responsibility for managing FedEx Corp.'s subsidiaries. (Dkt. Nos. 86-15, 86-16, 98-1, 98-2.) Plaintiff has also provided evidence that FedEx Corp. shares a common mailing address in tax filings with the other FedEx defendants in this case. (Dkt. No. 86-2 (listing 3630 Hacks Cross Road in Memphis, TN as a mailing address for FedEx Corp.), Dkt. No. 86-4 (same with respect to FedEx Office), Dkt. No. 86-5 (same with respect to FedEx Express), Dkt. No. 86-7 (same with respect to FedEx Ground), Dkt. No. 86-9 (same with respect to FedEx Custom Critical), Dkt. No. 86-13 (same with respect to FedEx Freight), Dkt. No. 86-11 (same with respect to GENCO, *i.e.* FedEx Supply Chain).) Nevertheless, the Court declines to subject Defendants to the cost of additional discovery on a point that is ultimately moot in light of Defendants' waiver.

[3] *Compare Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982) ("'[I]t is not necessary for the plaintiff to include allegations showing the venue to be proper.'"), *with Bartholomew v. Virginia Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir. 1979) ("[T]he burden is upon plaintiff to establish venue and jurisdiction.") *abrogated on other grounds by Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119 (1982); *Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085, 1086 (1st Cir. 1979).

[4] *Compare Dudash v. Varnell Struck & Assocs., Inc.*, No. C 04-2478 MHP, 2004 WL 2623903, at *2 (N.D. Cal. Nov. 16, 2004) ("[T]he burden to prove venue is generally and properly placed on defendant, as the doctrine protects defendant's privilege to avoid litigation in inconvenient forums."), *with Ambriz v. Coca Cola Company*, 2014 WL 296159, *2 (N.D. Cal. 2014) ("Plaintiff bears the burden of establishing venue, and all reasonable inferences and factual conflicts are resolved in plaintiff's favor.").

[5] *Compare* 17-110 Moore's Federal Practice - Civil § 110.01 (2017) ("When the defendant timely objects to venue, courts should treat the venue question as an affirmative defense. Therefore, the defendant has the burden of

burden of persuasion once a challenge to venue has been raised. Even courts in this District have rendered conflicting opinions in the absence of clear guidance from the Fifth Circuit. *Compare Langton v. Cbeyond Commc'n, L.L.C.*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003) ("[T]he burden of sustaining venue lies with the plaintiff.") *with Sanders v. Seal Fleet, Inc.*, 998 F. Supp. 729, 733 (E.D. Tex. 1998) ("The burden to demonstrate why venue is improper and why the forum should be changed lies with the movant."). *See also Gupta v. Lynch*, 2014 WL 4063831, *2 (E.D. La. Aug. 15, 2014) (noting that "district courts in the Fifth Circuit have been inconsistent in allocating the burden of proof" in venue disputes).

Where the burden is placed on plaintiff to establish that venue is proper, courts often rely on older authority concluding that plaintiffs must properly allege jurisdictional facts. For example, *Langton* cited an earlier case from the Southern District of Texas, *see Langton*, 282 F. Supp. 2d at 508 (citing *Laserdynamics Inc. v. Acer Am. Corp.*, 209 F.R.D. 388, 390 (S.D. Tex. 2002)), which in turn relied on a line of cases extending back to *K. J. Schwartzbaum, Inc. v. Evans, Inc.*, 44 F.R.D. 589 (S.D.N.Y. 1968), which recognized that "the burden is on plaintiff to establish the jurisdiction of the court over . . . defendants." 44 F.R.D. at 591. However, extending this rule into the venue context by requiring plaintiffs to also establish that venue is proper confuses the relationship between jurisdiction and venue. *See, e.g.*, *Time, Inc. v. Manning*, 366 F.2d 690, 696 (5th Cir. 1966) ("Jurisdiction and venue, while comprising many of the same considerations, are not the same thing."); *Myers v. American Dental Association*, 695 F.2d 716, 724 (3d Cir. 1982), (criticizing "cases [that] confuse jurisdiction with venue" in placing the burden to establish that

---

establishing that venue is improper."), *with* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3826 (4th ed. 2017) (concluding that placing the burden on "the plaintiff to establish that the chosen district is a proper venue" is "the better view").

venue is proper on plaintiff) *cert. denied*, 462 U.S. 1106 (1983).[6] The venue requirement is not jurisdictional, *Minnesota Min. & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1264 (Fed. Cir. 1985), it is a "privilege" afforded to defendants for their benefit. *Neirbo*, 308 U.S. at 168; *Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) ("Venue requirements exist for the benefit of defendants . . . ."). It therefore follows that the party to whom this privilege is afforded and by whom the privilege must be invoked, the defendant, should explain how a particular venue fails to provide them with the benefits conferred by the venue requirement. It also follows that a defendant is better positioned to explain why these benefits are lacking with respect to a particular forum. For these reasons, the Court concludes that opinions placing the burden on the defendant represent the better view.

However, Defendants argue that the allocation of the burden in venue disputes is controlled by *Hoover*, in which the Federal Circuit noted that "[v]enue is based on the facts alleged in the well-pleaded complaint." 84 F.3d at 1410. *But see Myers*, 695 F.2d at 724 ("'[I]t is not necessary . . . for the plaintiff to include allegations showing the venue to be proper.'"); *Estate of Abtan v. Blackwater Lodge & Training Ctr.*, 611 F. Supp. 2d 1, 10 (D.D.C. 2009) ("[B]ecause lack of venue is an affirmative defense, 'the plaintiff[s][are] not required to include allegations showing that the district in which the action has been brought is one of proper venue.'"). Even accepting that this case is controlling,[7] *Hoover* does not clearly rest the burden of persuasion with plaintiffs.

---

[6] In light of *Myers*, Defendants' reliance on *Funnelcap, Inc. v. Orion Indus., Inc.*, 392 F. Supp. 938 (D. Del. 1975) as authoritative or even persuasive authority on which party bears the burden of proof with respect to an improper venue motion is misplaced. *See, e.g., Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*, No. CV 17-379-LPS, 2017 WL 3980155, at *13 (D. Del. Sept. 11, 2017) ("[T]he Court of Appeals for the Third Circuit—the Circuit in which this District is located—has expressly held that the moving party has the burden of proving that venue is improper.").

[7] *Hoover* itself seems to imply that regional circuit law should control the allocation of the burden in the venue context by supporting its instruction on venue facts with citation to two district court cases of the same circuit from which the underlying district court case emanated. 84 F.3d at 1410 (citing cases from Missouri and Minnesota in the context of an appeal from a district court in Nebraska). *See also* 28 U.S.C.A. § 41 (2017) (defining the Eighth Circuit to include, *inter alia*, Minnesota, Missouri, and Nebraska). If Fifth Circuit law controls, then *Hoover* is ultimately merely a persuasive interpretation of Eighth Circuit law, and without clear guidance from the Fifth Circuit this Court concludes

Instead, the language on which Defendants rely simply describes the uncontroversial proposition that venue facts included in a complaint are accepted as true on a motion to dismiss unless defendants provide contrary evidence. *Hoover*, 84 F.3d at 1410 ("The complaint alleged that he made all major decisions concerning the business involved in this lawsuit; this allegation is accepted as true for venue purposes. Venue is based on the facts alleged in the well-pleaded complaint."); *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-CV-443-JRG, 2017 WL 3704762, at *2 (E.D. Tex. Aug. 28, 2017) (explaining the appropriate evidentiary framework for addressing a motion to dismiss for improper venue). Accordingly, this Court declines to read *Hoover*, to the extent it is controlling, as requiring the plaintiff to bear the burden of establishing that venue is proper. In the absence of clear guidance from either the Federal or Fifth circuits, the Court concludes that the defendant should bear the burden to explain why its venue privilege is jeopardized in a particular case, which also seems to be the majority view of courts in this circuit. *See, e.g., Am. GNC Corp. v. ZTE Corp.*, No. 417CV00620ALMKPJ, 2017 WL 5163605, at *2 (E.D. Tex. Oct. 4, 2017) (concluding that a majority of courts in the Fifth Circuit place the burden on defendants), *report and recommendation adopted*, No. 4:17CV620, 2017 WL 5157700 (E.D. Tex. Nov. 7, 2017); 14D Wright & Miller, *Federal Practice & Procedure* § 3826 (4th ed. 2017) ("There are many cases—predominantly, but not exclusively, from the Third and Fifth Circuits—holding that the burden is on the objecting defendant to establish that venue is improper, because venue rules are for the convenience and benefit of the defendant.").

---

that the burden of proof should rest with the defendant. However, viewed more narrowly, the question of which party bears the burden of proof under § 1400(b) could be considered a question unique to patent law for the same reason that waiver of a claim construction argument is unique to patent law even though the question of waiver is generally a procedural one. *See Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241 (Fed. Cir. 2005) (holding that while "[w]aiver is a procedural issue," the question of whether there has been "waiver of a claim construction argument . . . [is] indisputably unique to patent law"). Taking that view, *Hoover* would be controlling. However, it is unnecessary to answer this question because neither Fifth nor Federal Circuit law clearly rests the burden of persuasion in the venue context with plaintiffs (or defendants).

### b. The Venue Inquiry

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *TC Heartland*, 137 S. Ct. at 1515. This statutory language calls for two distinct inquiries. The first depends on where each defendant "resides." 28 U.S.C. § 1400(b). The second depends on where each defendant has a "regular and established place of business," so long as that place is also "where the defendant has committed acts of infringement." *Id.* If venue is not proper under either inquiry, a defendant may move to dismiss the case or transfer it to a district in which the case could have originally been brought. Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a).

#### i. Whether Defendants Reside Here

According to *TC Heartland*, a domestic corporation "resides" in its State of incorporation. 137 S. Ct. at 1517 ("[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute.").

Defendant FedEx Office is incorporated in Texas, with its principal place of business in this District. (Dkt. No. 84 at 4.) Accordingly, venue is proper under the first prong of § 1400(b). *TC Heartland*, 137 S. Ct. at 1517.

The remaining Defendants are incorporated in either Delaware, Arkansas, Ohio, or Pennsylvania. (Dkt. No. 84 at 3–5.) Accordingly, venue in this District is only proper with respect to these defendants if the second prong of § 1400(b) is satisfied.

#### ii. Whether Defendants have a Regular and Established Place of Business and have Committed Acts of Infringement Here

"[W]here the defendant has committed acts of infringement and has a regular and established place of business" is an inquiry with two subparts. 28 U.S.C. § 1400(b). Each subpart

is analyzed below with respect to FedEx Express, FedEx Custom Critical, FedEx Ground, FedEx Freight, and FedEx Supply Chain.[8]

### 1. **Regular and Established Place of Business**

As the Federal Circuit recently explained, in order to conclude that a defendant has a regular and established place of business in a particular district: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Essentially, this test anchors the regular and established place of business inquiry to "a physical, geographical location in the district from which the business of the defendant is carried out" that the defendant has also "ratif[ied]" as its own place of business through "affirmative[] act[s]." *Cray*, 871 F.3d at 1362–1366. In explaining how to determine whether this particular place is "regular" or "established," the Federal Circuit has emphasized that courts should be guided by the plain meaning of "regular," *i.e.* "steady, uniform, orderly, and methodical," and "established," *i.e.* "settled certainly, or fixed permanently." *Id.* (internal brackets removed).

Plaintiff's Complaint alleges that FedEx Express, FedEx Custom Critical, FedEx Ground, FedEx Freight, and FedEx Supply Chain carry out business from "a physical, geographical location" in this district. *Cray*, 871 F.3d at 1362–1363. For example, the Complaint includes allegations that Defendant FedEx Express and FedEx Freight actually operate numerous physical retail and service locations in this District. (Dkt. No. 1 at ¶ 16; Dkt. No. 32 at ¶ 16; Dkt. No. 86-17.) Plaintiff further alleges that the other FedEx entities operate and provide infringing services from these same locations. (Dkt. No. 1 at ¶ 16 (alleging that these service centers "provide

---

[8] FedEx Office resides in this District and thus it is not necessary to analyze whether it also has a regular and established place of business here. Additionally, the Court declines to analyze this aspect of § 1400(b) with respect to FedEx Corp. since such analysis would be incomplete on this record and because further development of such facts would be unnecessarily costly given that Defendants' have waived their venue objection.

services . . . on behalf of . . . FedEx Ground"); Dkt. No. 1 at ¶ 51 (addressing the services provided by Defendant FedEx Custom Critical); Dkt. No. 85 at 21 (explaining that FedEx Custom Critical operates from the FedEx Freight locations in this District); Dkt. No. 1 at ¶ 58 (addressing services provided by FedEx Supply Chain).)

Defendants have not controverted these facts. At most, Defendants point to a declaration filed with their Motion to Transfer (Dkt. No. 84 at 13 (citing Dkt. No. 34-1).) However, this declaration merely argues that it would be more convenient to litigate this case in Defendants' preferred venue. For example, it notes that "FedEx has no employees in Texas currently responsible for the development . . . of any of the FedEx technologies named in the Complaint." (Dkt. No. 34-1 at ¶ 29.) This claim, like the declaration itself, falls short of showing that the various FedEx entities do not operate or provide services from locations in this District. Ultimately, Defendants did not provide evidence showing that FedEx Express does not operate the retail locations identified by Plaintiff or that the other FedEx entities, such as FedEx Ground and FedEx Supply Chain, do not also operate from these locations. Defendants also did not provide evidence to show that FedEx Custom Critical does not operate from the FedEx Freight locations that Defendants have admitted exist in this district. (Dkt. No. 32 at ¶ 16 (admitting that FedEx Freight operates locations in this District); Dkt. No. 85 at 21 (explaining that FedEx Custom Critical operates from FedEx Freight locations in this district).)

Taking Plaintiff's allegations as true, as the Court must, and considering the additional evidence provided by Plaintiff and uncontroverted by Defendants, *Kranos,* 2017 WL 3704762, at *2 (collecting cases explaining that "a district court may look beyond the complaint when deciding a motion to dismiss based on improper venue"), the Court concludes that FedEx Express, FedEx Custom Critical, FedEx Ground, FedEx Freight, and FedEx Supply Chain "actually engage" in

business from physical locations in this district. *Am. GNC Corp. v. ZTE Corp.*, No. 4:17CV620, 2017 WL 5157700, at *1 (E.D. Tex. Nov. 7, 2017) (Mazzant, J.).

Defendants have also offered no evidence from which the Court could conclude that these numerous locations are "sporadic" or "special" rather than "regular" and "established." *Cray*, 871 F.3d at 1362–63. In fact, Plaintiff's allegations and evidence demonstrate that these locations are fixed and reasonably permanent. (*See, e.g.,* Dkt. No. 85 at 21; Dkt. No. 1 at ¶ 16.)

Finally, Defendants have not shown that these locations have not been "ratif[ied]" by FedEx Express, FedEx Custom Critical, FedEx Ground, FedEx Freight, and FedEx Supply Chain. *Cray*, 871 F.3d at 1362–63 ("Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place."). In fact, the allegations and evidence suggest the ratification *Cray* requires. *See Am. GNC Corp. v. ZTE Corp.*, No. 4:17CV620, 2017 WL 5157700, at *1 (E.D. Tex. Nov. 7, 2017). For example, the FedEx website advertises that FedEx Ground and FedEx Express provide services from "Ship Centers" in this District, (Dkt. No. 86-17), which are all branded from the outside with the same FedEx logo used by each of the Defendants in this case (Dkt. No. 86-26). *See also Cray*, 871 F.3d at 1363 ("Marketing or advertisements also may be relevant, but only to the extent they indicate that the defendant itself holds out a place for its business."); *Am. GNC Corp. v. ZTE Corp.*, No. 417CV00620ALMKPJ, 2017 WL 5163605, at *3 (E.D. Tex. Oct. 4, 2017) (giving weight to "external representations to customers that [defendant] operates [in the district]"), *report and recommendation adopted*, No. 4:17CV620, 2017 WL 5157700 (E.D. Tex. Nov. 7, 2017). Plaintiff provided similar evidence with respect to FedEx Freight (Dkt. No. 86-33 (advertising the hours of operation for a FedEx Freight location, including the times at which customers could obtain services from the location)) and FedEx Custom Critical (Dkt. No. 85 at 21 (explaining that FedEx

Custom Critical operates from FedEx Freight locations)). With respect to FedEx Supply Chain, Defendants themselves represented to this Court that FedEx Supply Chain operates from its warehouses throughout Texas. (Dkt. No. 60 at 15:22–16:1 ("They operate warehouses in Texas. We would admit that fact.").)

Ultimately, the presence of FedEx Express, FedEx Custom Critical, FedEx Ground, FedEx Freight, and FedEx Supply Chain in this District meets and exceeds what *Cray* requires. The various FedEx locations established in this District are not merely places from which Defendants happen to carry out business because of an employee or a customer. These locations are stores and facilities operated by Defendants for their business purposes and held out to consumers as places from which customers can tap into Defendants' vast shipping network.

### 2. <u>Acts of Infringement</u>

In assessing whether a defendant has committed an act of infringement within the District, an allegation of infringement-even if contested-is sufficient to establish venue is proper. *See, e.g., Patent Holder LLC, v. Lone Wolf Distributors, Inc. & Lone Wolf R&D LLC*, No. 17-23060-CIV, 2017 WL 5032989, at *5 (S.D. Fla. Nov. 1, 2017) ("Although this allegation may be contested, it satisfies the 'acts of infringement' requirement of § 1400(b)."); *Symbology Innovations, LLC v. Lego Sys., Inc.*, No. 2:17-CV-86, 2017 WL 4324841, at *13 (E.D. Va. Sept. 28, 2017). Such reflects the fact that "[t]he issue of infringement is not reached on the merits in considering venue requirements." *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).

Under 35 U.S.C. § 271, an "act of infringement" includes making, using, offering to sell, or selling a patented invention. *See also Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*, No. CV 17-379-LPS, 2017 WL 3980155, at *13 (D. Del. Sept. 11, 2017) (analyzing the "acts of infringement" requirement in the context of Hatch-Waxman/ANDA cases); *Symbology*, 2017 WL

4324841, at *7 ("'The acts of infringement required to support venue in a patent infringement action need not be acts of direct infringement, and venue does lie if the defendant only induced the infringement or contributed to the infringement' in the forum.").

While Defendants acknowledge that an allegation of infringement is sufficient to satisfy this element of § 1400(b), Defendants maintain that "IV2's pleadings fail to even plausibly allege—as they must—that FedEx movants independently have anything to do with the accused instrumentalities, much less that each one of the Defendants 'has been directly involved in such activities' in this District." (Dkt. No. 84 at 11.) Defendants also argue that Plaintiff's allegations "impermissibly aggregate[]" the different defendants into a single entity, "FedEx," and then identify infringement committed by "FedEx" rather than any particular defendant. (*Id.*)

However, the Complaint does specifically allege, in detail, infringement that is tied to individual defendants and, in other instances, alleged against *all* defendants. For example, Plaintiff alleges that infringing services are offered "on behalf of . . . FedEx Express, and FedEx Ground" at the various FedEx Office Print and Ship Centers located in this District. (Dkt. No. 1 at ¶ 16.) Plaintiff also alleges that "FedEx Freight operates 28 service centers in Texas, including at least 6 in the Eastern District of Texas . . . which services [sic] centers provide infringing services" and that "FedEx infringes claim 1 of the '715 patent at least because GENCO [*i.e.* FedEx Supply Chain] uses a method of tracking tags (e.g., RFID tags) at several successive points of a business process." (*Id.* at ¶¶ 16, 61.) Finally, Plaintiff further alleges that *all* of the defendants infringe with respect to some of the Asserted Patents.[9] (*See, e.g.,* Dkt. No. 98 at 8 ("[E]ach Defendant is

---

[9] In the absence of clear guidance from the Supreme Court or the Federal Circuit on whether "acts of infringement" must occur at the defendant's regular and established place of business, *Raytheon Co. v. Cray, Inc.*, 258 F. Supp. 3d 781 (E.D. Tex. June 29, 2017) (noting the lack of clear authority), *order vacated on other grounds In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017), the Court declines to read such a requirement into the statute. *See, e.g., Chadeloid Chem. Co. v. Chicago Wood Finishing Co.*, 180 F. 770, 771 (C.C.S.D.N.Y. 1910) (Hand, J.) ("Even if they committed no act of infringement there, it would still be a place of business within the act, which clearly differentiates between

accused of using electronic documents (e.g., shipping labels) in a way that infringes the asserted claims of the '586 patent— namely by sending, receiving, and decoding them.").)

Moreover, courts routinely "look beyond the complaint when deciding a motion to dismiss based on improper venue." *See, e.g., Kranos*, 2017 WL 3704762, at *2 (collecting cases). In light of this, it simply strains credibility for Defendants to argue that they did not or could not discern which FedEx entities allegedly infringe and how. Defendants' own Motion identifies specific defendants and explains how they are alleged to have infringed. (*See, e.g.,* Dkt. No. 84 at 4 ("The IV2 Complaint argues that GENCO [*i.e.* FedEx Supply Chain] only infringes U.S. Patent No. 7,199,715 . . . ."); Dkt. No. 60 at 15:11-14 ("[Defendants' counsel:] IV's complaint suggests that SenseAware infringes by way of FedEx Custom Critical, which offers a product called ShipmentWatch.").) Defendants have also acknowledged that this alleged conduct happens in this District. (Dkt. No. 60 at 13:3–8 ("[Defendants' counsel:] And to the extent [infringing] use is really relevant to the inquiry [under § 1404], there's at least as much if not more use that goes on in the Western District of Tennessee. FedEx Office operates retail branches all across the country. **The use happens here.** The use also certainly happens in -- in the Western District of Pennsylvania -- sorry, of Tennessee." (emphasis added)).)

Ultimately, Plaintiff has set out a prima facie case of infringement against Defendants, individually and collectively, and Defendants have not countered this by offering any evidence that FedEx Express, FedEx Custom Critical, FedEx Ground, FedEx Freight, and FedEx Supply Chain do not offer or use the accused products in this District.[10] This ends the acts of infringement inquiry under § 1400(b).

---

the two."). However, in this case Plaintiff has tied the allegations of infringement to Defendants' physical presence in this district.

[10] Defendants also argue, in a single footnote, that there is no case or controversy between Plaintiff and FedEx Office. While the Court must address this issue, *Boeing Co. v. Comm'r of Patents and Trademarks*, 853 F.2d 878, 881 (Fed.

## III.    Conclusion

Based on the foregoing analysis, Defendants' Motion (Dkt. No. 84) is **DENIED**.

**So ORDERED and SIGNED this 22nd day of November, 2017.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

Cir. 1988) ("The issue of standing calls into question the power of the court to hear and decide a case, and it is impossible for a party to waive this requirement."), Defendants' argument on this point is frivolous. Plaintiff has alleged that FedEx Office provides infringing services. (Dkt. No. 1 at ¶ 16; Dkt. No. 85 at 6 ("FedEx Office uses the Accused Instrumentalities in the District. . . .").) Defendants do not agree that FedEx Office infringes. That dispute is a case or controversy.