IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| INTELLECTUAL VENTURES II LLC,<br><br>Plaintiff,<br><br>v.<br><br>FEDEX CORP., FEDERAL EXPRESS CORP., FEDEX GROUND PACKAGE SYSTEM, INC., FEDEX FREIGHT, INC., FEDEX CUSTOM CRITICAL, INC., FEDEX OFFICE AND PRINT SERVICES, INC., and GENCO DISTRIBUTION SYSTEM, INC. (d.b.a. FEDEX SUPPLY CHAIN DISTRIBUTION SYSTEM, INC.),<br><br>Defendants. | Civil Action No. 2:16-cv-00980-JRG<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' MOTIONS *IN LIMINE***

██████████████████████████

Defendants FedEx Corp., Federal Express Corp., FedEx Group Package System, Inc., FedEx Freight, Inc., FedEx Custom Critical, Inc., FedEx Office and Print Services, Inc., and GENCO Distribution System, Inc. ("the FedEx Defendants") move for an order *in limine* instructing counsel and all witnesses not to mention, discuss, or allude to any of the following issues, whether in *voir dire*, opening statement, examination of witnesses, offering of evidence, interposing or arguing objections, eliciting testimony, closing argument, or any other manner without first approaching the bench and seeking permission from the Court. If these matters are injected into the trial of this case through a party, attorney, or witness, they risk causing irreparable harm to the FedEx Defendants that no jury instruction could cure. Additionally, sustaining an objection to questions, comments, or other offers of evidence as to such topics at trial would serve only to reinforce the prejudicial impact of such matters. For the same reasons, curative instructions are incapable of preventing the prejudicial impact of these topics.

**1. IV Should Be Precluded from Referencing Noninstituted *Inter Partes* Review Proceedings**

The Court should prevent IV from referencing any noninstituted *inter partes* review proceedings, including reference to claims that were not instituted and any decisions by the Patent Trial and Appeal Board ("Board") related to noninstituted claims. Denials of IPR petitions have no probative value to any issue before the jury because such denials lack preclusive effect. *See Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1300 (Fed. Cir. 2016) (no estoppel for noninstituted grounds). Moreover, the Board employs different standards, including those for claim construction, thus evidence of the Board's findings would be irrelevant, confusing, and prejudicial. The Board also elected to exercise its procedural discretion for certain noninstituted petitions and provided no substantive analysis—these decisions are particularly unhelpful to the trier of fact in this case. Therefore, any marginal probative value of the Board's

noninstitution decisions, whether on substance or on procedure, are far outweighed by the risk of substantial prejudice to the FedEx Defendants. *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1324-25 (Fed. Cir. 2014) (excluding evidence of Patent Office proceedings from trial by finding its probative value substantially outweighed by the risk of unfair prejudice and jury confusion).

For example, jurors may be misled into believing that the Patent Office already decided the validity of IV's patents, or even that a noninstitution decision is an affirmative finding of validity by the Board. This would significantly undercut the FedEx Defendants' invalidity contentions at trial and confuse to the jury. Any explanation provided by the parties or the Court to minimize this prejudice, including an explanation of the procedural nuances of noninstitution decisions, the bases for the Board's denials, or the scope of the noninstituted petitions, would fail to cure the clear confusion and prejudice created by their reference.

This Court has previously excluded evidence of noninstituted IPR petitions for these reasons. *See, e.g.*, *Realtime Data LLC v. NetApp, Inc.*, No. 6:16-cv-00961, slip op. at 2 (E.D. Tex. Dec. 20, 2017) (Dkt. 301) (Ex. A); *Barry v. Medtronic, Inc.*, No. 1:14-cv-00104, slip op. at 4-5 (Oct. 28, 2016) (Dkt. 379) (Ex. B). Other districts have as well. *See, e.g.*, *ABS Glob., Inc. v. Inguran, LLC*, No. 3:14:cv-00503, 2016 WL 3996167, at *7-8 (W.D. Wis. July 22, 2016) ("Any probative value of the PTAB ruling is far outweighed by the potential for unfair prejudice and risk of jury confusion because the IPR proceeding is subject to different standards, purposes and outcomes than the original prosecution and the court proceeding."). Accordingly, under FED. R. EVID. 403, the Court should exclude any evidence or argument regarding IPRs for which the Board denied institution. This motion *in limine* is not intended to cover admissions by parties,

including admissions made by party's experts presented in, for example, expert declarations and deposition testimony.

### 2. IV Should Be Precluded from Referencing Any *Inter Partes* Review Final Written Decision

Similar to the above request, the Court should exclude IV from referencing any final written decision from any IPR proceeding. Final written decisions for four pending IPR proceedings currently instituted against IV's patents are due on or around July 25, 2018. *See* IPR2017-00729, IPR2017-00741, IPR2017-00787, IPR2017-00859. To the extent any final written decision is issued before or during trial, IV should be precluded from referencing it because doing so would present extreme prejudice to the FedEx Defendants. *See, e.g.*, *VirnetX*, 767 F.3d at 1324-25; *Realtime Data LLC*, slip op. at 2 (Ex. A); *Arthrex, Inc. v. Smith & Nephew, Inc.*, No. 2:15-cv-01047, slip op. at 2 (E.D. Tex. Nov. 8, 2016) (Dkt. 261) (Ex. C).

A jury is likely to be confused as to the meaning of a final written decision, including how findings of validity or invalidity affect the present case. Patent claims are not canceled following a final written decision until "the time for appeal has expired or any appeal has terminated," 35 U.S.C. § 318(b), and a jury is ill-equipped to understand the complicated procedural mechanisms by which an IPR decision is appealed. Thus, entry of this evidence should be excluded. *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, No. 2:12-cv-00068, 2013 WL 10253110, at *1 (E.D. Tex. Oct. 30, 2013) ("While the pending *Inter Partes* Review may have some relevance, the Court finds that the danger of undue prejudice is extremely high and that danger cannot be mitigated simply by the use of a limiting instruction.") (citations omitted); *ABS Glob., Inc. v. Inguran, LLC*, No. 14-cv-00503, 2016 WL 4009987, at *3 (W.D. Wis. July 25, 2016) (excluding reference to IPR proceedings on appeal at the Federal Circuit because it creates a "high risk of undue prejudice and confusion, both because the standards

involved in IPR proceedings are different and because the IPR proceedings have yet to be resolved").

### 3. IV Should Be Precluded from Referencing That the Patentee Overcame a Prior Art Reference Listed on the Face the Asserted Patents

The Court should preclude IV from presenting arguments that the patentee overcame a prior art reference listed on the face of an asserted patent, as such evidence will undoubtedly confuse the jury and severely prejudice the FedEx Defendants. *See Arthrex,* slip op. at 2 (Ex. C).

As with other proceedings, referencing whether the Patent Office considered a particular reference or not has more prejudicial effect than probative value. Jurors are likely to misbelieve that the Patent Office conclusively decided the validity of IV's patents with respect to a considered reference and disregard Defendants' arguments otherwise at trial. Compounding this, it is likely that IV will move to exclude evidence of the Defendants' instituted IPR proceedings—proceedings that in some cases ***are based on patents listed on the face of the asserted patents***. *See* IPR2017-00729 (trial instituted based on *Rappaport*, which was listed on the face of the '581 patent). It would be extremely unfair to allow IV to argue a particular reference was already considered by the Patent Office, and then preclude the Defendants' from presenting evidence that the same reference is currently part of a proceeding (before a higher authority in the Patent Office) to invalidate IV's patent. The jury should hear the full story or none at all.

### 4. IV Should Be Limited to the Infringement Theories Presented in Its Expert Reports

IV should be prevented from presenting infringement theories that are not disclosed in its expert reports. Under Rule 26(a)(2)(B), a testifying expert witness must provide a report containing a complete statement of all opinions and the facts to support those opinions. An expert cannot testify to opinions that are not disclosed in their report unless the failure to disclose

"was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1368-69 (Fed. Cir. 2006); *Gonzalez v. Infostream Grp., Inc.*, No. 2:14-cv-906, 2016 WL 475172, at *3 (E.D. Tex. Feb. 7, 2016) ("Rule 26 prevents [the expert] from testifying outside the scope of his report.").

As one notable example, IV's complaint, infringement contentions, and expert reports nowhere alleged that any Defendant was vicariously liable for allegedly infringing the '586 patent. After Defendants pointed out how no named Defendant makes, uses, or sells the most of the '586 Accused Instrumentalities, IV's expert tried to suggest—for the first time at his deposition—that FedEx Corp. was vicariously liable for the acts of an unnamed entity FedEx Services. *See* Dkt. 271 at 8-12; Dkt. 364 at 4-5. After Defendants pointed out the flaws in this allegation as well (*see, e.g.*, Dkts. 271, 275), IV then presented yet another new theory in its opposition for summary judgment. There, IV alleged that "FedEx" collectively (IV did not specify who) was vicariously liable for the acts of its ***customers***. Dkt. 356 at 13-14. Undeterred, IV then inconsistently maintained in still another paper that FedEx Express and Ground are ***not*** vicariously liable for direct infringement of the '586 patent, *see* Dkt. 353 at 3, then later asserted that they ***are***, *id.* at 20, and all the while never explaining whose actions they are purportedly liable for. Simply put, it will be impossible for the Defendants to mount a meaningful defense against such shapeshifting arguments at trial, and the risk of jury confusion is substantial. Accordingly, the Court should limit IV to presenting infringement theories enumerated in its expert reports and not permit IV to change its arguments midstream to suit the needs of the moment.

### 5. IV Should Be Precluded from Alleging Infringement by Unnamed Parties in the Case, including FedEx Services

IV should be precluded from referencing, eliciting testimony (including expert testimony), or presenting any argument alleging infringement by any unnamed party. From the outset of this case, the FedEx Defendants made IV aware that FedEx Services ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *See* Dkt. 34 at 2, 5 (finally acknowledged by IV at Dkt. 367 at 5). Despite this knowledge, IV chose not to amend its complaint to add FedEx Services. Therefore, IV should be precluded from alleging any type of infringement against FedEx Services or any other unnamed entity because it is not probative of any fact at issue in this case and would only serve to confuse the jury. *See Home Ins. Co. v. Gates McDonald & Co.*, No. cv-01-07365, 2004 WL 5486631, at *3 (C.D. Cal. Feb. 9, 2004) (excluding evidence regarding relationship between defendant and corporate parent as irrelevant). The only reason for IV to proffer testimony regarding non-party FedEx Services would be to conflate the FedEx entities and/or to impute their actions to named defendants, which this Court has previously recognized as improper. *See, e.g.*, *Realtime Data, LLC v T-Mobile U.S.A., Inc.*, No. 6:10-cv-493, slip op. at 2 (E.D. Tex. Jan. 25, 2013) (Dkt. 599) (Ex. I) (Granting motion *in limine* precluding remarks imputing improper acts by non-party Flash Networks to defendant T-Mobile) (Ex. D). The risk of juror confusion is substantial here, given the similar naming of the various FedEx entities, and the jury's presumed lack of familiarity with the corporate and legal distinctions between the various FedEx corporate entities.

### 6. IV Should Be Precluded from Presenting Evidence on Conception and Reduction to Practice Beyond that Stated in its Responses to Interrogatory No. 16

The date of invention is presumed to be the date a patent application is filed unless shown otherwise. *See Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000). To prove an earlier date, the patent holder has the burden to show the invention was (a) reduced to practice prior to the filing date, or (b) conceived prior to the filing date and the patent holder exercised diligence in reducing the invention to practice. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577-78 (Fed. Cir. 1996). Proving an earlier conception date requires corroborating evidence—inventor testimony is insufficient as a matter of law. *Id.* at 1577; *see also Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967-68 (Fed. Cir. 2014).

IV should be precluded from discussing conception, reduction to practice, or any other information regarding the development of the alleged inventions beyond the information specified in IV's responses to Interrogatory No. 16. Ex. E. For the '356 patent, IV provided no information beyond that stated on the face of the patent (*id.* at 3), and thus IV should be precluded from discussing conception, reduction to practice, or other information regarding the development of the alleged invention of the '356 patent. For the '715 patent, IV's original response merely stated information from the face of the patent (*id.*), and its supplemental response made conclusory statements about a "team" at Kimberly-Clark that developed the invention but lacked any citation to evidence (*id.* at 5). Neither response conveyed substantive information, and thus IV should be precluded from discussing conception, reduction to practice, or other information regarding the development of the alleged invention of the '715 patent. For the '581 patent, the only evidence referenced in IV's supplemental response was a purported invention disclosure form, IV-FEDEX00129596-99. *Id.* at 3-4. Accordingly, IV should be limited to referencing this form, and no other information on conception or reduction to practice

for the '581 patent. Lastly, for the '586 patent, IV's interrogatory response provided no information beyond that stated on the face of the patent, and thus it should be precluded from discussing conception, reduction to practice, or other information regarding the development of the alleged invention of the '586 patent. Further, IV's Rule 30(b)(6) witness on conception and reduction to practice, Thomas Choi, was unable to provide any information on the topic beyond that stated in IV's responses to Interrogatory No. 16. Choi Dep. 57:6-60:4, Nov. 9, 2017 (Ex. F).

### 7. IV Should Be Precluded from Identifying Irrelevant and Prejudicial Licenses, Licensees, or Royalties from Its Portfolio

The Court should preclude IV from identifying licenses, licensees' names, royalties, or revenue from its portfolio that are irrelevant and prejudicial. Examples include ▮▮▮▮, which are portfolio licenses that include payments ranging from ▮▮▮▮. None of these licenses has any relevance to the asserted patents, since they include licenses to hundreds or thousands of IV patents. Neither damages expert in this case relies on them to support their respective opinions. Other examples include IV's alleged licensing revenues, which it claims as "exceeding $4.3 billion." *See* Intellectual Ventures: Investor Relations, http://www.intellectualventures.com/about/investor-relations (last visited March 28, 2018).

To support a damages calculation, prior licenses must be "linked" to the patents-in-suit. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 871 (Fed. Cir. 2010). Without linking the prior licenses, the fact finder cannot "adequately evaluate[] the probative value of [the] agreements." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1328 (Fed. Cir. 2009). The proponent bears the burden to prove the licenses are sufficiently comparable to the hypothetical license. *Id.* at 1329; *see also CoreLogic Info. Sols., Inc. v. Fiserv, Inc.*, No. 2:10-cv-132, 2012 WL 4761739, at *2 (E.D. Tex. Sept. 20, 2012) ("[N]o party may introduce the amount of a settlement or royalty

██████████████████████████████████

payment until the technical and economic comparability of the settlement or license has been established or will not be disputed."); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) (references to total revenue do nothing but "skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue"). Here, there is no dispute that these licenses and their purported revenue are irrelevant, since neither side's damages expert relies on them. Their only impact at trial would be to unfairly prejudice the jury into considering a damages ballpark ███████████ and to imply, through peer pressure, that other large companies have taken licenses to other patents in IV's portfolio. Under FED. R. EVID. 402 and 403, these licenses should be excluded.

### 8. IV Should Be Precluded from Referencing the Parties' Discovery Disputes and/or the Adequacy of Discovery

IV should be precluded from referencing or introducing evidence of any discovery dispute between the parties, including any alleged discovery deficiencies, the subject matter of any such disputes, correspondence, and associated motions to compel. Discovery disputes, motions to compel, and their subject matter are not relevant to any disputed issue presented at trial and would be prejudicial to the parties. FED. R. EVID. 402, 403; *see, e.g.*, *Ceats, Inc. v. TicketNetwork, Inc.*, 2:15-cv-01470, slip op. at 3 (E.D. Tex. Jan. 17, 2018) (Dkt. 254) (Ex. G); *Evicam Int'l, Inc. v. Enforcement Video, LLC*, 4:16-cv-00105, slip op. at 3 (E.D. Tex. June 30, 2017) (Dkt. 177) (Ex. H). The Court should exclude any such evidence from the jury.

### 9. IV Should Be Precluded from Referencing Procedural Events in This Case

The Court should exclude all evidence, argument, or reference to any pretrial motions or orders. For example, IV should be precluded from referencing any procedural motions filed by the FedEx Defendants to transfer or stay the case. Similarly, IV should be prevented from referencing its own procedural motions, such as those to amend its infringement contentions or

complaint. Pretrial motions and procedural events relate to issues of law that are irrelevant to the trier of fact, and would serve only to prejudice the parties. FED. R. EVID. 403, 605; *Jones v. Benefit Trust Life Ins. Co.*, 800 F.2d 1397, 1400 (5th Cir. 1986) (holding that pretrial rulings are not relevant evidence and that their admission would be "at odds with FED. R. EVID 605"); *see also Evicam*, slip op. at 3 (Ex. H).

### 10. IV Should Be Precluded from Asserting Infringement Against "FedEx" Collectively

The Court should preclude IV from asserting infringement theories against "Defendants," "FedEx," or any other collective designation grouping two or more of the Defendants together. In a case where IV is asserting four unrelated patents against seven distinct defendants and at least eleven accused instrumentalities, such collective designations would hopelessly confuse the jury, unfairly prejudice Defendants, and potentially taint the jury's findings. The only conceivable reason for IV to blur corporate distinctions is to conflate the separateness of the Defendants and impute their actions to each other, which this Court has recognized as improper. *See, e.g.*, *Realtime Data*, at slip op. 2 (Ex. I) (granting motion *in limine* precluding remarks imputing acts of a nonparty to a Defendant).

First, asserting infringement against "FedEx" collectively would imply to the jury that all of the named Defendants make, use, or sell all of the accused instrumentalities—a contention IV does not and cannot maintain. *See* Dkt. 353 at 2-4.

Second, asserting infringement against "FedEx" collectively would imply to the jury that the acts of all of the Defendants could be imputed to each other—a theory of vicarious liability contrary to law and not alleged by IV. *See, e.g.*, *Kasprzak v. Am. Gen. Life & Acc. Ins. Co.*, 914 F. Supp. 144, 147 (E.D. Tex. 1996) ("[T]here must be something more than mere unity of interest, ownership, and control for a court to treat the subsidiary as the alter ego of the parent

and make the parent liable for the subsidiary's actions." (citing *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984))); *see also Alford v. Access Indus., Inc.*, No. 1:15-cv-00059, 2016 WL 3460775, at *4 (E.D. Tex. Feb. 8, 2016). IV should not be permitted to ignore corporate distinctiveness just because it might be more argumentatively convenient to do so.

Third, IV has not provided sufficient facts to establish joint or vicarious liability under *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) (en banc). IV has not adduced evidence that any named Defendant "directs or controls" all other Defendants in the case. *Id.* at 1022. Nor has IV alleged liability as a "joint enterprise," which requires "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Id.* at 1023. To the extent IV argues that it has alleged joint enterprise liability, it has not provided any facts to support it.

Fourth, while IV has alleged vicarious liability in a few narrow contexts, *see* Dkt. 353 at 2-4, permitting IV to refer to Defendants collectively would impermissibly assume as true what IV must prove a trial. Just as IV cannot establish infringement by labeling the Defendants as "infringers" generally, IV cannot prove vicarious liability by blurring corporate distinctions and grouping Defendants together in the first instance.

Finally, the jury would infer from IV's collective designations an invitation or implied propriety to do the same. This could irreparably mar the jury's findings and create impossible verdicts, such as a finding that one Defendant makes or uses an accused product that no party alleges it does, or that a Defendant infringes a patent that IV has not accused of infringing. The risk of juror confusion is substantial here, given the similarities in name between many of the

Defendants and the jury's lack of familiarity with the corporate and legal distinctions between FedEx entities. Rather than invite the jury to speculate or guess, IV should be committed to specifically identifying which Defendant it alleges infringes each asserted patent.

## 11. IV Should Be Precluded from Characterizing Actions of the FedEx Defendants as "Stealing," "Copying," "Pirating," or Any Other Improper Taking from IV

Defendants request the Court to preclude IV from characterizing actions of the FedEx Defendants as "stealing," "copying," "pirating," or any other charged words suggesting an improper taking from IV. Such charged words have no probative value and would undoubtedly prejudice Defendants before a jury. FED. R. EVID. 403. For this reason, this Court often precludes plaintiffs in patent cases from using words such as "copying," "stealing," "robbing," or other words implying an improper taking. *See, e.g.*, *Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-00052, slip op. at 13 (E.D. Tex. Sept. 29, 2017) (Dkt. 440) (Ex. J); *Implicit, LLC v. Trend Micro, Inc.*, No. 6:16-cv-00080, slip op. at 6 (E.D. Tex. Oct. 3, 2017) (Dkt. 253) (Ex. K). Defendants respectfully ask the Court to take the same approach here.

## 12. IV Should Be Precluded from Relying on Defendants' Entire Source Code Computer as an Exhibit

Defendants request the Court to preclude IV from relying on Defendant's entire "source code computer" as an exhibit. The source code computer contains nearly three terabytes of source code files. The only sensible purpose IV would have for designating an entire computer full of source codes files is that IV intends to rely on files that it previously chose not to print in accordance with the Protective Order, not to identify in expert reports, and not to include on the exhibit list exchanged in accordance with the DCO. The Court should therefore limit IV to relying on the source code files it specifically designated in its exhibit list, and not countenance IV's implied request to surprise Defendants at trial.

[REDACTED]

During discovery, Defendants permitted IV to make copies of source code files well above the limits imposed by the Protective Order. Dkt. 70 ¶ 10(h). When the time came to exchange exhibit lists, IV asked Defendants for permission to submit a "list of electronic [source code] files" that it wanted to admit as evidence. (Ex. L). Defendants objected to this approach, as it would allow IV to flout discovery deadlines, violate the Court's Protective Order on electronic copies of source code (Dkt. 70 ¶ 10(g)), and theoretically enable IV to rely on documents never specifically identified in its exhibit list or other papers. IV responded by designating the ***entire source code computer*** on its exhibit list. As noted, that computer contains nearly three terabytes of source code.

The Court should prevent this overreach by precluding IV from relying on source code documents not specifically identified on its exhibit lists. "[W]hen a district court has required the identification of exhibits pursuant to a Rule 16 pretrial order, the district court has broad discretion in deciding whether to admit unlisted exhibits into evidence." *Eason v. Fleming Cos., Inc.*, No. 92-1390, 1993 WL 13015208, at *5 (5th Cir. 1993) (citing cases); *see also Gilbert v. Tulane Univ.*, 909 F.2d 124, 127 (5th Cir. 1990). Here, the parties exchanged exhibit lists pursuant to the Court's amended Docket Control Order. It would be highly prejudicial for IV to try to rely on untimely disclosed documents due to the "undue delay" in presenting them. FED. R. EVID. 403. Indeed, doing so would defy the entire purpose of the Court's schedule. The Court should therefore preclude IV from relying on source code documents not specifically identified on its exhibit list. *See, e.g.*, *Eason*, 1993 WL 13015208, at *5 (affirming exclusion of a report offered on the third day of trial when it was not listed on plaintiff's exhibit list); *Gilbert*, 909 F.2d at 127 ("The failure to submit an exhibit for introduction at trial until just days before the

trial begins is a sufficient reason to deny its admission."); *Burdis v. Tex. & P. Ry. Co.*, 569 F.2d 320, 323 (5th Cir. 1978) (affirming exclusion of photographs not listed in a pretrial exhibit list).

### 13. IV Should Be Precluded from Asserting Pre-Suit Knowledge of the Asserted Patents

The Court should preclude IV from asserting pre-suit knowledge of any of the asserted patents at trial. As the party seeking enhanced damages, IV bears the burden of showing it is entitled to the relief sought. *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202-WCB, 2017 WL 2190055, at *1 (E.D. Tex. May 18, 2017)). To date, IV has adduced only two items of evidence purporting to show Defendants' knowledge of the asserted patents: (1) IV's complaint filed on August 31, 2016, and (2) a letter, dated August 30, 2016, purportedly sent via overnight mail from IV to Defendants' in-house counsel. None of IV's damages or technical experts claim that Defendants knew of the asserted patents prior to August 30, 2016. Nor has IV alleged that Defendants knew of the patents before this date in its initial disclosures or any of its interrogatory responses. Thus, under FED. R. CIV. P. 26 and 37, the Court should preclude IV from asserting knowledge of any of the asserted patents prior to August 30, 2016. *See Enova Tech. Corp. v. Initio Corp.*, C.A. No. 10-04, slip op. at 2 (D. Del. Jan 31, 2013) (Dkt. 458) (Ex. M) (precluding plaintiff from offering "improper or insufficient pre-suit knowledge" of the asserted patents); *IGT v. Alliance Gaming Corp.*, No. 2:04-cv-1676, slip op. at 10-11 (D. Nev. Oct. 21, 2008) (Dkt. 953) (Ex. N) (excluding evidence on pre-suit knowledge based on plaintiff's interrogatory responses).

### 14. IV Should Be Precluded from Referencing or Introducing Evidence or Testimony Regarding Unrelated FedEx Litigations and Settlement Amounts

The Court should preclude IV from introducing any argument, evidence, reference, testimony, or elicitation of any testimony related to any other litigations involving the FedEx Defendants, including the amounts for which the FedEx Defendants may have settled other

litigations, that are not expressly addressed in a party's expert report. Prior unrelated cases generally involve different legal issues, different parties, and potentially different patents than those asserted in this litigation, and would only serve to confuse and mislead the jury. Unless specifically discussed by an expert in this case and thus shown to be relevant, they are irrelevant to the issues in the present litigation, and as such have no probative value or legitimate purpose. Accordingly, any reference to prior litigations or settlement amounts should be excluded, except as discussed in a party's expert report, as unfairly prejudicial and tending to mislead and confuse the jury into resolving this case based on factors other than the issues and evidence presented in this case. *See* FED. R. EVID. 402, 403, 408; *See, e.g.*, *Retractable Techs., Inc. v. Beckton, Dickinson & Co.*, 2009 WL 8725107, at *2 (E.D. Tex. Oct. 8, 2009) ("On balance, evidence of other litigation offered to prove Defendant's liability or the extent of damages should be excluded pursuant to at least Federal Rules of Evidence 403, 404, and 408.") (internal citations omitted); *Semcon IP, Inc. v. Huawei Device USA, Inc.*, No. 2:16-cv-00437, slip op. at 2 (E.D. Tex. Dec. 15, 2017) (Dkt. 490) (Ex. O).

██████████

Dated: March 30, 2018

Respectfully submitted,

/s/ Jeffrey A. Berkowitz
Jeffrey A. Berkowitz (VA Bar No. 65149)
 Email: jeffrey.berkowitz@finnegan.com
Elliot C. Cook (pro hac vice)
 Email: elliot.cook@finnegan.com
John Derek McCorquindale
 derek.mccorquindale@finnegan
Michael V. Young, Sr. (pro hac vice)
 Email: michael.young@finnegan.com
Daniel C. Tucker (pro hac vice)
 Email: daniel.tucker@finnegan.com
Joseph M. Schaffner (pro hac vice)
 Email: joseph.schaffner@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive, Suite 800
Reston, VA 20190-5675
(571) 203-2700
Fax: 202-408-4400

Aliza George Carrano (VA Bar No. 78510)
 Email: aliza.carrano@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000
Fax: (202) 408-4400

Eric H. Findlay (Bar No. 00789886)
 Email: efindlay@findlaycraft.com
Roger B. Craft (Bar No. 0004972020)
 Email: bcraft@findlaycraft.com
FINDLAY CRAFT, P.C.
102 North College Avenue, Suite 900
Tyler, TX 75702
(903) 534-1100
Fax: (903) 534-1137

**Attorneys for Defendants FedEx Corp., Federal Express Corp., FedEx Ground Package System, Inc., FedEx Freight, Inc., FedEx Custom Critical, Inc., FedEx Office**

███████████████████████

                                    **and Print Services, Inc., and GENCO Distribution System, Inc. (d.b.a. FedEx Supply Chain Distribution System, Inc.)**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on March 30, 2018, with a copy of this document via email.

/s/ Jeffrey A. Berkowitz
Jeffrey A. Berkowitz