# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

INTELLECTUAL VENTURES II LLC,

    Plaintiff,

    v.

FEDEX CORP., FEDERAL EXPRESS
CORP., FEDEX GROUND PACKAGE
SYSTEM, INC., FEDEX FREIGHT,
INC., FEDEX CUSTOM CRITICAL
INC., FEDEX OFFICE AND PRINT
SERVICES, INC., and GENCO
DISTRIBUTION SYSTEM, INC.,

    Defendants.

Civil Action No.  2:16-cv-00980-JRG

**PROPOSED JURY INSTRUCTIONS**

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY INSTRUCTIONS ................................................................ 1

    A.    General Preliminary Instructions ................................................... 1

    B.    What A Patent Is And How One Is Obtained ................................. 2

    C.    The Positions Of The Parties ......................................................... 5

    D.    Credibility Of Witnesses ............................................................... 8

    E.    Expert Witnesses ........................................................................... 9

    F.    Deposition Testimony .................................................................. 10

    G.    Ruling On Objections .................................................................. 11

    H.    Juror Notebooks .......................................................................... 12

    I.    Direct And Circumstantial Evidence ........................................... 13

    J.    [FedEx's Proposal: No Inference from Filing Suit ...................... 14

    K.    [FedEx's Proposal:  Corporate Parties Involved⸳ ....................... 15

    L.    Standards of Proof ....................................................................... 16

    M.    Outline Of Trial ........................................................................... 18

    N.    Conduct Of The Jury ................................................................... 20

II.    FINAL INSTRUCTIONS .......................................................................... 22

    A.    Introduction ................................................................................. 22

    B.    Demonstratives ............................................................................ 24

    C.    Credibility Of Witnesses ............................................................. 25

    D.    Burdens Of Proof ......................................................................... 27

    E.    Deposition Testimony .................................................................. 28

    F.    Expert Witnesses ......................................................................... 29

    G.    Contentions Of The Parties ......................................................... 30

| | | | |
|---|---|---|---|
| H. | | Patent Claims | 32 |
| | 1. | Independent and dependent claims | 32 |
| | 2. | How a claim defines what it covers | 33 |
| | 3. | The meaning of the claim terms | 34 |
| I. | | Infringement | 41 |
| | 1. | Direct Infringement | 41 |
| | 2. | Literal Infringement | 41 |
| | 3. | Doctrine of Equivalents | 42 |
| | 4. | Infringement of Means-Plus-Function Claims | 44 |
| | 5. | [IV's Proposal: Direct infringement (by attribution)] [FedEx's Proposal: Divided Infringement]. | 45 |
| | 6. | Induced Infringement | 48 |
| J. | | Willful Infringement | 52 |
| K. | | Invalidity | 54 |
| | 1. | Prior Art | 56 |
| | 2. | Person Of Ordinary Skill In The Art | 57 |
| | 3. | Invalidity – Anticipation | 58 |
| | 4. | Invalidity – Obviousness | 60 |
| L. | | Damages | 66 |
| M. | | [FedEx's Proposal: Tennessee Code § 29-10-102 | 76 |
| III. | | AFTER CLOSING ARGUMENTS | 78 |
| A. | | Deliberations: | 78 |

I.    **PRELIMINARY INSTRUCTIONS**

    A.    <u>**General Preliminary Instructions**</u>[1]

Members of the Jury,

Now that you have been sworn in, I have some preliminary instructions to give you before we start with opening statements from the attorneys and then get on to the evidence.

You have been sworn as the jurors of this case.    As the jury, you are the judges of the facts—you will decide and determine all facts in this case.    As the judge, I will give you instructions on the law, decide any questions of law that arise during the trial, and handle matters regarding evidence and procedure.    I am also responsible for the flow of the trial and the decorum in the Court.

At the end of the evidence, I will give you a list of questions that you will then answer. That list of questions is called the "verdict form."    Your answers to those questions will need to be unanimous, and those answers will constitute the verdict in this case.

At no time are you to discuss the case with anyone.    That includes amongst yourselves— you are not to discuss the case with each other until all of the evidence has been presented.    I will instruct you when it is time for you to begin your deliberations, and at that time I will talk to you about discussing the evidence.

---

[1] **Authority**: Adapted from *Hitachi Consumer Elecs. v. Top Victory Elecs.*, No. 2:10-cv-260-JRG, Jury Instructions Dkt. 343, Tr. at 24-25 (April 8, 2013).

B.    <u>**What A Patent Is And How One Is Obtained**</u>[2]

This case involves a dispute about United States patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, I want to explain what a patent is and how one is obtained. The United States Constitution grants Congress the powers to enact laws "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." Using that power, Congress enacted the patent laws.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A United States patent gives the patent holder certain rights for up to 20 years from the date the patent application was filed. The patent holder may prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court. [**FedEx Proposal**: Persons accused of infringing a patent may deny that they infringe and/or deny that the asserted claims of the patent are valid.]

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes a section called the "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, and how to make and use it, in such full, clear, concise, and exact

---

[2] **Authority**: Adapted from Nat'l Jury Instruction Project, *Model Patent Jury Instructions*, (June 17, 2009), Instruction No. 1.1; *Ambato Media, LLC v. Clarion Co., Ltd. et. al.,* 2:09-CV-242-JRG, Final Preliminary Jury Instructions, Dkt. 373 at 2-4 (July 6, 2012); *Eolas Techs. Inc. v. Adobe Sys. Inc. et al.*, 6:09-cv-446-LED, Jury Instructions, Dkt. 1351 at 8-9 (Feb. 9, 2012); AIPLA Model Patent Jury Instructions (2017) at 4-5.

terms so that others skilled in the field will know how to make and use it. The specification concludes with one or more numbered sentences. These are the patent "claims." If the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files a patent application, a PTO patent examiner reviews it to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner may review certain information about the state of the technology at the time the application was filed. The PTO patent examiner may search for and review information that is publicly available or that is submitted by the applicant. This information is called "prior art." The Examiner may review this prior art in determining whether to grant the application. Prior art is defined by law, and, at a later time, I will give you specific instructions on what constitutes prior art. In general, though, prior art includes things that existed before the claimed invention, that were publicly known or used in this country, or that were patented or described in a publication in any country. The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious when compared with the prior art. A patent lists the prior art the examiner considered; this list is called the "cited references." The cited references include the prior art found by the examiner as well as any prior art submitted to the PTO by the applicant.

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects any of the claims, the applicant then responds and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the

patent applicant, may go back and forth for some time until the examiner believes that the application and claims meet the requirements for a patent. The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the PTO grants the patent.

The issuance of a patent by the Patent Office carries with it a presumption that the patent is valid. From the issuance of the patent, it is presumed that a claimed invention is "novel," "useful," "not obvious," and satisfies the other legal requirements for a valid U.S. patent. Each claim of a patent is presumed valid independently of the validity of the other claims.

[**FedEx Proposal**: But that presumption of validity can be overcome if clear and convincing evidence is presented to prove the patent claim is invalid.] A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is not entitled to patent protection because it does not meet the requirements for a patent. [**IV Proposal**: But the presumption of validity remains intact and the burden of proof remains on the party challenging validity, throughout this litigation.] The burden of proof never shifts to the patent owner to prove that its patents are valid. You may not determine to invalidate a patent merely because you believe the invention should be dedicated to the public. It is your job to consider the evidence presented by the parties and determine independently whether or not the Defendant has proven that the patent is invalid.[34]

---

[3] **Authority**: Adapted from The Federal Circuit Bar Association, *Model Patent Jury Instructions*, (July 2016), Instruction A.1; *Ambato Media, LLC v. Clarion Co., Ltd. et. al.,* 2:09-CV-242-JRG, Final Preliminary Jury Instructions, Dkt. 373 at 3-4 (July 6, 2012); AIPLA Model Patent Jury Instructions (2017) at 4-5.

[4] **Authority**: Adapted from The Federal Circuit Bar Association, *Model Patent Jury Instructions*, (July 2016), Instruction A.1; *Ambato Media, LLC v. Clarion Co., Ltd. et. al.,* 2:09-CV-242-JRG, Final Preliminary Jury Instructions, Dkt. 373 at 3-4 (July 6, 2012).

C.    **The Positions Of The Parties**[5]

To help you follow the evidence, I'll now give you a brief summary of the positions of the parties.

The Plaintiff and patent owner in this case is Intellectual Ventures II, LLC, which the parties and I may refer to simply as "Plaintiff," or "Intellectual Ventures."

The Defendants in this case are the following FedEx entities: FedEx Corp., Federal Express Corp., FedEx Ground Package System, Inc., FedEx Freight, Inc., FedEx Custom Critical Inc., FedEx Office And Print Services, Inc., and GENCO Distribution System, Inc.  The parties and I may refer to those entities collectively as "Defendants," [IV's proposal: "FedEx",] or "the FedEx Defendants"  [**FedEx's Proposal:**  but they are separate companies, the significance of which will be explained to you.]

**Intellectual Ventures contends that [FedEx's Proposal:  particular entities of] the FedEx Defendants infringe certain claims of four patents, which we will refer to collectively as the "patents-in-suit."**

The four patents are:

- U.S. Patent No. 6,909,356

- U.S. Patent No. 7,199,715

- U.S. Patent No. 8,494,581

- U.S. Patent No. 9,047,586

It is common practice to refer to a patent by its last three digits.  You will therefore hear these patents referred to as the '356 patent, the '715 patent, the '581 patent, and the '586 patent.

---

[5] **Authority**: Adapted from *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd.*, No. 2:13-cv-213-JRG, Jury Instructions, Dkt. 290, Tr. at 9 (Feb. 9, 2015).

The claims that Intellectual Ventures contends are infringed are referred to as the "asserted claims." Over the course of this case, you will learn more about which claims Intellectual Ventures is asserting.

**Intellectual Ventures also seeks money damages from the FedEx Defendants for allegedly infringing the patents-in-suit.**

- Intellectual Ventures contends that the FedEx Defendants infringe the patents-in-suit by making or using, or encouraging others to use products, systems, and devices that Intellectual Ventures argues are covered by the asserted claims. The parties and I may refer to those products, systems, and devices as the "accused instrumentalities."

- For some of the accused instrumentalities, Intellectual Ventures contends that FedEx Corp.'s and FedEx Freight's infringement is willful.

**The FedEx Defendants deny that any of them infringes the asserted claims.**

- The FedEx Defendants deny that making, using, selling, or offering to sell the accused instrumentalities infringe any of the asserted claims.

- FedEx Corp. and FedEx Freight further deny that any alleged infringement is willful.

**The FedEx Defendants contend that all of the asserted claims are invalid.**

**Intellectual Ventures denies that any of the asserted claims are invalid.**

Your job as the jurors will be to decide whether [**FedEx Proposal**: any of the distinct entities among] the FedEx Defendants infringe any of the asserted claims, and whether the FedEx Defendants have proven that any of the asserted claims is invalid. If you decide that an asserted claim is infringed and is not invalid, you will need to decide the amount of money damages to be

awarded to Intellectual Ventures as compensation for the infringement.

## D.    <u>Credibility Of Witnesses</u>[6]

You are going to be hearing from a number of witnesses in this case, and I want you to keep an open mind while you are listening to the evidence.  You should not decide any of the facts until you have heard all of the evidence.  But while the witnesses are testifying, remember that you are the ones who will have to decide how much credibility and believability to allocate to each of the witnesses.  You may need to decide between the testimony of two witnesses that differ from each other, so you should consider how much or little you believe each witness.

---

[6] **Authority**: Adapted from *Hitachi Consumer Elecs. v. Top Victory Elecs.*, No. 2:10-cv-260-JRG, Jury Instructions Dkt. 343, Tr. at 34-35 (April 8, 2013); *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd.*, No. 2:13-cv-213-JRG, Jury Instructions, Dkt. 290, Tr. at 20-21 (Feb. 9, 2015).

### E.    <u>Expert Witnesses[7]</u>

I also want to talk with you briefly about expert witnesses. When knowledge of a technical subject may be helpful to you jurors (like in this patent case), a person who has special training or experience in that particular field—we refer to them as expert witnesses—is permitted to testify about his or her opinions on technical matters.

You are not required to accept an expert's or any other witness's opinions at all.  It is up to you to decide whether you believe an expert witness, or any witness for that matter, whether that witness is correct or incorrect, or whether or not you want to believe what they say.

I anticipate there will be expert witnesses testifying in support of each side in this case, but it will be up to you to listen to their qualifications, and when they give opinions and explain the bases for those opinions, you will have to evaluate what they say and whether you believe it, and to what degree, if any, you want to give those opinions weight.

---

[7] **Authority:** Adapted from *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd.*, No. 2:13-cv- 213-JRG, Jury Instructions, Dkt. 290, Tr. at 22 (Feb. 9, 2015).

F.    **Deposition Testimony[8]**

During the trial, I also anticipate that testimony is going to be presented to you through what we call depositions.

[**IV's proposal:** In a deposition, they have a court reporter present; the witness is sworn and is under oath, just as if he or she were present in the courtroom; and the parties, through their lawyers, ask them questions and it is recorded.]

[**FedEx's Proposal:** A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony.]

Where the depositions were recorded by video, portions of those video recordings of questions and answers may be played back to you as part of this trial so that you can see the witnesses and hear their testimony. Alternatively, a lawyer or witness might read to you or show you a portion of a witness's testimony.

If that happens, that deposition testimony is entitled to the same consideration insofar as possible and is to be judged as to the credibility, weight, and otherwise considered by you, the jury, in the same way as if the witness had been present physically and had given their testimony from the witness stand in open court.

---

[8] **Authority:** IV's proposal was adapted from *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd.*, No. 2:13-cv-213-JRG, Jury Instructions, Dkt. 290, Tr. at 23 (Feb. 9, 2015); FedEx's proposal was adapted from the Fifth Circuit Pattern Jury Instructions (Civil) (2016).

G.    **Ruling On Objections**[9]

During the trial, it's possible that the lawyers from time to time will make certain objections, and I'll make rulings on those objections. It is the duty of an attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not proper under the orders of the Court and the rules of evidence.

If I sustain an objection to a question addressed to a witness, then you must disregard the question entirely, and you may draw no inference from the wording of it or speculate about what the witness would have said, if I had permitted the witness to answer the question.

However, if I overrule the objection, then you should consider the question and the answer just as if no objection had been made. Upon allowing testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate an opinion as to the weight or effect of such evidence.

If you are shown an exhibit, it means the Court has already ruled that it is admissible, and counsel can present the exhibit and ask such questions as they believe are proper to put it in context.

[**FedEx's Proposal:** During the course of this trial, certain evidence may be admitted for a limited purpose only. When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.]

---

[9] **Authority:** Adapted from *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd.*, No. 2:13-cv-213-JRG, Jury Instructions, Dkt. 290, Tr. at 23-26 (Feb. 9, 2015); FedEx's proposal is adapted from the Fifth Circuit Pattern Jury Instructions (Civil) (2016).

### H.    Juror Notebooks[10]

The court reporter in front of me is here making a record in this case and taking down everything that is said. But a transcript or written version of what's been said will not be available for your use during your deliberations.

The transcript is prepared in the event that there's an appeal to an appellate court to review this case after the trial is complete. So, each of you are going to have to rely on your memories of the evidence in this case.

In a moment, each of you is going to be given a juror notebook. This notebook will include copies of the patents-in-suit, as well as other information you may find helpful during the course of this case. That notebook includes blank pages and a legal pad that you can use to take notes on. It's up to each member of the jury to decide whether or not you want to take notes during the trial, and if you do, how detailed you want those notes to be.

But, remember, those notes are for your own personal use. You have to rely on your memory of the evidence, which is why you should pay close attention to the testimony of each and every witness.

You should not abandon your own recollection because somebody else's notes indicate something different. Your notes are to refresh your recollection, and that's the only reason that you should be keeping them.

Whenever you leave each day, you should leave those juror notebooks on the table in the jury room. They should either be with you at all times in the courtroom or on the table in the jury room and not anywhere else.

---

[10] **Authority:** Adapted from *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd.*, No. 2:13-cv-213-JRG, Jury Instructions, Dkt. 290, Tr. at 26-28 (Feb. 9, 2015); Fifth Circuit Pattern Jury Instructions (Civil) (2016).

## I.    <u>Direct And Circumstantial Evidence</u>[11]

Some of you may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk.

Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

---

[11] **Authority**: Adapted form Ninth Circuit Jury Instructions Committee, *Ninth Circuit Manual of Model Jury Instructions* (2007), Instruction No. 1.9; *Hitachi Consumer Elecs. v. Top Victory Elecs.*, No. 2:10-cv-260-JRG, Jury Instructions Dkt. 351, Tr. at 24-25 (April 12, 2013).

**J.**     [**FedEx's Proposal:**[12] **No Inference from Filing Suit**[13]

The fact that Intellectual Ventures brought a lawsuit and is in court seeking damages creates no inference that it is entitled to a verdict in its favor. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.]

---

[12] IV contends this instruction is inappropriate.

[13] **Authority**: FedEx's proposal is from the Fifth Circuit Pattern Jury Instructions (Civil) (2016); IV does not present a counterproposal. IV contends this instruction is unnecessary and inappropriate.

**K.    [FedEx's Proposal:  Corporate Parties Involved[14,15]**

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. In this case, Intellectual Ventures and all entities included among the FedEx Defendants are separate corporations. While for convenience we've referred to "the FedEx Defendants" collectively when appropriate, I explained earlier that they are, in fact, seven distinct companies.

A parent corporation is not generally liable for the actions of its subsidiaries, including patent infringement. You should thus treat as distinct each separate corporation and legal person unless specific circumstances call for an exception that I determine.

Here, the seven entities comprising the FedEx Defendants must presumptively be treated as distinct legal persons, such that the liability for any claim of patent infringement must be established as to each. When you deliberate on whether there has been infringement in this case, you must separately consider the actions of each FedEx company, and determine if FedEx Corp., Federal Express Corp., FedEx Ground Package System, Inc., FedEx Freight, Inc., FedEx Custom Critical Inc., FedEx Office And Print Services, Inc., and GENCO Distribution System, Inc. each infringe.]

---

[14] **Authority**: FedEx's proposal is adapted from Fifth Circuit Pattern Jury Instructions (Civil) (2016); *United States v. BestFoods*, 524 U.S. 51, 61 (1998); *Manville Sales Corp. v. Paramount Sys. Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990).

[15] IV believes this proposal is unnecessary, inappropriate, prejudicial, and does not fully comport with the law. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022-24 (Fed. Cir. 2015) (*en banc*).

**L.**    **Standards of Proof[16]**

There are two standards of proof that you'll be asked to apply to the evidence depending on the issue that you'll be deciding. The first standard is called "preponderance of the evidence." The second standard is [**IV's proposal:** a higher burden of proof] called "clear and convincing evidence."

Intellectual Ventures' burden of proof on patent infringement is by a preponderance of the evidence. That means you must decide whether Intellectual Ventures has proven infringement facts by showing them to be more likely true than not true.

On the other hand, the FedEx Defendants' burden of proof on invalidity is by clear and convincing evidence.  That means you must decide whether the FedEx Defendants have proven invalidity facts by showing you evidence that gives you an abiding conviction that the truth of the FedEx Defendants' factual contentions is highly probable. [**IV Proposal**: That's a higher standard of proof than a preponderance of the evidence.]

These standards are different from what you may have heard about in criminal cases where the burden of proof is beyond a reasonable doubt. That does not apply in this case. That's a very high standard used only in criminal cases when deciding whether a person should be imprisoned or subjected to some other penalty. [**FedEx Proposal**: Therefore, put it out of your mind in considering whether or not the plaintiff or defendants here have met their burdens of proof.]

[**IV Proposal**: So you should remember that clear and convincing evidence is not as high a burden of proof as beyond a reasonable doubt but is a higher burden of proof than a preponderance of the evidence.]

---

[16] **Authority:** Adapted from *Cassidian Commc'ns, Inc. v. microDATA GIS, Inc.,* No. 2:12- cv-162, Dkt. No. 165, Tr. at 20 (Dec. 16, 2013).

M.    **Outline Of Trial**[17]

We're going to begin the trial presentations with opening statements in just a few minutes and I want to give you a brief roadmap of how the trial is going to be structured.

Intellectual Ventures will present its opening statement. Next, the FedEx Defendants will present an opening statement. An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show. [**IV Proposal**: The evidence in this case will be the sworn testimony of the witnesses, together with the exhibits that are admitted into evidence for your consideration.]

After opening statements, the parties shall present their evidence. [**FedEx's Proposal:** The evidence in this case includes only (1) what the witnesses said while they were testifying under oath, (2) the exhibits that I allowed into evidence, (3) the stipulations that the lawyers agreed to, and (4) the facts that I have judicially noticed. Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence, nor are any of my questions or comments. Make your decision based only on the evidence, as I have defined it here, and nothing else.] Intellectual Ventures will go first presenting evidence on the issues of infringement and damages. The FedEx Defendants shall next present their case on non-infringement, invalidity, [and] damages [**FedEx's Proposal:**, and their Tennessee state law counterclaims]. Finally, Intellectual Ventures may rebut invalidity [**FedEx's Proposal:** or counterclaim] issues raised by the FedEx Defendants.

At that point, all of the evidence will have been presented, and at that time, I will give you your final instructions on the law that applies in this case. Those final instructions from the Court

---

[17] **Authority:** Adapted from *Cassidian Commc'ns, Inc. v. microDATA GIS, Inc.,* No. 2:12-cv-162, Dkt. No. 165, Tr. at 28 (Dec. 16, 2013); D. Del. Model Patent Jury Instructions (1993).

to the jury are called the Court's final charge to the jury.

After I have given you my final charge, then the attorneys in the case will present their closing arguments. Just as with opening statements, Intellectual Ventures will present its closing statement first.  Next, the FedEx Defendants will present their closing statement.  Then, Intellectual Ventures shall present its rebuttal closing statement.

### N.    **Conduct Of The Jury[18]**

After the closing arguments of the attorneys, I will direct that you are to retire to the jury room and then and only for the first time discuss the case among yourselves in an attempt to reach a verdict and answer those questions that will be supplied to you in the verdict form.

I also repeat my instructions to you that you are not to discuss the case among yourselves, except and only when I've directed you to retire and deliberate on your verdict after all the evidence has been presented. And at no time are you to discuss the case with anyone until the time that you retire to deliberate.

**[FedEx's Proposal:** [19] We are about to take our first break in this trial. Remember, until the trial is over, you are not to discuss this case with anyone, including your fellow jurors. If anyone approaches you and tries to talk to you about the case, advise me about it immediately. Do not read or listen to any news reports of the trial or use any technology tools to do independent research. Remember to keep an open mind until all the evidence has been received. Finally, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel.]

Please be mindful that the attorneys and the representatives of the clients and the witnesses are not going to engage you in conversation or be overly friendly during this process. That's so that they can comply with my instructions. And you are not to take that as a snub or rudeness or anything of that manner. That's simply what I require of them.

---

[18] **Authority:** Adapted from *Cassidian Commc'ns, Inc. v. microDATA GIS, Inc.,* No. 2:12- cv-162, Dkt. No. 165, Tr. at 28 (Dec. 16, 2013).

[19] **Authority**: Fifth Circuit Pattern Jury Instructions (Civil) (2016). *See also Rembrandt; Hitachi.*

[**FedEx's Proposal:** During the course of a trial, I may occasionally ask questions of a witness in order to bring out facts not then fully covered in the testimony. Please do not assume that I hold any opinion on the matters to which my questions may related. Remember that you, as jurors, are at liberty to disregard all comments of the Court in arriving at your own findings as to the facts. On the other hand, you are required to follow the Court's instructions on the law, whether you agree with these instructions or not.]

Now, ladies and gentlemen, with those instructions, we're now going to hear opening statements from both parties in this case.

After all the evidence has been presented, I'll give you final instructions in this case.

II.    **FINAL INSTRUCTIONS**

A.    **Introduction**[20]

I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. However, you the jury are the sole judges of the facts. Accordingly, do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I give you these instructions, the attorneys will make their closing arguments.

Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form, date it, and sign it. Answer each question in the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received into evidence, regardless of who may have produced them. You may also consider any stipulations received into evidence. A "stipulation" is an agreement. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

---

[20] **Authority**: Adapted from *Hitachi Consumer Elecs. v. Top Victory Elecs.*, No. 2:10-cv-260-JRG, Jury Instructions, Dkt. 351, Tr. at 21-23 (April 12, 2013); DDR Holdings LLC v. Digital River, Inc. et. al. 2:06-CV-42-JRG, Proposed Final Jury Instructions, Dkt. 519 at 1-2 (Oct. 12, 2012); Fifth Circuit Pattern Jury Instructions (Civil) (2016).

When I allowed testimony or other evidence to be introduced over the objection of an attorney, I did not indicate any opinion as to the weight or effect of such evidence.

As stated before, you are the sole judges of the credibility of all the witnesses and the weight and effect, if any, to be given to all of the evidence.

If I sustained an objection to a question addressed to a witness, you must disregard the question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer.

At times during the trial it was necessary for me to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We met because often during a trial something comes up that does not involve the jury. You should not speculate on what was said during such discussions out of your presence.

## B.    <u>Demonstratives[21]</u>

Certain exhibits shown to you during the trial were illustrations, charts, or summaries.  We call these types of exhibits "demonstrative exhibits" or "demonstratives."  Demonstratives are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection.

Demonstratives are sometimes called "jury aides."  While demonstratives are not, themselves, evidence, a witness's testimony about a demonstrative is evidence.

---

[21] **Authority:** Adapted from *Hitachi Consumer Elecs. v. Top Victory Elecs.*, No. 2:10-cv-260-JRG, Jury Instructions Dkt. 351, Tr. at 25 (April 12, 2013); *DDR Holdings LLC v. Digital River, Inc. et. al.* 2:06-CV-42-JRG, Proposed Final Jury Instructions, Dkt. 519 at 3 (Oct. 12, 2012); Fifth Circuit Pattern Jury Instructions (Civil) (2016).

### C.    <u>Credibility Of Witnesses</u>[22]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

- The opportunity and ability of the witness to see or hear or know the things he or she testified about;

- The witness's memory;

- The witness's manner while testifying;

- The witness's interest in the outcome of this case and any bias or prejudice;

- Whether other evidence contradicted the witness's testimony;

- The reasonableness of the witness's testimony in light of all the evidence; and

- Any other factors that bear on whether the witness is believable.

Proof of a fact does not necessarily depend on the number of witnesses who testify about it.  [**FedEx's Proposal:**  Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other

---

[22] **Authority**: Adapted from Ninth Circuit Jury Instructions Committee, *Ninth Circuit Manual of Model Jury Instructions* (2007), Instruction No. 1.11; *Hitachi Consumer Elecs. v. Top Victory Elecs.*, No. 2:10-cv-260-JRG, Jury Instructions Dkt. 351, Tr. at 25-26 (April 12, 2013); Fifth Circuit Pattern Jury Instructions (Civil) (2016).

things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.]

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

D.    <u>Burdens Of Proof[23]</u>

As I mentioned at the beginning of the trial, there are two burdens of proof that you will apply in this case: preponderance of the evidence and clear and convincing evidence.

A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true.

Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the claim or defense is highly probable. [**IV Proposal**: Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.]

---

[23] **Authority**: Adapted from *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd.*, No. 2:13-cv-213-JRG, Jury Instructions, Dkt. 300, Tr. at 19 (Feb. 9, 2015).

E.    **Deposition Testimony**[24]

Certain testimony was presented to you by video through a deposition. As I mentioned during my Preliminary Instructions, a deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter and a videographer were present and recorded the testimony. The deposition testimony is entitled to the same consideration and weight and otherwise should be considered insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

---

[24] **Authority**: Adapted from Committee on Pattern Jury Instructions, District Judges Association–Fifth Circuit, *Fifth Circuit Pattern Jury Instructions – Civil* (2006), Instruction No. 2.23; Ninth Circuit Jury Instructions Committee, *Ninth Circuit Manual of Model Jury Instructions* (2007), Instruction No. 2.4; *Hitachi Consumer Elecs. v. Top Victory Elecs.*, No. 2:10-cv-260-JRG, Jury Instructions, Dkt. 351, Tr. at 26-27 (April 12, 2013)

F.    **<u>Expert Witnesses</u>**[25]

When knowledge of technical subject matter may have been helpful to the jury, a person who has special training or experience in that technical field—he or she is called an expert witness—was permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

---

[25] **Authority**: Adapted from Committee on Pattern Jury Instructions, District Judges Association–Fifth Circuit, *Fifth Circuit Pattern Jury Instructions – Civil* (2006), Instruction No. 2.19; *Hitachi Consumer Elecs. v. Top Victory Elecs.*, No. 2:10-cv-260-JRG, Jury Instructions, Dkt. 351, Tr. at 27 (April 12, 2013).

## G.    Contentions Of The Parties[26]

**Intellectual Ventures contends that the FedEx Defendants infringe certain claims of four patents, which we will refer to collectively as the "patents-in-suit."**

The four patents are:

- U.S. Patent No. 6,909,356

- U.S. Patent No. 7,199,715

- U.S. Patent No. 8,494,581

- U.S. Patent No. 9,047,586

It is common practice to refer to a patent by its last three digits.  You will therefore hear these patents referred to as the '356 patent, the '715 patent, the '581 patent, and the '586 patent.

The claims that Intellectual Ventures contends are infringed are referred to as the "asserted claims."  Over the course of this case, you will learn more about which claims Intellectual Ventures is asserting.

**Intellectual Ventures also seeks money damages from the FedEx Defendants for allegedly infringing the patents-in-suit.**

- Intellectual Ventures contends that the FedEx Defendants infringe the patents-in-suit by making or using, or encouraging others to use products, systems, and devices that Intellectual Ventures argues are covered by the asserted claims.  The parties and I may refer to those products, systems, and devices as the "accused instrumentalities."

- For some of the accused instrumentalities, Intellectual Ventures contends that

---

[26] **Authority:** Adapted from *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd.*, No. 2:13-cv-213-JRG, Jury Instructions, Dkt. 300, Tr. at 19-21 (Feb. 9, 2015); *see also Hitachi*.

FedEx Corp.'s and FedEx Freight's infringement is willful.

**The FedEx Defendants deny that any of them infringes the asserted claims.**

- The FedEx Defendants deny that making, using, selling, or offering to sell the accused instrumentalities infringe any of the asserted claims.

- FedEx Corp. and FedEx Freight further deny that any alleged infringement is willful.

**The FedEx Defendants contend that all of the asserted claims are invalid.**

**Intellectual Ventures denies that any of the asserted claims are invalid.**

Your job as the jurors will be to decide whether the FedEx Defendants infringe any of the asserted claims, and whether the FedEx Defendants have proven that any of the asserted claims is invalid. If you decide that an asserted claim is infringed and is not invalid, you will need to decide the amount of money damages to be awarded to Intellectual Ventures as compensation for the infringement.

### H.    Patent Claims[27]

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I'll now give you more detailed instructions about the patent laws that relate to this case.

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of the patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it was a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

This case involves two types of patent claims: independent claims and dependent claims.

### 1.    Independent and dependent claims

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The

---

[27] **Authority**: Adapted from *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd.*, No. 2:13-cv-213-JRG, Jury Instructions, Dkt. 300, Tr. at 21-23 (Feb. 9, 2015)*; The Federal Circuit Bar Association, *Model Patent Jury Instructions*, (Jan. 2016), Instruction No.2.2a; N.D. Cal. Model Patent Jury Instructions (2018) at 12-13.

dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. [**FedEx's Proposal:** As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.]

## 2. How a claim defines what it covers[28]

Each patent claim sets forth in words a set of requirements in a single sentence. The requirements of a claim are usually divided into parts or steps called limitations or elements.

If a device, system, method, or instrumentality satisfies each of these requirements in the claim's sentence, then it is said that the device, system, method, or instrumentality is covered by the claim, falls under the claim, or infringes the claim.

For example, a claim that covers an invention of a table may recite a tabletop, four legs, and the glue that secures the legs to the tabletop. In this example, the tabletop, legs, and glue are each separate limitations or elements of the claim.

The beginning portion, or preamble, of a claim often uses the word "comprising." The word "comprising" as used in the preamble means "including" or "containing." When "comprising" is used in the preamble, a device that includes all the limitations or elements of the claim, as well as additional elements, is covered by the claim.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's

---

[28] **Authority**: Adapted from *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd.*, No. 2:13-cv-213-JRG, Jury Instructions, Dkt. 300, Tr. at 21-23 (Feb. 9, 2015).

legs.

If a device is missing even one limitation or element of a claim, it does not meet all the requirements of a claim and is not covered by the claim. And if a device is not covered by the claim, it does not infringe that claim.

You first need to understand each claim term in order to decide whether or not there is infringement of a claim and to decide whether or not the claim is invalid.

### 3.    The meaning of the claim terms[29]

The law says that it's my role to define the terms of the claims, and it's your role to apply my definitions to the issues that you are asked to decide in this case.

For any words in the claim for which I have not provided you with a definition, you should apply their plain and ordinary meaning.[30] My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and validity. The decisions regarding infringement and validity are yours to make. During your deliberations you must apply these meanings:

---

[29] **Authority**: Adapted from Nat'l Jury Instruction Project, *Model Patent Jury Instructions*, (June 17, 2009), Instruction No. 3.3; *Hitachi Consumer Elecs. v. Top Victory Elecs.*, No. 2:10-cv-260-JRG, Jury Instructions Dkt. 351, Tr. at 29-30 (April 12, 2013); Memorandum Opinion and Order (Nov. 13, 2012) (Dkt. # 273); N.D. Cal. Model Patent Jury Instructions (2018) at 17.

[30] **Authority**: Adapted from *Saffran v. Johnson & Johnson*, No. 2:07-cv-451-TJW, 2011 WL1299607,*3 (E.D. Tex. Mar. 31, 2011). *See also Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565- TJW (E.D. Tex. Jun. 23, 2011).

**'356 patent:**

| Claim | Term, Phrase, or Clause | Construction |
|---|---|---|
| 1 | "transmitting the status information and the associated identity information to a server communicatively coupled to the computer system and configured to automatically notify a user of the status information, wherein at least one of the objects is automatically returned or picked up as a result of such notification" | Plain and ordinary meaning |
| 1 | "entity" | "an individual, an automated device, or a robot" |
| 1 | "controlled space" | "a location configured to provide secure and traceable access to objects" |
| 1 | "obtaining identity information regarding an entity which enters a controlled space" | Plain and ordinary meaning |
| 1 | "automatically" | "with a decreased need for human input" |
| 1 | "to/from/within" | "to, from, or within" |
| 1 | "automatically associating . . . the identity information regarding the entity with status information regarding additions, removals, returns, defective status, or movements of the objects to/from/within the controlled space" | Plain and ordinary meaning |
| 4 | "notifying the user of whether or not the addition, removal, return, defective status, or movement of the objects is authorized or not" | Plain and ordinary meaning |
| 1 | "monitoring, using a wireless tracking system . . . locations and movements of the entity and objects" | Plain and ordinary meaning |

**'715 patent:**

| Claim | Term, Phrase, or Clause | Construction |
|---|---|---|
| 1, 11 | "tag" | "any device or marking that identifies a product or process" |
| 1, 11 | "successive points of [a/the] business process" | "locations that are reached in a known order" |
| 1, 11 | "tracking tags at several successive points of [a/the] business process" | Plain and ordinary meaning |
| 1, 11 | "each tag at each successive point" | Plain and ordinary meaning |
| 1, 19 | "populating a database with information" | "inserting information into a database" |
| 1, 19 | "populating a database with information corresponding to the reading of each tag at each [successive point/tag reading point] and the time of each reading" | Plain and ordinary meaning |
| 1, 11, 19 | "modifying part of the information in the database" | "changing information in cells where data is missing for a particular tag by a particular reader" |
| 1, 11 | "modified information" | "information that was changed" |
| 1, 4, 11, 14, 19 | "as a function of other information" / "as a function" | "based on other information in other cells in the data structure" |
| 11 | "a tool for modifying part of the information stored in the database as a function of other information stored in the database whereby the modified information is used to track the tags through the business process" | **Function**: modifying part of the information stored in the database as a function of other information stored in the database whereby the modified information is used to track the tags through the business process<br><br>**Structure**: a processor configured to perform the steps of:<br>(1) identifying cells where data is missing for a particular tag by a particular reader,<br>(2) changing the information in the identified cell based on other information in other cells in the data structure, and<br>(3) using the changed information to track the tags through the business process. |

**'581 patent:**

| Claim | Term, Phrase, or Clause | Construction |
|---|---|---|
| 1, 4, 7-14, 16-20 | "handheld device" | plain and ordinary meaning |
| 1 | "access an assessment program" | "access an assessment program, which requires more than accessing a database storing data" |
| 7 | "download a field management program" | "download a field management program, which requires more than accessing a database storing data" |
| 7, 16 | "position module" | plain and ordinary meaning |
| 7-10, 12, 13 | "communication module" | plain and ordinary meaning |
| 18 | "means for accessing a program stored at the server to enable an assessment at the field using the at least one handheld device" | Function: accessing a program that is stored at the server to enable an assessment at the field using the at least one handheld device, wherein accessing a program requires more than accessing a database storing data.<br><br>Corresponding Structure: a processor, along with a user interface, RAM, ROM, configured to make a service request to a server program, and a server program configured to fulfill the request. |
| 18 | "means for managing data collected at the field using the at least one handheld device responsive to program" | Function: managing data collected at the field using the at least one handheld device and responsive to program.<br><br>Corresponding Structure: industry-specific field data management software on the handheld device that implements one or more of the algorithms as represented in in Figures 7-13 and accompanying references in the specification, along with a processor, RAM, ROM. |
| 18 | "means for enabling communicating the data collected at the field and the geographic location of the at least one handheld device between the at least one | Function: enabling communicating the data collected at the field and the geographic location of the at least one handheld device between the at least one handheld device and other devices or the server. |

37

| Claim | Term, Phrase, or Clause | Construction |
|---|---|---|
|  | handheld device and other devices or the server" | Corresponding Structure: a processor configured to implement the algorithm as represented in Figure 13 and accompanying references in the specification, in conjunction with Global Positioning System (GPS) hardware and software, and/or signal triangulation hardware and software and wireless modem, cellular wireless transmitters, along with a processor, RAM, ROM. |
| 18 | "means for establishing a two-way communication channel between a server and at least one handheld device located at a field geographically distant from the server" | Function: establishing a two-way communication channel between a server and at least one handheld device located at a field geographically distant from the server.<br><br>Corresponding Structure: wireless modem, cellular wireless transmitters, including GSM, CDMA, GPRS, and CDPD, TCP/IP, and/or other wireless radio transmitters. |
| 18 | "means for determining a geographic location of the at least one handheld device" | Function: determining a geographic location of the at least one handheld device.<br><br>Corresponding Structure: Global Positioning System (GPS) hardware and software, and/or signal triangulation hardware and software. |
| 19 | "means for tracking a location of the at least one handheld device" | Function: tracking a location of the at least one handheld device.<br><br>Corresponding Structure: Global Positioning System (GPS) hardware and software, and/or signal triangulation hardware and software and navigation software or resources. |
| 20 | "means for enabling updating field operation assignments for each of the at least one handheld device" | Function: enabling updating field operation assignments for each of the at least one handheld device.<br><br>Corresponding Structure: a processor configured to implement the algorithm as represented in Figure 9 and accompanying |

| Claim | Term, Phrase, or Clause | Construction |
|-------|------------------------|--------------|
| | | references in the specification, in conjunction with Global Positioning System (GPS) hardware and software, and/or signal triangulation hardware and software and wireless modem, cellular wireless transmitters, along with a processor, RAM, ROM. |
| 24 | "means for providing data to the server for analysis" | Function: providing data to the server for analysis.<br><br>Corresponding Structure: industry-specific field data management software on the handheld device that implements one or more of the algorithms as represented in Figures 7-13 and accompanying references in the specification, in conjunction with a wireless modem and/or cellular wireless transmitter, along with a processor, RAM, ROM. |
| 24 | "means for retrieving enhanced data from the server for use in conducting the field assessment" | Function: retrieving enhanced data from the server for use in conducting the field assessment.<br><br>Corresponding Structure: industry-specific field data management software on the handheld device that implements one or more of the algorithms as represented in Figures 7-13 and accompanying references in the specification, in conjunction with a wireless modem and/or cellular wireless transmitter, along with a processor, RAM, ROM |

**'586 patent:**

| Claim | Term, Phrase, or Clause | Construction |
|---|---|---|
| 7 | "plurality" | two or more |
| 7, 8 | "data tag" / "data tags" | "one or more characters associated with a data item" |
| 7 | "an identifier identifying one of the data items" | "one or more characters that identify one of the associated data items" |
| 7 | "wherein the plurality of bar codes encode respective data tags and data items" | "wherein each data tag is encoded in the same bar code as its associated data item" |
| 7 | "sending the electronic document" | Plain and ordinary meaning |
| 7 | "operations for data interchange" / "data interchange" | Plain and ordinary meaning |
| 7 | "creating an electronic document" | Plain and ordinary meaning |
| 7 | "electronic document having a plurality of bar codes" / "electronic document comprising a plurality of bar codes" | "electronic document containing representations of two or more bar codes" |
| 7 | "decoding of a first one of the plurality of bar codes to recover a first data tag and a first data item" | Plain and ordinary meaning |

## I.    <u>Infringement</u>

I will now instruct you on the specific rules you must follow to determine whether Intellectual Ventures has proven that the FedEx Defendants have infringed one or more of claims 1, 5, 7, 8, 10, and 16-20 of the '581 patent; claims 7, 8, and 12 of the '586 patent; claims 1, 3, 7, 12, and 17 of the '356 patent; and claims 1, 4, 11, 14, and 19 of the '715 patent. To prove infringement of any claim, Intellectual Ventures must persuade you that it is more likely than not that a [FedEx Proposal: specific FedEx corporate entity in this case] [**IV proposal:** FedEx Defendant] has infringed that claim.

### 1.    **Direct Infringement**

You must decide whether the defendant has made or used within the United States an instrumentality covered by the asserted claims.  You must compare each claim to each accused instrumentality accused of infringing that claim to determine whether every requirement of the claim is included in or performed by that accused instrumentality.

To prove direct infringement, Intellectual Ventures must prove by a preponderance of the evidence that the [**FedEx Proposal:** specific FedEx company][**IV Proposal**: Defendants] accused of infringement has made or used within the United States accused instrumentalities that include each and every limitation of an asserted claim.

There are two types of "direct infringement": (1) literal infringement; and (2) infringement under the doctrine of equivalents.

### 2.    **Literal Infringement**[31]

In determining whether an accused instrumentality literally infringes a claim, you must

---

[31] **Authority**:  Adapted from *SSL Services, LLC v. Citrix Systems, Inc.*, No. 2:08-cv-00158-JRG, Jury Instructions, Dkt. 256 at 13 (June 18, 2012).

compare the accused instrumentality with each requirement recited in the claim. A claim requirement is present if it exists in the accused instrumentality as I have explained the language of the requirement to you or, if I did not explain it, as it would be understood by one of skill in the art. If an accused instrumentality omits even a single requirement of a claim, then you must find that the accused instrumentality does not literally infringe that claim.

You must determine separately for each claim and for each accused instrumentality whether or not there is infringement by the specific FedEx Defendants that have been accused of infringing that claim. [**IV Proposal**: Intellectual Ventures must prove the equivalency of the actions or structure to a claim element by a preponderance of the evidence.]

### 3.    Doctrine of Equivalents[32]

I will now explain infringement under the "Doctrine of Equivalents."

Intellectual Ventures alleges that [FedEx Proposal: specific FedEx companies from among] the FedEx Defendants infringe some of the asserted claims under the "doctrine of equivalents." If a person practices a method that does not meet all of the requirements of a method claim and thus does not literally infringe that claim, or if a person makes or uses an instrumentality that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that method or instrumentality satisfies that claim under the doctrine of equivalents.

Under the doctrine of equivalents, a method or instrumentality infringes a claim if the accused method or instrumentality performs steps or contains elements corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused

---

[32] **Authority**:  Adapted from *SSL Services, LLC v. Citrix Systems, Inc.*, No. 2:08-cv-00158-JRG, Jury Instructions, Dkt. 256 at 15 (June 18, 2012); N.D. Cal. Model Patent Jury Instructions (2018) at 19-20.

method or instrumentality.

You may find that a step or element is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the action or structure: (1) performs substantially the same function, (2) in substantially the same way, (3) to achieve substantially the same result as the requirement of the claim. In order for the action or structure to be considered interchangeable, the action or structure must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient. In order to prove infringement by "equivalents," Intellectual Ventures must prove the equivalency of the actions or structure to a claim element by a preponderance of the evidence.

[**FedEx's Proposal:**[33]  You may not use the doctrine of equivalents to find infringement if you find that the FedEx Defendants' accused product, system or method is the same as what was in the prior art before the application for the asserted patent or would have been obvious to persons of ordinary skill in the field in light of what was in the prior art. This analysis is

---

[33] IV's response:  This is an incorrect statement of the law and is inappropriate.  This appears to be directed at least ensnarement, which none of FedEx's experts has opined on. FedEx Reply: Already cited above--this is taken nearly verbatim from the N.D. Cal. Model Patent Jury Instructions (2018) at 20 (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co*., 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) *(en banc); Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos*., 16 F.3d 394, 397 (Fed. Cir. 1994).

.

described more fully below. A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the PTO. And you may not use the doctrine of equivalents to find infringement if you find that the subject matter alleged to be equivalent to a requirement of the patent claim was described in the patent but not covered by any of its claims.[34]]

### 4.    Infringement of Means-Plus-Function Claims[35]

Some of the asserted claims include requirements that are in "means-plus-function" form. Those have been identified in the claim construction provided above, where I have interpreted the "function" and "corresponding structure" for each means-plus-function claim term.   An instrumentality or method meets a means-plus function requirement if: (1) it has a structure or a set of structures that perform the function recited in the claim, and (2) that structure is either the same or "equivalent" to the described structures that I defined earlier as performing the claimed function.  If the accused instrumentality does not perform the specific function recited in the claim as I have interpreted it, the "means-plus-function" requirement is not met, and the accused instrumentality does not literally infringe the claim.  Alternatively, even if the product has a structure that performs the function recited in the claim but the structure is not the same as or equivalent to the structures that I defined to you as being described in the patent for performing that function, the accused instrumentality does not literally infringe the asserted claim.

A structure may be found to be "equivalent" to one of the structures I have defined as being described in the patent if a person having ordinary skill in the field of the technology of that patent

---

[34] Authority: Adapted from N.D. Cal. Model Patent Jury Instructions (2018) at 20.

[35] **Authority**: Adapted from *SSL Services, LLC v. Citrix Systems, Inc.*, No. 2:08-cv-00158-JRG, Jury Instructions, Dkt. 256 at 14 (June 18, 2012).

would have considered the differences between them to be insubstantial at the time the patent was filed or if that person would have found the structures perform the function in substantially the same way to achieve substantially the same result.  In deciding whether differences would be "insubstantial," you may consider whether a person having ordinary skill in the field of the patent would have known that the two structures were interchangeable.

### 5. [IV's Proposal: Direct infringement (by attribution)][36] [FedEx's Proposal: Divided Infringement[37]].

[IV's Proposal: For some of the accused instrumentalities, you must decide whether the making and using of an accused instrumentality by one FedEx entity or by FedEx customers is attributable to one or more other FedEx entities.

For a method claim, direct infringement occurs where all steps of the method are attributable to a single entity.[38]  To determine whether a step is "attributable" to an entity, you must consider the step in the context of all of the facts presented.[39]  The law holds a party responsible for others' performance of method steps where the party controls or directs the others' performance of the method steps or where the party and the performer of the method steps form a joint enterprise. [40]   A party is liable for infringement when the party conditions another person or entity's participation in an activity or receipt of a benefit upon that person or entity's performance

---

[36] **Authority**:  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) (*en banc*);

[37] **Authority**:  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022-24 (Fed. Cir. 2015) (*en banc*); Adapted from N.D. Cal. Model Patent Jury Instructions (2018) at 16.

[38] **Authority**: *Akamai*, 797 F.3d at 1022.

[39] **Authority**:  *Akamai*, 797 F.3d at 1023.

[40] **Authority**: *Akamai*, 797 F.3d at 1022.

of a step or steps of a patented method and establishes the manner or timing of that performance.[41] For example, a party is responsible for another party's infringement if the party profits from the infringement and has the right and ability to stop or limit the infringement (e.g., by acting as "headquarters").[42]   In other words, if a party receives the benefits that follow from practicing a step, then the step may be "attributable" to it.

For a system or apparatus claim, a party may be liable for another person or entity's use of the accused instrumentality if the party puts the claimed invention into service, which is to say that the party controls the system and obtains benefit from it.[43]   A party may be a direct infringer for using a system when the party exercises control of the system and obtains benefit from the use of the system.[44]   And for a system or apparatus claim, a party is considered to have "made" an instrumentality if it acts through its agents under the party's direction or control to make the instrumentality.[45]]

[**FedEx's Proposal:**  Direct infringement occurs where all steps of a claimed method are performed by or are attributable to a single entity. For method claims, where more than one actor is involved in practicing the steps, you must determine whether the acts of one are attributable to the other such that a single party is responsible for the infringement.

---

[41] **Authority**: *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1376 (Fed. Cir. 2017).

[42] **Authority**: *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1385 (Fed. Cir. 2017).

[43] **Authority**: *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279, 1286 (Fed. Cir. 2011).

[44] **Authority**: *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).

[45] **Authority**: GeoTag, Inc. v. Frontier Communs. Corp., No. 2:10-cv-00265-JRG, 2014 U.S. Dist. LEXIS 11679, at *23 (Jan. 29, 2014).

In this case, Intellectual Ventures asserts divided infringement by alleging that specific FedEx companies direct or control the acts of others to perform some of the claimed steps. Intellectual Ventures must prove that the FedEx company to which it attempts to attribute the acts of another (1) performs at least one of the claimed steps itself, and (2) directs or controls another party's performance of other claimed steps.

For example, to prove that FedEx Corp. directed or controlled the acts of another, such as FedEx Freight, Intellectual Ventures must prove to you by a preponderance of evidence that FedEx Corp. conditioned participation in an activity or receipt of a benefit upon FedEx Freight's performance of a step or steps of the method claims in the patents-in-suit, and established the manner or timing of that performance. Since divided infringement requires that no single actor performs all the steps of a method claim, Intellectual Ventures must further prove that FedEx Corp. itself performs one or more of the claimed steps in order to prevail on this assertion.

For a system or apparatus claim, a party may be liable for another person or entity's use of the accused instrumentality if the party puts the claimed invention into service, which is to say that the party controls the system and obtains benefit from it.[46] A party may be a direct infringer for using a system when the party exercises control of the system and obtains benefit from the use of the system.[47]  ]

---

[46] **Authority**: *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279, 1286 (Fed. Cir. 2011).

[47] **Authority**: *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).

6.        **Induced Infringement**[48]

**[IV's Proposal**:  IV alleges that FedEx is liable for infringement of the '586 patent by actively inducing customers to directly infringe the asserted claims of the '586 patent.  Intellectual Ventures also alleges that FedEx Corp. is liable for infringement of the '356 and '715 patent by actively inducing FedEx Freight to directly infringe the asserted claims of the '356 and '715 patents.    As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

FedEx is liable for induced infringement of a '586 patent claim if Intellectual Ventures proves by a preponderance of the evidence that:

(1)      The acts have been carried out by customers and directly infringe the claim;

(2)      FedEx has taken action intending to cause the infringing acts by customers; and

(3)      FedEx has been aware of the '586 patent and has known that the acts of the customers constitute infringement of the '586 patent, or was willfully blind to that infringement.

FedEx Corporation is liable for induced infringement of a '356 or '715 patent claim if Intellectual Ventures proves by a preponderance of the evidence that:

(1)      The acts have been carried out by FedEx Freight and directly infringe the claim;

(2)      FedEx Corporation has taken action intending to cause the infringing acts by customers; and

(3)      FedEx Corporation has been aware of the '356 or '715 patent and has known that the acts of FedEx Freight constitute infringement of the '356 or '715 patent, or was

---

[48] **Authority**: Adapted from The Federal Circuit Bar Association, *Model Patent Jury Instructions*, (Feb.2016), Instruction No. 3.2; *Hitachi Consumer Elecs. v. Top Victory Elecs.*, No. 2:10-cv-260-JRG, Jury Instructions Dkt. 351, Tr. at 39-40 (April 12, 2013).

willfully blind to that infringement.

In order to establish active inducement of infringement, it is not sufficient that the customers or FedEx Freight themselves directly infringe the claim. Nor is sufficient that FedEx merely has had knowledge or notice of an asserted patent or has been aware of the acts by customers that allegedly constitute direct infringement. And the mere fact that FedEx has known or should have known that there was substantial risk that customers' acts would infringe is not sufficient. Rather, you must find that FedEx specifically intended its customers or FedEx Freight to infringe the claim, or was willfully blind to that infringement in order to find inducement of infringement. ]

**[FedEx's Proposal:**[49]** Intellectual Ventures alleges that FedEx Corp. is liable for indirect infringement of the '586 patent by actively inducing its customers to directly infringe the asserted claims of the '586 patent. Intellectual Ventures alleges that FedEx Express is liable for indirect infringement of the '586 patent by actively inducing its customers to directly infringe the asserted claims of the '586 patent. Intellectual Ventures alleges that FedEx Ground is liable for indirect infringement of the '586 patent by actively inducing its customers to directly infringe the asserted claims of the '586 patent. Intellectual Ventures also alleges that FedEx Corp. is liable for indirect infringement of the '356 and '715 patent by actively inducing FedEx Freight to directly infringe the asserted claims of the '356 and '715 patents.

Under this theory, if there is no direct infringement by anyone, there can be no induced infringement. As with direct infringement, you must determine induced infringement on a claim-by-claim basis.

---

[49] **Authority**: Adapted from N.D. Cal. Model Patent Jury Instructions (2018) at 24; *Hitachi Consumer Elecs. v. Top Victory Elecs.*, No. 2:10-cv-260-JRG, Jury Instructions Dkt. 351, Tr. at 39-40 (April 12, 2013).

49

FedEx Corp. is liable for induced infringement of a '586 patent claim only if Intellectual Ventures proves by a preponderance of the evidence that:

(1)    FedEx Corp. had intentionally taken action that actually induced the direct infringement by its customers; and

(2)    FedEx Corp. had been aware of the '586 patent; and

(3)    FedEx Corp. had known that the acts it was causing by its customers would infringe the '586 patent.

FedEx Express is liable for induced infringement of a '586 patent claim only if Intellectual Ventures proves by a preponderance of the evidence that:

(1)    FedEx Express had intentionally taken action that actually induced the direct infringement by its customers; and

(2)    FedEx Express had been aware of the '586 patent; and

(3)    FedEx Express had known that the acts it was causing by its customers would infringe the '586 patent.

FedEx Ground is liable for induced infringement of a '586 patent claim only if Intellectual Ventures proves by a preponderance of the evidence that:

(1)    FedEx Ground had intentionally taken action that actually induced the direct infringement by its customers; and

(2)    FedEx Ground had been aware of the '586 patent; and

(3)    FedEx Ground had known that the acts it was causing by its customers would infringe the '586 patent.

FedEx Corp. is liable for induced infringement of a '356 or '715 patent claim only if Intellectual Ventures proves by a preponderance of the evidence that:

(1)    FedEx Corp. had intentionally taken action that actually induced the direct infringement by FedEx Freight; and

(2)    FedEx Corp. had been aware of the '356 or '715 patents; and

(3)    FedEx Corp. had known that the acts of FedEx Freight constitute infringement of the '356 or '715 patents.

FedEx Corp., FedEx Express, and FedEx Ground may be considered to have known that the acts it was causing would infringe the accused patent if they subjectively believed there was a high probability that the direct infringer's product or method was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.]

### J.    <u>Willful Infringement</u>

**[IV's Proposal[50]** In this case, for the '356 and '715 patents, Intellectual Ventures contends both that the FedEx Defendants have infringed and, further, that FedEx Corp. and FedEx Freight have infringed willfully. If you have decided that FedEx Corp. and FedEx Freight have infringed the '356 and/or '715 patents, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether Intellectual Ventures has proven that it is more likely than not that the infringement by FedEx Corp. and FedEx Freight was especially worthy of punishment. You may not determine that the infringement was willful just because FedEx Corp. and FedEx Freight knew about the patents and infringed them. Rather, to show willfulness, you must find that FedEx Corp. and/or FedEx Freight engaged in additional conduct evidencing deliberate or reckless disregard of IV's patent rights, such as where infringement is malicious, deliberate, consciously wrongful, or done in bad faith.

To determine whether FedEx Corp. and FedEx Freight acted willfully, consider all facts. These may include, but are not limited to:

(1)    Whether or not FedEx Corp. and FedEx Freight reasonably believed it did not infringe or that the patents were invalid;

(2)    Whether or not FedEx Corp. and FedEx Freight made a good-faith effort to avoid infringing the patents;

(3)    Whether or not FedEx Corp. and FedEx Freight tried to hide or cover up its infringement.

---

[50] **Authority:** Adapted from The Federal Circuit Bar Association, *Model Patent Jury Instructions*, (July 2016), Instruction No. 3.10; N.D. Cal Model Patent Jury Instructions (2018) at 25; 35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016)

[**FedEx's Proposal**[51]:  In this case, Intellectual Ventures argues that FedEx Corp. and FedEx Freight willfully infringed the '356 and '715 patents.

To prove willful infringement, IV must persuade you that FedEx Corp. and FedEx Freight infringed a valid claim of the '356 or '715 patents with respect to the xArray and Antenna Array systems. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a claim, Intellectual Ventures must prove by a preponderance of evidence that FedEx Corp. and FedEx Freight intentionally ignored or recklessly disregarded the claim. You must base your decision on knowledge and actions at the time of infringement. Evidence that FedEx Corp. and FedEx Freight had knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness.

Willfulness requires you to determine whether Intellectual Ventures has proven that it is more likely than not that the infringement by FedEx Corp. and FedEx Freight was egregious under the circumstances. You may not determine that the infringement was willful just because FedEx Corp. and FedEx Freight may have known about the patents and infringed them.  Instead, willful infringement is reserved for only the most egregious behavior, such as where infringement is malicious, deliberate, consciously wrongful, or done in bad faith.]

---

[51] **Authority:** 35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. __, 136 S. Ct. 1923 (2016); 35 U.S.C. § 298; N.D. Cal. Model Patent Jury Instructions (2018) at 25.

K.    <u>**Invalidity**</u>

[**IV's Proposal**[52]**:** I will now instruct on the rules that you must follow in deciding whether or not the FedEx Defendants have proven that any of the asserted claims of the patents are invalid.

To prove that any claim of a patent is invalid, the FedEx Defendants must persuade you by clear and convincing evidence that the claim is invalid.

During the course of this trial, the FedEx Defendants have presented you with prior art.  In considering that prior art, you may consider whether the prior art was already considered by the Patent Office before granting the patent.  The fact that any particular piece of prior art was or was not considered by the Patent Office does not change the FedEx Defendants' burden of proof.

Like infringement, invalidity is determined on a claim-by-claim basis.  You must decide separately for each asserted claim whether the FedEx Defendants have proven that the claim is invalid.  If one claim of a patent is invalid, that does not mean any other claim is necessarily invalid.

Claims are construed the same way for determining infringement as for determining invalidity.]

[**FedEx's Proposal:**[53] The FedEx Defendants contend that claims 1, 5, 7, 8, 10, and 16-20 of the '581 patent;  claims 7, 8, and 12 of the '586 patent; claims 1, 3, 7, 12, and 17 of the

---

[52] **Authority**: Adapted from *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd.*, No. 2:13-cv-213-JRG, Jury Instructions, Dkt. 300, Tr. at 25-26 (Feb. 9, 2015); *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251 (2011); *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557,1563-64 (Fed. Cir. 1993).

[53] **Authority**: Adapted from *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd.*, No. 2:13-cv-213-JRG, Jury Instructions, Dkt. 300, Tr. at 25-26 (Feb. 9, 2015); *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251 (2011); *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557,1563-64 (Fed. Cir. 1993); N.D. Cal. Model Patent Jury Instructions (2018) at 26.

'356 patent; and claims 1, 4, 11, 14, and 19 of the '715 patent are invalid. The FedEx Defendants contend that the claims asserted by IV are invalid as anticipated or obvious in view of prior patents and other publications.

I will now instruct on the rules that you must follow in deciding whether or not the FedEx Defendants have proven that any of the asserted claims of the patents-in-suit are invalid.

To prove that any claim of a patent is invalid, the FedEx Defendants must persuade you by clear and convincing evidence that the claim is invalid.

During the course of this trial, the FedEx Defendants have presented you with prior art. Some of that prior art submitted by the FedEx Defendants was not considered by the PTO during the prosecution of the asserted patents. The FedEx Defendants contend that such prior art invalidates certain claims of the asserted patents. In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the asserted claims. Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make the FedEx Defendants' burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

Like infringement, invalidity is determined on a claim-by-claim basis.  You must decide separately for each asserted claim whether the FedEx Defendants have proven that the claim is invalid.  If one claim of a patent is invalid, that does not mean any other claim is necessarily invalid. For example, even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid. Rather, you must consider the validity of each claim, separately. You must decide this issue of validity on a claim-by-claim basis. However, if you find that a dependent claim is invalid, then you must find that the independent claim from which it depends is also invalid. The dependent claim includes all of the elements of the

independent claim from which it depends.

Claims are construed the same way for determining infringement as for determining invalidity.]

### 1.    Prior Art [54]

In patent law, a system, device, method, publication or patent that predated the patent claims at issue is called "prior art."  [**IV's proposal:** Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been made, known, used, published, or patented either before the invention was made or more than one year before the filing date of the patent application.]

[**FedEx's Proposal:** Prior art may include any of the following items received into evidence during trial:

1.    any product, system, or method that was publicly known or used by others in the United States before the patented invention was made;

2.    patents that issued before the filing date of the patent, or before the invention was made;

3.    publications having a date before the filing date of the patent, or before the invention was made;

4.    any product, system, or method that was in public use or on sale in the United States before the patent was filed;

5.    any product, system, method that was made by anyone before the named inventors created the patented product, system, or method, where the product, system, or method was not abandoned, suppressed, or concealed.]

In this case, the relevant date of the invention is the same date as the earliest filing date for

---

[54] **Authority**: Adapted from The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.4 (July 2016). *ContentGuard Holdings, Inc. v. Apple Inc.*, Case No. 2:13-CV-01112-JRG (E.D. Tex.); AIPLA Model Patent Jury Instructions (2017) at 28.

each of the patents.  For each of the patents, that date is as follows:

'356 patent: November 3, 2000

'715 patent: March 1, 2005

'581 patent: September 18, 2000

'586 patent: May 30, 2001

**2.      Person Of Ordinary Skill In The Art**

A number of the issues relevant to invalidity must be viewed from the perspective of a "Person of Ordinary Skill in the Art" in the field of the asserted invention as of the effective filing dates above.  The following is the definition of a person of ordinary skill in the art for each of the patents-in-suit:

**[IV's Proposal:**

| '356 patent | A person of ordinary skill in the art of the '356 patent would have at least a bachelor's degree in Electrical Engineering, Computer Engineering, or the equivalent, and two or more years of experience in the field of information systems and product management. |
| --- | --- |
| '715 patent | A person of ordinary skill in the art of the '715 patent would have at least a bachelor's degree in in Electrical Engineering, Computer Science, Computer Engineering, or an equivalent or related field, and at least two years of industry experience designing or implementing databases for use with tag tracking systems. |
| '581 patent | A person of ordinary skill in the art of the '581 patent would have at least a bachelor's degree in electrical engineering or computer science, or an equivalent degree, and at  least two years of experience in the fields of (i) mobile communications; and (ii) location-based services and location determination technologies (including GPS). |
| '586 patent | A person of ordinary skill in the art of the '586 patent would have at least a Bachelor's Degree in Electrical Engineering, Computer Engineering, Computer Science, Information Technology, Operations Research, Supply Chain or Logistics Management, or the industry equivalent thereof and would have had at least two years of industry experience in the field of computer systems, computer networking, Web services, Electronic Data Interchange, or the academic equivalent thereof. |

**FedEx's Proposal:**

| '356 patent | A person of ordinary skill in the art of the '356 patent would have a bachelor's degree in electrical engineering, computer engineering, or the equivalent, and two or more years of experience in the field of wireless data transmission and information management in the appropriate timeframe. |
|---|---|
| '715 patent | A person of ordinary skill in the art of the '715 patent would have a bachelor's degree in electrical engineering, computer engineering, or the equivalent, and two or more years of experience in the field of wireless data transmission and information management in the appropriate timeframe. |
| '581 patent | A person of ordinary skill in the art of the '581 patent would have a bachelor's degree in electrical engineering or computer science, or an equivalent degree, and at least two years of experience in the fields of (i) mobile communications; and (ii) location-based services and location determination technologies (including GPS). |
| '586 patent | A person of ordinary skill in the art of the '586 patent would have a bachelor's degree in electrical engineering, computer engineering, supply chain or logistics management, or the industry equivalent thereof, and approximately two or more years of industry experience in the field of bar code technology, or academic equivalent thereof. |

### 3.    Invalidity – Anticipation[55]

In order for someone to be entitled to a patent, the invention must actually be "new."

[**FedEx's Proposal:** A patent claim is invalid if the claimed invention is not new.]  In general, an invention is new when the identical product or process has not been made, used, or disclosed before.  If an invention is not "new," it is considered to be "anticipated."  Anticipation must be determined on a claim-by-claim basis.

The FedEx Defendants contend that some of the asserted claims are invalid because the claimed invention is anticipated. The FedEx Defendants must convince you of that by clear and convincing evidence.

For purposes of this case, an invention is anticipated if it was already patented or described

---

[55] **Authority**: Adapted from The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.4.3 (July 2016)

in a printed publication anywhere in the world before the date of the invention.  For the claim to be invalid because of anticipation, the FedEx Defendants must show that all of the requirements of that claim were described in a single previous printed publication or patent.[56]  To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, that is, either stated expressly or implied to a person having ordinary skill in the art of the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.[57]  Furthermore, the prior art must contain all of the limitations of the claim, arranged as in the claim.[58]  [**FedEx Proposal:** However, a reference can anticipate a claim even if it does not expressly spell out all the limitations arranged or combined as in the claim, if a person of skill in the art, reading the reference, would at once envisage the claimed arrangement or combination.[59]]

[**IV's Proposal:** The FedEx Defendants must prove that it is highly probable that a claim was anticipated.  If you find that the FedEx Defendants have proven by clear and convincing evidence that a claim was anticipated, as I have explained the law to you, you must find that claim invalid.  If you find that the FedEx Defendants have failed to prove by clear and convincing evidence that a claim was anticipated, you must find that claim is not anticipated]

[**FedEx's Proposal:**  In determining whether a single item of prior art anticipates a patent claim, you may consider not only what is expressly disclosed in that item of prior art but also what is inherently present or disclosed in it or inherently results from its use. Prior art inherently

---

[56] **Authority**: Adapted from *SSL Services, LLC v. Citrix Systems, Inc.*, No. 2:08-cv-00158-JRG, Jury Instructions, Dkt. 256 at 20-21 (June 18, 2012).

[57] *Id.*

[58] **Authority**: *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)

[59] **Authority**: *Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1069 (Fed. Cir. 2017).

anticipates a patent claim if the missing requirement or feature would necessarily be present in the prior art.[60]

If you find that the FedEx Defendants have proven by clear and convincing evidence that a claim was anticipated, as I have explained the law to you, you must find that claim invalid. If you find that the FedEx Defendants have failed to prove by clear and convincing evidence that a claim was anticipated, you must find that claim is not anticipated.

These anticipation questions are to be answered on the Verdict Form at Nos. 30-32.]

### 4.    Invalidity – Obviousness

[IV's Proposal:[61] In order to be patentable, in addition to being "new" the invention must also be "non-obvious." That means that it would not have been obvious to a person of ordinary skill in the field of the technology of the patent at the time the invention was made. In this case, FedEx contends that the asserted claims are invalid as obvious.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the technology of the patent that someone would have had at the time of the claimed invention, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

The existence of every element of the claimed invention in the prior art does not prove obviousness. Most, if not all, inventions rely on the building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the technology of the patent to combine the known elements in the way that the claimed

---

[60] **Authority**: Adapted from N.D. Cal. Model Patent Jury Instructions (2018) at 26.

[61] **Authority**: Adapted from *Hitachi Consumer Elecs. v. Top Victory Elecs.*, No. 2:10-cv- 260-JRG, Jury Instructions Dkt. 351, Tr. at 51 (April 12, 2013).

invention does, taking into account such factors as:

(4)     Whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

(5)     Whether the claimed invention provides an obvious solution to a known problem in a relevant field;

(6)     Whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

(7)     Whether the prior art teaches away from combining elements in the claimed invention;

(8)     Whether it would have been obvious to try the combinations of elements such as when there is a design need or market pressure to solve a problem, and there are a finite number of identified, predictable solutions; and

(9)     Whether the change resulted more from design incentives or other market forces.

To find that prior art rendered the invention obvious, do not use hindsight. In other words, you should not consider what a person of ordinary skill in the art would know today, or what has been learned from the teachings of the patents. The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

(10)    You must decide the level of ordinary skill in the field of the technology that someone would have had at the time the claimed invention was made.

(11)    You must decide the scope and content of the prior art. In determining the scope and content of the prior art, you must decide whether a reference is pertinent or analogous to the claimed invention. Pertinent or analogous prior art includes prior art in the same field of the endeavor as the claimed invention, regardless of

problems addressed by the reference and prior art in different fields reasonably pertinent to the particular problem with which the claimed invention is concerned. Remember that prior art is not limited to patents and published materials but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

(12)    You must decide what differences, if any, existed between the claimed invention and the prior art.

In making these assessments, you should take into account any objective evidence that may have existed at the time of the invention that may shed light on the obviousness or not of the claimed invention, such as:

(13)    Whether the claimed invention was commercially successful as a result of the merits of the claimed invention;

(14)    Whether the invention satisfies a long-felt need;

(15)    Whether others in the field praised the invention;

(16)    Whether others sought or obtained rights to the patent from the patent-holder.

Although you should consider evidence of these factors, the relevance and importance of any of them to your decision about whether the claimed invention would have been obvious is up to you.

The FedEx Defendants must prove that it is highly probably that a claimed invention was obvious. If you find that the FedEx Defendants have proven by clear and convincing evidence that a claim was obvious, as I have explained the law to you, you must find that claim invalid. If you find that the FedEx Defendants have failed to prove by clear and convincing evidence that a claim was obvious, you must find that claim is not invalid.]

[**FedEx's Proposal:** [62]  In order to be patentable, in addition to being "new" the invention must also be "non-obvious."  That means that it would not have been obvious to a person of ordinary skill in the field of the technology of the patent at the time the invention was made.  In this case, the FedEx Defendants contend that all the asserted claims are invalid as obvious.

In evaluating a patent claim composed of several elements, it is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. You may consider whether the FedEx Defendants have identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness. You may consider whether an inventor would look to the prior art to help solve the particular problem at hand. You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness. You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent. Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way. You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in

---

[62] **Authority**: Adapted from *Hitachi Consumer Elecs. v. Top Victory Elecs.*, No. 2:10-cv- 260-JRG, Jury Instructions Dkt. 351, Tr. at 51 (April 12, 2013); AIPLA Model Patent Jury Instructions (2017) at 49; N.D. Cal. Model Patent Jury Instructions (2018) at 37-38.

the art. To avoid using hindsight to determine obviousness, you should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the asserted patent.

The ultimate conclusion of whether a claim is obvious will be based on your determination of several factual issues:

(1)    You must decide the level of ordinary skill in the field of the technology that someone would have had at the time the claimed invention was made.

(2)    You must decide the scope and content of the prior art.  In determining the scope and content of the prior art, you must decide whether a reference is pertinent or analogous to the claimed invention.  Pertinent or analogous prior art includes prior art in the same field of the endeavor as the claimed invention, regardless of problems addressed by the reference and prior art in different fields reasonably pertinent to the particular problem with which the claimed invention is concerned.  Remember that prior art is not limited to patents and published materials but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

(3)    You must decide what differences, if any, existed between the claimed invention and the prior art.

(4)    You should also take into account any objective evidence that IV properly advances that may have existed at the time of the invention that may shed light on the obviousness or not of the claimed invention. These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claims. If you conclude that objective evidence indicators have been established,

those factors should be considered along with all the other evidence in the case in determining whether the FedEx Defendants have proven that the claimed invention would have been obvious.

If you find that the FedEx Defendants have proven by clear and convincing evidence that a claim was obvious, as I have explained the law to you, you must find that claim invalid.  If you find that the FedEx Defendants have failed to prove by clear and convincing evidence that a claim was obvious, you must find that claim is not invalid.

These obviousness questions are to be answered on the Verdict Form at Nos. 33-36.]

L.    **Damages**

[**IV's Proposal**: [63]

If you find that FedEx has infringed any valid claim, you must then consider what amount of damages to award to Intellectual Ventures. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate Intellectual Ventures for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Intellectual Ventures in approximately the same financial position that it would have been in had the infringement not occurred.

IV has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award those damages that Intellectual Ventures establishes that it more likely than not suffered. While Intellectual Ventures is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. Intellectual Ventures is not entitled to damages that are remote or speculative.

The determination of a damage award is not an exact science, and the amount need not be proven with unerring precision. You may approximate, if necessary, the amount to which Intellectual Ventures is entitled. In such case, while the damages may not be determined by mere speculation or guess, it is proper to award a damages amount if the evidence shows the extent of the damages as a matter of just and reasonable inference. When the amount of the damages cannot be ascertained

---

[63] **Authority**: Adapted from The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.6.1 (July 2016); *DDR Holdings LLC v. Digital River, Inc. et. al*. 2:06-CV-42-JRG, Proposed Final Jury Instructions, Dkt. 519 at 24-28 (Oct. 12, 2012); *SSL Services, LLC v. Citrix Systems, Inc.*, No. 2:08-cv-00158-JRG, Jury Instructions, Dkt. 256 at 24-28 (June 18, 2012).

with precision, any doubts regarding the amount must be resolved against the infringer.  In addition, if actual damages cannot be ascertained with precision because the evidence available from the infringer is inadequate, damages may be estimated on the best available evidence, taking cognizance of the reason for the inadequacy of proof and resolving doubt against the infringer.

There are different types of damages that Intellectual Ventures may be entitled to recover.  The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty.

In this case, Intellectual Ventures seeks a reasonable royalty. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is defined as the money amount the patent holder and infringer would have agreed upon as a fee for use of the invention at the time prior to when infringement began. A reasonable royalty can be a single lump sum amount, or it can be a percentage properly attributed to the infringing activity. A lump sum amount is a royalty payment where the patent owner receives a single, upfront payment. A running royalty is a royalty where the patent owner collects ongoing, per unit, or percentage payments over a period of time.

A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patents-in-suit were valid and infringed and that both parties were willing to enter into an agreement. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.  The reasonable royalty you determine must be a royalty that would have

resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits FedEx made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits FedEx made.

In this case, the parties generally agree on when and between whom the hypothetical negotiations for each of the patents-in-suit would have taken place. The parties disagree on whether the hypothetical negotiation for each of the patents-in-suit would have resulted in a single lump-sum royalty for the life of the patents or a running royalty.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors you may consider in making your determination are:

(1)     The value that the claimed invention contributes to the accused product

(2)     The value that factors other than the claimed invention contribute to the accused instrumentalities

(3)     Comparable license agreements, such as those covering the use of the claimed invention or similar technology.

Additional factors you may consider, sometimes called the "*Georgia-Pacific* factors," include:

(1)     The royalties received by Intellectual Ventures for the licensing of the patents-in-suit, proving or tending to prove an established royalty;

(2)     The rates paid by FedEx for the use of other patents comparable to the patents-in-

suit;

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold;

(4)     Intellectual Ventures's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

(5)     The commercial relationship between Intellectual Ventures and FedEx, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

(6)     The effect of selling the patented specialty in promoting sales of other products of the FedEx, and the extent of such derivative or convoyed sales;

(7)     The duration of the patent and the term of the license;

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity;

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(10)     The nature of the patented invention, and the benefits to those who have used the invention;

(11)     The extent to which FedEx has made use of the invention and any evidence probative of the value of that use;

(12)     The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention

69

or analogous inventions;

(13)     The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by FedEx;

(14)     The opinion and testimony of qualified experts;

(15)     The amount that a licensor (such as Intellectual Ventures) and a licensee (such as FedEx) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee which was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

In determining the amount of damages, you must determine when the damages begin and end. No damages can be awarded for any infringement that occurred before the date the patent was issued.

[**FedEx's Proposal:** [64]

If you find that a particular one of the FedEx Defendants has been shown by Intellectual Ventures to have infringed a valid claim of a specific patent-in-suit, you must then consider what amount of damages to award to Intellectual Ventures for the acts of that particular FedEx entity. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. My instructions about damages are for your guidance only in the event you find in favor of Intellectual Ventures. You will need to decide the issue of damages only if you find that one or more of the asserted claims are both not invalid and infringed. On the other hand, if you find that each of the asserted claims is either invalid or is not infringed, then you should not consider damages in your deliberations.

The damages you award must be adequate to compensate Intellectual Ventures for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Intellectual Ventures in approximately the same financial position that it would have been in had the infringement not occurred. You may not add anything to the amount of damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest. In determining infringement damages, you must not consider Intellectual Ventures's allegations of willfulness, or take into account any evidence relating to those allegations. The consideration of willfulness, if any is needed, is entirely separate from the

---

[64] **Authority**: Adapted from The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.6.1 (July 2016); *DDR Holdings LLC v. Digital River, Inc. et. al.* 2:06-CV-42-JRG, Proposed Final Jury Instructions, Dkt. 519 at 24-28 (Oct. 12, 2012); *SSL Services, LLC v. Citrix Systems, Inc.*, No. 2:08-cv-00158-JRG, Jury Instructions, Dkt. 256 at 24-28 (June 18, 2012); AIPLA Model Patent Jury Instructions (2017) at 55-56; N.D. Cal. Model Patent Jury Instructions (2018) at 49-50.

question of any infringement damages that you are asked to determine. Infringement damages should not be increased because you find willfulness, nor decreased because you do not find willfulness.

Intellectual Ventures has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Intellectual Ventures establishes that it more likely than not suffered. While Intellectual Ventures is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. Intellectual Ventures is not entitled to damages that are remote or speculative.

In this case, Intellectual Ventures seeks a reasonable royalty. A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license."

A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the alleged infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that both parties would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty

would have resulted from a hypothetical negotiation.

In this case, the parties generally agree on when and between whom the hypothetical negotiations for each of the patents-in-suit would have taken place. The parties disagree on whether the hypothetical negotiation for each of the patents-in-suit would have resulted in a single lump-sum royalty for the life of the patents or a running royalty. A lump sum amount is a royalty payment where the patent owner receives a single, upfront payment. A running royalty is a royalty where the patent owner collects ongoing, per unit, or percentage payments over a period of time. In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors you may consider in making your determination are:

(1)    The value that the claimed invention contributes to the accused product

(2)    The value that factors other than the claimed invention contribute to the accused instrumentalities

(3)    Comparable license agreements, such as those covering the use of the claimed invention or similar technology

(4)    Noninfringing alternatives to the patents-in-suit that were available to the FedEx Defendants at the time alleged infringement began

Additional factors you may consider, sometimes called the "*Georgia-Pacific* factors," include:

(1)    The royalties received by Intellectual Ventures for the licensing of the patents-in-suit, proving or tending to prove an established royalty;

(2)    The rates paid by the FedEx Defendants for the use of other patents comparable to the patents-in-suit;

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold;

(4)     Intellectual Ventures's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

(5)     The commercial relationship between Intellectual Ventures and the FedEx Defendants, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

(6)     The effect of selling the patented specialty in promoting sales of other products of the FedEx Defendants, and the extent of such derivative or convoyed sales;

(7)     The duration of the patent and the term of the license;

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity;

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(10)    The nature of the patented invention, and the benefits to those who have used the invention;

(11)    The extent to which the FedEx Defendants have made use of the invention and any evidence probative of the value of that use;

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions;

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the FedEx Defendants;

(14)    The opinion and testimony of qualified experts;

(15)    The amount that a licensor (such as Intellectual Ventures) and a licensee (such as the FedEx Defendants) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee which was willing to grant a license. (This final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.)

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. For example, in determining a reasonable royalty, you may also consider evidence concerning the availability and cost of non-infringing alternatives to the patented invention. A non-

infringing alternative must be an acceptable product that is licensed under the patent or that does not infringe the patent.

In determining the amount of damages, you must determine when the damages begin and end. No damages can be awarded for any infringement that occurred before the date the patent was issued. It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for the life of the patent.]

### M.    [FedEx's Proposal: Tennessee Code § 29-10-102[65]

The FedEx Defendants also allege that Intellectual Ventures violated Tennessee Code No. 29-10-102 by, among other things, sending a written communication on April 4, 2016, and follow-up communications through July 2016, that accused the intended recipient of infringing or having infringed a patent and bearing liability to Intellectual Ventures.

You must decide if Intellectual Ventures did, in fact:

1.  send, or cause any person to send;

2.  a written or electronic communication;

3.  that states that the intended recipient, in this case various FedEx entities, is infringing a patent and owes compensation to another person, in this case Intellectual Ventures; and

4.  the written or electronic communication contains no identification of patent numbers or support for the infringement assertions.

The question regarding Tennessee state law is on the FedEx Defendants' Proposed Verdict Form.]

---

[65] IV disagrees that this issue should be submitted to the jury. Should the Court disagree, IV will propose appropriate instructions on a later date. FedEx's proposal is inappropriate at least because it contains factual allegations which the jury should not be instructed on. Moreover, it is an incomplete and inaccurate recitation of Tennessee Law.

## III.    AFTER CLOSING ARGUMENTS

### A.    Deliberations:[66]

I would now like to provide you with a few final instructions before you begin your deliberations.

You must all perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer each question from the facts as you find them. [**FedEx's Proposal:** Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.] Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its patent rights under the United States Constitution. This includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction among types of parties. All corporations, partnerships and other organizations stand equal before

---

[66] **Authority**:  Adapted from *SSL Services, LLC v. Citrix Systems, Inc.*, No. 2:08-cv-00158-JRG, Jury Instructions, Dkt. 256 at 29-31 (June 18, 2012); Fifth Circuit Pattern Jury Instructions (Civil) (2016).

the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you. If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Office, and I will send that exhibit or exhibits to you. Once you retire, you should select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial and do not discuss the case at any time unless all of you are present together in the jury room. After you have reached your verdict, your Foreperson is to fill in on the verdict form which reflects your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise.

You may now retire to the jury room to deliberate.