IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| INTELLECTUAL VENTURES II LLC, | |
|     Plaintiff, | Civil Action No.  2:16-cv-00980-JRG |
|     v. | JURY TRIAL DEMANDED |
| FEDEX CORP., FEDERAL EXPRESS CORP., FEDEX GROUND PACKAGE SYSTEM, INC., FEDEX FREIGHT, INC., FEDEX CUSTOM CRITICAL INC., FEDEX OFFICE AND PRINT SERVICES, INC., and GENCO DISTRIBUTION SYSTEM, INC., | PUBLIC-REDACTED VERSION OF UNDER SEAL FILING |
|     Defendants. | |

**<u>PLAINTIFF INTELLECTUAL VENTURES II LLC'S OPPOSITION TO FEDEX'S MOTIONS *IN LIMINE*</u>**

## TABLE OF CONTENTS

**Page**

I.      FEDEX'S MOTION *IN LIMINE* NO. 1 .................................................................. 1

II.     FEDEX'S MOTION *IN LIMINE* NO. 2 .................................................................. 1

III.    FEDEX'S MOTION *IN LIMINE* NO. 3 .................................................................. 2

IV.     FEDEX'S MOTION *IN LIMINE* NO. 4 .................................................................. 3

V.      FEDEX'S MOTION *IN LIMINE* NO. 5 .................................................................. 5

VI.     FEDEX'S MOTION *IN LIMINE* NO. 6 .................................................................. 6

VII.    FEDEX'S MOTION *IN LIMINE* NO. 7 .................................................................. 6

VIII.   FEDEX'S MOTION *IN LIMINE* NO. 8 .................................................................. 7

IX.     FEDEX'S MOTION *IN LIMINE* NO. 9 .................................................................. 8

X.      FEDEX'S MOTION *IN LIMINE* NO. 10 ................................................................ 9

XI.     FEDEX'S MOTION *IN LIMINE* NO. 11 .............................................................. 11

XII.    FEDEX'S MOTION *IN LIMINE* NO. 12 .............................................................. 12

XIII.   FEDEX'S MOTION *IN LIMINE* NO. 13 .............................................................. 14

XIV.    FEDEX'S MOTION *IN LIMINE* NO. 14 .............................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) ................................................................ 4, 5, 10, 11

*Alford v. Access Indus., Inc.*,
   No. 1:15-cv-59, 2016 WL 3460775 (E.D. Tex. Feb. 8, 2016)................................ 10

*Burdis v. Texas & P. Ry. Co.*,
   569 F.2d 320 (5th Cir. 1978) ........................................................................... 14

*Eason v. Fleming Co.*,
   No. 92-1390, 1993 WL 13015208 (5th Cir. Aug. 24, 1993) ................................ 14

*Gilbert v. Tulane Univ. (The Administrators of the Tulane Educ. Fund)*,
   909 F.2d 124 (5th Cir. 1990) ........................................................................... 14

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016)...................................................................................... 12

*Home Ins. Co. v. Gates McDonald & Co.*,
   No. CV-01-07365, 2004 WL 5486631 (C.D. Cal. Feb. 9, 2004) ............................ 5

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831, (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ...................................... 3

*Indacon, Inc. v. Facebook, Inc.*,
   No. SA-10-CA-966, 2012 WL 12862665 (W.D. Tex. May 7, 2012)...................... 13

*Kasprzak v. Am. Gen. Life & Acc. Ins. Co.*,
   914 F. Supp. 144 (E.D. Tex. 1996) ................................................................... 10

*Lam, Inc. v. Johns-Manville Corp.*,
   718 F.2d 1056 (Fed. Cir. 1983) .......................................................................... 8

*Lucas v. Texas Indus., Inc.*,
   696 S.W.2d 372 (Tex. 1984)............................................................................ 10

*Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005).......................................................................................... 4

*Realtime Data, LLC v. T-Mobile U.S.A., Inc.*,
   No. 6:10-cv-493, slip op. (E.D. Tex. Jan. 25, 2013)....................................... 5, 10

     ge(s)

*Sciele Pharma Inc. v. Andrx Corp. et al.,*
    684 F. 3d 1253 (Fed. Cir. 2012) .................................................................................. 2

*Sensonics, Inc. v. Aerosonic Corp.,*
    81 F.3d 1566 (Fed. Cir. 1996) ..................................................................................... 8

*Travel Sentry, Inc. v. Tropp,*
    877 F.3d 1370 (Fed. Cir. 2017) ................................................................................. 10

*Wi-LAN USA, Inc. v. Ericsson, Inc.,*
    675 Fed. App'x 984 (Fed. Cir. 2017) ........................................................................ 12

**TABLE OF EXHIBITS**

| Exhibit | Description of Document |
|---|---|
| 1. | Dec. 19, 2017 Expert Report of Daniel W. Engels, Ph.D. Concerning FedEx's Infringement of U.S. Patent Nos. 6,909,356, 7,199,715, and 9,047,586, Excerpted |
| 2. | Dec. 19, 2017 Expert Report of Jacob Sharony, Ph.D., MBA, Concerning FedEx's Infringement of U.S. Patent No. 8,494,581, Excerpted |
| 3. | FedEx Services - About Fedex, webpage located at https://about.van.fedex.com/our-story/history-timeline/history/opco-fedex-services/ (accessed on Mar. 26, 2018) |
| 4. | Transcript of Pre-Trial Hearing before The Honorable John D. Love, United States Magistrate Judge on Jan. 24, 2013 - Dkt. No. 681 - *Realtime Data v. T-Mobile USA* (C.A. No. 6:10-cv-493-RC-JDL), Excerpted |
| 5. | Plaintiff's Second Amended Initial Disclosures, served on Sept. 8, 2017 |
| 6. | Plaintiff's Fifth Supplemental Responses to Defendants First Set of Interrogatories (Nos. 1, 5, 9, 10, 11, 13), served on Dec. 6, 2017, Excerpted |
| 7. | Dec. 19, 2017 Expert Report of Michael J. Wagner, Excerpted |
| 8. | Jan. 11, 2018 Expert Rebuttal Report of Lauren J. Stiroh, Excerpted |
| 9. | Nov. 3, 2017 Deposition Transcript of Chris Swearingen, Excerpted |
| 10. | Petition for Writ of Mandamus - Dkt No. 2-1 - filed on Dec. 5, 2017 in CAFC Action No. 18-117, Excerpted |
| 11. | Federal Circuit Bar Association - Model Patent Jury Instructions, Last Edited: July 2016, Excerpted |
| 12. | Jan. 26, 2018 Deposition Transcript of Lauren Stiroh, Excerpted |
| 13. | Letter from L. Nowierski to E. Cook, dated July 31, 2017 |
| 14. | Defendants' Amended and Supplemental Responses to IV's First and Second Set of Interrogatories (Nos. 3, 4, 7-13, 15, 18, 21, 23-27), served on Oct. 20, 2017, Excerpted |
| 15. | Email from L. Nowierski to E. Cook, dated Mar. 14, 2018 |
| 16. | Email from E. Cook to L. Nowierski, dated Mar. 16, 2018 |
| 17. | Mar. 12, 2018 Deposition Transcript of Mark Petrosky, Excerpted |
| 18. | Transcript of Motion Hearing on Feb. 16, 2017 before The Honorable Judge Rodney Gilstrap, Excerpted |
| 19. | Plaintiff's Proposed Trial Exhibit, PTX 0681; FedEx - Overview of Company, webpage located at http://investors.fedex.com/company-overview/overview-of-company/default.aspx |
| 20. | Plaintiff's Proposed Trial Exhibit, PTX 0682; Corporate Fact Sheet - About FedEx, webpage located at https://about.van.fedex.com/our-story/company-structure/corporate-fact-sheet |
| 21. | FedEx Defendants' Witness List, served on Mar. 5, 2018 |

## I.     FEDEX'S MOTION *IN LIMINE* NO. 1

FedEx seeks to preclude only *inter partes* review (IPR) evidence that cuts against FedEx. But precluding some, but not all, evidence relating to the IPRs would create a misleading record. IV agrees that evidence and argument relating to IPRs should be precluded, but consistent with IV's motion *in limine* No. 20, IV submits that ***both*** parties should be precluded from presenting evidence and argument referring or relating to ***any*** IPR proceedings.  (Dkt. 448 at 14.)

FedEx acknowledges ██████████████████████████████████████

███████████████████████████████████████████████████████████

████████████   (Dkt. 447 at 1.)  Similarly, expert testimony in the IPR proceedings was given under the backdrop of these different standards, limiting its probative value and increasing the risk for jury confusion.  FedEx arbitrarily distinguishes between non-instituted IPRs and instituted IPRs, but provides no basis for doing so.  Indeed, because the non-instituted IPRs are final whereas the instituted IPRs are not, even less reason exists to permit FedEx to discuss instituted non-final IPRs.

Similar to FedEx's own cited authority (Dkt. 447, Ex. A at 2), instead of allowing FedEx to cherry-pick from post-issuance USPTO proceedings with different procedural postures, the Court should grant IV's motion *in limine* No. 20 and preclude all evidence relating to such proceedings, including *inter partes* reviews and *ex parte* re-exams.  But if the Court does allow any such evidence at trial, all such evidence should be allowed because no basis exists to distinguish between instituted petitions, non-instituted petitions, and final written decisions.

## II.     FEDEX'S MOTION *IN LIMINE* NO. 2

FedEx's second motion, again, seeks to skew the record in its favor by precluding IV from referencing any ***final*** written decisions from an IPR proceeding but permitting FedEx to discuss ***instituted but non-final*** proceedings. A final written decision before trial will either find the patent claims invalid (potentially making a trial moot) or not invalid (making a reference unfavorable to

FedEx).  Permitting a party to discuss instituted but non-final IPRs only until the PTAB issues a final written decision is a baseless, arbitrary distinction that would be unfair to IV and create a misleading record.  The Court should preclude all references to post-issuance USPTO proceedings.

## III.    FEDEX'S MOTION *IN LIMINE* NO. 3

FedEx's third motion should be denied because it is directly contrary to controlling Federal Circuit precedent.  The Federal Circuit has expressly recognized "the fact that references were previously before the PTO goes to the weight the court or jury might assign to the proffered evidence":

> Conversely, it may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered. Importantly whether a reference was before the PTO goes to the weight of the evidence, and the parties are of course free to, and generally do, make these arguments to the fact finder.

*Sciele Pharma Inc. v. Andrx Corp. et al.,* 684 F. 3d 1253, 1260 (Fed. Cir. 2012).

IV appreciates the principles set forth in *Arthrex*, Dkt. 447, Ex. C, that IV may "open the door by contending that the patentee overcame a prior art reference listed on the face of an asserted patent *if* that prior art reference later became a basis of the Patent Office's decision to institute IPR." (emphasis added.)  But FedEx's overbroad motion seeks to preclude IV from discussing *all* of the prior art references listed on the face of the patents-in-suit—of which there are over 300— *regardless* of whether they later formed the basis of an IPR institution.  Additionally, the *Arthrex* court did not preclude the plaintiff from arguing that the patentee overcame prior art references; it only cautioned that doing so might open the door for defendant to bring in the Patent Office's decision to institute IPRs on the same art.  FedEx cites no authority for preventing IV from making a legitimate argument supported by law—that a patent is presumptively valid and the patentee's overcoming of prior art listed on the face of the patent makes it harder to rebut that presumption.

IV.     **FEDEX'S MOTION *IN LIMINE* NO. 4**

FedEx's fourth motion should be denied. IV's infringement theories are presented in its complaint, infringement contentions, and expert reports. No valid basis exists to preclude them.

FedEx's suggestion that IV may present evidence of infringement only through its technical experts is wrong.  First, a technical expert need not opine on non-technical aspects of infringement, such as which entity is liable for infringement. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851–52 (Fed. Cir. 2010) (affirming district court's denial of judgment as a matter of law because jury had substantial evidence to find indirect infringement and willful infringement based on documentary evidence), *aff'd*, 564 U.S. 91 (2011).  FedEx also has no basis asking this Court to preclude IV from relying on the cross-examination of FedEx witnesses, the hundreds of exhibits on IV's exhibit list, or the operation of physical versions of the accused instrumentalities.

FedEx's lone example suggests that FedEx seeks to preclude IV from presenting its long-asserted theory that the FedEx Defendants, including FedEx Corp., directly infringe the '586 patent.  But IV's complaint, infringement contentions, and expert reports expressly accuse each of the FedEx Defendants, including FedEx Corp., of direct infringement by making, using, and selling the accused instrumentalities.  (Dkt. 1 at 1; Ex. 1, ¶¶ 170-74, 318-23, 474-609; Ex. 2, ¶¶ 62, 78, 98 n.18, 212 n.19; Dkt. 353 at 2-3.)  Confirming that IV asserted direct infringement against all FedEx Defendants, FedEx's Statement of Undisputed Material Facts in its summary judgment motion admits that ████████████████████████████████████████████ ████████████████████████████████████  (Dkt. 275 at 3.)  FedEx likewise admits that IV's expert ███████████████████████████████████████████████ ████████████████████████████████  (*Id.*)  FedEx has no basis for alleging that IV's experts did not accuse FedEx Corp. of direct infringement.

FedEx  suggests  that  ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████  is contrary to *Akamai Techs., Inc. v. Limelight Networks, Inc.*,

797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc).  *Akamai* provides that "[d]irect infringement under

§ 271(a) occurs where all steps of a claimed method are performed by or attributable to a single

entity," and that "liability under § 271(a) can also be found when an alleged infringer conditions

participation in an activity or receipt of a benefit upon performance of a step or steps of a patented

method and establishes the manner or timing of that performance."  797 F.3d at 1022-23.  IV's

expert reports accused the FedEx Defendants of direct infringement in accordance with that

standard. (Ex. 1, ¶¶ 170-74, 318-23, 474-669; Ex. 2, ¶¶ 62, 78, 98, 212; Dkt. 353 at 2-3); *Akamai*,

797 F.3d at 1023 (quoting *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913,

930 (2005)) ("stating that an actor 'infringes vicariously by profiting from direct infringement' if

that actor has the right and ability to stop or limit the infringement").  *Akamai* also specified that

"[w]hether a single actor directed or controlled the acts of one or more third parties is a question

of fact," and "principles of attribution are to be considered in the context of the particular facts

presented," making *in limine* resolution of this contested issue of fact improper.  797 F.3d at 1023.

FedEx also presents no authority requiring that a direct infringement theory, even one

based on attribution, contain the word "vicarious."  Rather, the issue is whether IV's experts have

asserted  and  analyzed  direct  infringement—which  they  have.    And  contrary  to  FedEx's

representation, IV never stated that FedEx Express and FedEx Ground are "***not*** vicariously liable

for direct infringement of the '586 patent." (Dkt. 447 at 5 (emphasis in FedEx's motion).)  Rather,

IV accused both FedEx Express and FedEx Ground of direct infringement from the outset of this

case. (Dkt. 1 at 1, 17; Dkt. 353 at 3.)   Finally, FedEx's argument that IV changed its infringement

theories is false.  (Dkt. 447 at 5.)  As FedEx admitted, IV accused all FedEx Defendants of directly infringing each patent-in-suit at the outset and throughout IV's expert reports.  (*E.g.*, Dkt. 275 at 3.)   With no citation to the record, FedEx complains that IV changed its infringement theories (Dkt. 447 at 5); however, IV has simply narrowed its case for trial by dropping certain FedEx Defendants from its infringement allegations for certain patents. FedEx's motion should be denied.

## V.   FEDEX'S MOTION *IN LIMINE* NO. 5

FedEx's fifth motion is misleading at least because IV does not allege infringement against FedEx Services or any other "unnamed" party.  As discussed in its response to FedEx's motion *in limine* No. 4 above, IV asserts infringement against the named FedEx Defendants themselves.

Contrary to the premise of FedEx's motion, ***FedEx***—not IV—seeks to interject and place ███████████ at issue in this case in an attempt to evade liability for infringement.  Taking the opposite position, IV contends FedEx should be precluded from suggesting that it does not infringe based on ███████████████████████████████████████████████████████ ████████████████████████████████ is irrelevant to the FedEx Defendants' infringement and any probative value is substantially outweighed by Rule 403 considerations. (Dkt. 448 at 6-7.)

Ultimately, if FedEx is permitted to suggest that ██████████ is relevant to the FedEx Defendants' infringement or should have been named as a defendant, IV should be permitted to present countervailing evidence that ██████████ activities expressly benefit the FedEx Defendants and that the FedEx Defendants have the right and ability to stop or limit that infringement, making them liable for any such infringement under *Akamai*.[1]

---

[1] FedEx's reliance on *Home Ins. Co. v. Gates McDonald & Co.*, No. CV-01-07365, 2004 WL 5486631, *3 (C.D. Cal. Feb. 9, 2004) and *Realtime Data, LLC v. T-Mobile U.S.A., Inc.*, No. 6:10-cv-493, slip op. at 2 (E.D. Tex. Jan. 25, 2013) (Dkt. 599) is misplaced.  In *Home Ins. Co.*—an insurance case—the Court precluded the plaintiff from referring to the corporate parent of the named defendant because the corporate parent played no role in the case other than the fact that the defendant was a subsidiary of the corporate parent.  2004 WL 5486631, *3. In *Realtime Data*,

## VI.    FEDEX'S MOTION *IN LIMINE* NO. 6

The parties stipulated to priority dates for the patents-in-suit in the pretrial order.  If FedEx's motion simply seeks to confirm those priority dates and preclude IV from asserting an earlier date, it is moot.  But if FedEx's motion is directed to any other purpose—such as precluding IV or the named inventors from presenting evidence regarding conception, reduction to practice, or development of the patented inventions—it should be denied.  IV's initial disclosures and interrogatory response identified the relevant third-party inventors and FedEx had the opportunity to depose them.  (Ex. 5 at 5-7; Ex. 6 at 23-29.)  Accordingly, no basis for exclusion exists.

## VII.    FEDEX'S MOTION *IN LIMINE* NO. 7

No basis exists to preclude IV from presenting its own licenses, including PTX-305 through PTX-311—which IV's damages expert expressly discussed and relied upon in his expert report.  (Ex. 7, ¶¶ 284-290.)  IV's licenses are relevant to numerous, contested issues.  For example, IV's licenses are relevant to the issue of whether, at the hypothetical negotiation, the parties would have agreed to a license having the form of ███████████████████████████ ████████████  (Dkt. 324 at 1, 3-6.) ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████  (Ex. 7,

---

the Court precluded a plaintiff from arguing that the spoliation actions by an unnamed, unrelated third party could be imputed to the named defendant.  *Realtime Data*, No. 6:10-cv-493, Dkt. 681 at 86-88 (Ex. 4).  None of these scenarios is applicable here, where it is ***FedEx***—not IV— who is attempting to place an "unnamed" party at issue and that related unnamed party provides ████████ ████████████████████████████████████████████████████  (Dkt 275 at 17, 19.)

6

¶¶ 281-93.) 

(Ex. 8, ¶¶ 99-104.)

Because IV's licenses are relevant to numerous issues, FedEx's motion should be denied.[2]

## VIII.   FEDEX'S MOTION *IN LIMINE* NO. 8

FedEx's motion should be denied because it is misleading and would allow FedEx to benefit from its withholding of discovery.  The "discovery disputes" and "discovery deficiencies" at issue in FedEx's motion may purport to include FedEx's withholding of discovery and belated attempts to produce discovery after the deadlines, including after the close of fact discovery, after IV's experts had submitted their expert reports, and after IV had deposed FedEx's experts.  For example, FedEx did not disclose ██████████████████████████████████████

████████████████████████ during fact discovery or even before IV's damages expert submitted his expert report.  In addition, FedEx never produced its actual sales data for the accused '586 platforms.  FedEx's withholding of this discovery prevented IV from obtaining fact discovery on such evidence and IV's experts from considering and opining on it.

---

[2] As a compromise, ████████████████████████████████████████████ IV would be amenable to agreeing that no party identify or discuss any licenses or licensing negotiations.

IV has filed motions and other briefing to prevent FedEx from benefiting from its discovery failures by, e.g., criticizing IV's expert for not considering evidence FedEx never produced.  (Dkts. 233, 278, 297, 324, 351, 408, 448: Nos. 1-4.)  IV submits that granting IV's motions provides the proper remedy for FedEx's discovery failures.  But if the Court denies IV's motions, IV and its experts should be free to defend themselves against FedEx's attempts to benefit from FedEx's discovery failures, such as explaining that IV's experts did not consider or were forced to estimate certain evidence because FedEx failed to produce it.  (Dkt. 447, Ex. B at No. 13.)  Indeed, IV's damages expert expressly discussed FedEx's failure to provide its actual sales data in his report. (Ex. 7, ¶ 226-27.)  FedEx's failure to produce certain damages discovery also is relevant to the issue of which party bears the consequences of resulting uncertainties.  *See, e.g., Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996) (resolving uncertainty from infringer's failure to provide adequate evidence against infringer); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) (same).  Accordingly, FedEx's motion should be denied.

## IX.    FEDEX'S MOTION *IN LIMINE* NO. 9

IV opposes FedEx's motion because its reference to "procedural events in the case" is vague and may have unintended consequences.  Except as described below, IV agrees in principle that no party, including FedEx, should refer to the existence of pretrial motions and orders.

First, as discussed above in connection with FedEx's motion *in limine* No. 8, the substance of some of these motions and orders—such as FedEx's failure to produce certain discovery—is relevant to numerous issues, including why certain experts conducted analyses the way they did and which party bears the consequences of resulting uncertainties.

Second, FedEx may attempt to take positions at trial that are starkly inconsistent with the positions FedEx took in its motions.  For example, FedEx's motions to transfer, motions to dismiss, and requests for mandamus trivialized FedEx's connections to Texas and suggested that FedEx

has no presence in Texas and that ██████████████████ about any of the accused instrumentalities.  (*E.g.*, Dkt. 34 at 1; Dkt. 84 at 13; Ex. 10 at 4, 8.)  Despite those arguments—which turned out to be inaccurate—FedEx intends to present testimony from ***eight*** witnesses from Texas. (Ex. 21.)  To the extent FedEx now attempts to use those witnesses along with the others to argue that it has deep connections and makes significant contributions to Texas, including charitable endeavors (Dkt. 448: No. 25), FedEx's contrary positions in its prior motions would be relevant and IV should be permitted to use them in cross-examination as needed.

Third, certain procedural events are relevant to IV's willfulness allegations.  IV presumes FedEx does not intend to preclude reference to the procedural events that provided FedEx with notice of infringement allegations (e.g., the Complaint).  But other procedural events are relevant to willful infringement, including whether FedEx "reasonably believed it did not infringe," "made a good-faith effort to avoid infringing," and "tried to cover up its infringement."  *See* Ex. 11.  For example, FedEx's threat of sanctions in late 2016 attempted to force IV to voluntarily dismiss an RFID-related patent (the '715 patent) while ██████████████████████ ██████████████████  And FedEx's failure to initially disclose its ██████████████ ██████  its interrogatory responses, including its decision to supplement those responses a week after the deadline for IV to amend its Complaint without leave, is probative of IV's willful infringement claims. The Court should not preclude such relevant evidence.

## X.   FEDEX'S MOTION *IN LIMINE* NO. 10

This motion should be denied.  IV's complaint, infringement contentions, and expert reports expressly asserted infringement against each of the FedEx Defendants and explained why each of them infringed the patents-in-suit by making, using and selling the accused instrumentalities—infringement assertions FedEx itself acknowledged. (Dkt. 1 at 1; Ex. 1, ¶¶ 170-74, 318-23, 474-669; Ex. 2, ¶¶ 62, 78, 98 n.18, 212 n.19; Dkt. 353 at 2-3.) Now, FedEx essentially

does not want IV ever to say "FedEx" or "FedEx Defendants," but presents no authority to support such a prohibition.  And such a prohibition is contrary to the reality of how the FedEx Defendants operate their business and how they elected to litigate this case.  (Ex. 9 at 7:25-8:6, 15:11-21:13; Exs. 17-20.) FedEx markets itself as a company ██████████████ under the FedEx brand. (Ex. 20.) The FedEx Defendants themselves elected to answer the Complaint and litigate this entire case jointly from the outset.  (*See, e.g.*, Dkt. 456.) In its April 2, 2018 Answer and Counterclaims, FedEx itself defines "FedEx" to refer to ***all*** FedEx Defendants, using "FedEx" to deny the allegations in IV's complaint, to set forth "FedEx's" defenses of non-infringement and invalidity, and to assert "FedEx's" counterclaims against IV. (Dkt. 456.) FedEx's reliance on *Realtime Data* is misplaced because that case merely precluded a plaintiff from arguing that spoliation by an unnamed, unrelated third party could be imputed to the named defendant.  *Realtime Data*, No. 6:10-cv-493, Dkt. 681 at 86-88 (Ex. 4).  The issue here is not a discovery dispute involving an unrelated third party, but a direct infringement assertion under *Akamai*, 797 F.3d at 1023.

FedEx's other arguments lack merit.  First, IV disagrees that asserting infringement against "FedEx" implies all FedEx Defendants make, use, or sell all accused instrumentalities because "the separateness of the Defendants" is precisely a "question of fact" the jury must decide.  *Id.*

Second, FedEx confuses the issue by citing cases that predate *Akamai* even though *Akamai* "broaden[ed] the circumstances in which others' acts may be attributed to an accused infringer to support direct-infringement liability for divided infringement, relaxing the tighter constraints on such attribution reflected in our earlier precedents." *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1381 (Fed. Cir. 2017). FedEx's cases on fraudulent joinder, negligence, and products liability on construction sites are inapposite. *Alford v. Access Indus., Inc.*, No. 1:15-cv-59, 2016 WL 3460775, at *1 (E.D. Tex. Feb. 8, 2016); *Kasprzak v. Am. Gen. Life & Acc. Ins. Co.*, 914 F. Supp. 144, 146 (E.D. Tex. 1996); *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 373 (Tex. 1984).

Third, FedEx misstates *Akamai*, which provides that "a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement," which can occur "where that entity directs or controls others' performance," or "where the actors form a joint enterprise." *Akamai*, 797 F.3d at 1022. Indeed, in *Akamai*, the defendant's customers performed certain steps of the claimed methods, yet the Federal Circuit held the defendant liable for direct infringement because the defendant required its customers to perform the claimed steps. *Id.* at 1024-25. Here, the FedEx Defendants ███████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ (Ex. 1, ¶¶ 170-74, 318-23, 474-669; Ex. 2, ¶¶ 62, 78, 98 n.18, 212 n.19; Dkt. 353 at 2-3.)

Fourth, FedEx incorrectly argues that IV is attempting to prove attribution or vicarious liability by grouping FedEx Defendants together.  This is inaccurate.  Rather, as discussed above, IV relies on evidence that the ████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████ *Akamai*, 797 F.3d at 1023.

Finally, FedEx's allegation of jury confusion is belied by FedEx's choice to litigate this case on behalf of "FedEx" as a collective entity and FedEx's own failure to show the "separateness of the Defendants" with respect to each of "FedEx's" denials, defenses, or counterclaims. (*See, e.g.*, Dkt. 456.) Contrary to FedEx's motion *in limine*, IV has already committed to identifying which Defendant infringes each patent-in-suit. (Dkt. 353 at 2-4.) Any reference by IV to two or more defendants as "FedEx" is for the same reason FedEx has done so: convenience. (Dkt. 456.)

## XI.    FEDEX'S MOTION *IN LIMINE* NO. 11

Unlike IV's Motion *in Limine* No. 17 (Dkt. 448), which seeks to preclude FedEx from using ***pejorative*** terms such as "patent troll," FedEx's eleventh motion seeks to preclude IV from

using ***non-pejorative*** terms to describe its infringement.  FedEx's attempt to preclude mention of "any other improper taking from IV" is improper because FedEx's infringement of IV's patented technology is an "improper taking"—to "infringe" is to take or use something without permission. *See Wi-LAN USA, Inc. v. Ericsson, Inc.*, 675 Fed. App'x 984, 992 (Fed. Cir. 2017). In addition, FedEx's attempt to preclude reference to a "pirate" is improper because willful infringement allegations require egregiousness, which the Supreme Court has referred to as "malicious, bad faith…—indeed—characteristic[s] of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).  In short, FedEx seeks an overbroad order precluding the basic vocabulary that describes the conduct at issue.  Even FedEx's cited authority distinguishes between pejorative and non-pejorative terms.   (Dkt. 447, Ex. K at 6 ("[t]he motion is DENIED with respect to "misappropriating," "taking," or "trespassing" and similar terms.").).

## XII.    FEDEX'S MOTION *IN LIMINE* NO. 12

FedEx provides no basis to preclude IV from relying on the source code computer and its electronic source code files at trial. (Dkt. 447 at 12-14.)  FedEx's attempt to limit IV to a subset of printed source code and prevent IV from using electronic copies of source code at trial is unreasonable and inconsistent with the Protective Order.

First, FedEx's claim that IV "ma[d]e copies of source code files well above the limits imposed by the Protective Order" is unsupported and unsupportable.  (Dkt. 447 at 13.) The Protective Order merely states that "[t]he receiving Party shall be permitted to make a reasonable number of printouts and photocopies of Source Code Material," which IV did. (Dkt. 70, ¶ 10(h).)

Second, FedEx also cannot support its claim that IV's proposal to use a "list of electronic [source code] files" would "violate the Court's Protective Order on electronic copies of source code." (Dkt. 447 at 1370.) The Protective Order expressly contemplates that "Source Code Materials may be loaded onto a stand-alone computer" for "Court proceeding[s]." (Dkt. 70, ¶

10(k).)  A trial is a "Court proceeding" contemplated by the Protective Order. And the Protective

Order acknowledges the need for electronic files because electronic files have some benefits over

printed source code.  For example, printed versions are, by design, subsets and do not show the

folder structure or hierarchy of the original electronic source code. *Indacon, Inc. v. Facebook, Inc.*,

No. SA-10-CA-966, 2012 WL 12862665, at *2 (W.D. Tex. May 7, 2012).

Third, FedEx should not be permitted to benefit from the nature of █████████████████

███████████ and "unreasonably hinder" IV's "ability to efficiently and effectively conduct the

prosecution…of this action."   (Dkt. 70, ¶ 10(b).)   FedEx's complaint that the Source Code

Materials contain ██████████████████ (Dkt. 447 at 12) is one of its own making and

precisely why IV initially proposed over three weeks ago that the parties work together to reach a

reasonable agreement on the use of source code at trial.  IV proposed that it would submit a "list

of electronic [source code] files" for FedEx to put on a flash drive or standalone computer as a

reasonable alternative to "requesting FedEx to bring the entire source code computer to trial." (Ex.

15.)  IV's request was appropriate under paragraph 10(g) of the Protective Order, which provides

that IV may seek written consent from FedEx to make electronic copies of the Source Code

Material. (Dkt. 70, ¶ 10(g).)  FedEx's refusal to discuss this reasonable alternative with IV (Ex.

16) and rejection of IV's proposal forced IV to designate the entire source code computer for use

at trial to ensure that it may present the relevant electronic source code files to the jury as evidence.

Further, because "Source Code Material may only be transported electronically for the purpose of

---

[3] FedEx should not be permitted to benefit from its improper attempt to "bur[y] source code
relevant to the accused functionalities in ██████ of irrelevant data," to which IV has objected
since at least April 2017, yet FedEx has done nothing to narrow the scope of relevant source code
in response to IV's Interrogatories. (Ex. 13 at 4; Ex. 14.) FedEx now objects to IV's designation
of the source code computer for use at trial, and refuses to allow any electronic copies of the most
relevant source code.

Court proceeding[s]," and FedEx refused to permit any "electronic copies of Source Code Material" to be made,[4]  (Dkt. 70, ¶ 10(k).)

FedEx cites no authority to support its attempt to preclude IV from using electronic versions of source code at trial. (Dkt. 447 at 13.)  The three cases FedEx cites merely explain that a district court has wide discretion to preclude a party from presenting exhibits at trial when the exhibits were not timely and properly disclosed.  Those cases have no relevance to source code materials or a Protective Order, and, here, FedEx admits that IV has disclosed the use of the source code computer.  *Eason v. Fleming Co.*, No. 92-1390, 1993 WL 13015208, at *5 (5th Cir. Aug. 24, 1993); *Gilbert v. Tulane Univ. (The Administrators of the Tulane Educ. Fund)*, 909 F.2d 124, 127 (5th Cir. 1990); *Burdis v. Texas & P. Ry. Co.*, 569 F.2d 320, 323 (5th Cir. 1978).

In short, FedEx's technical experts reviewed source code in its electronic form as well as the printed form, yet FedEx seeks to limit IV's trial exhibits to solely the printed pages of source code that IV previously printed for use during selected depositions—by withholding consent for IV to have electronic copies of the most relevant source code files for use at trial—*even if those source code files were cited by FedEx's technical experts in their analysis*.  This is improper. For at least these reasons, FedEx's motion should be denied.

## XIII.   FEDEX'S MOTION *IN LIMINE* NO. 13

Despite the title of its motion, FedEx only seeks to preclude IV from asserting that FedEx had any knowledge of the patents-in-suit prior to August 30, 2016.  Because IV does not intend to offer any evidence at trial that FedEx had knowledge of the patents-in-suit prior to ▮▮▮▮▮▮

▮▮▮▮▮ FedEx's motion is moot. However, as FedEx admits in its motion, IV has indicated to FedEx throughout this litigation that it intends to rely on its ▮▮▮▮▮▮▮▮ notice letter to FedEx for

---

[4] IV remains willing to discuss its previous proposal with FedEx to avoid further dispute.

knowledge of the patents-in-suit and its infringement thereof.  (Dkt. 1 at 11-17.)  Therefore, IV

should not be precluded from presenting evidence relating to that ███████████ letter at trial.

## XIV.   FEDEX'S MOTION *IN LIMINE* NO. 14

FedEx's motion is vague and potentially overbroad.  Indeed, it is unclear what FedEx seeks

to exclude as IV's damages expert discussed all of FedEx's licenses, including ███████████

███████████████  (Ex. 7, ¶¶ 298-317, Tab 6 at Sch. 1.1.)

IV submits that FedEx's licenses are relevant to only two issues in this case.  First, as

discussed in IV's opposition to motion *in limine* No. 8, they are relevant to ████████████

████████████████████████████████████████████████████████

████████████  (Dkt. 324 at 1, 3-6.)  ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████  (*Id.*)  Second,

IV's damages expert relied on one ████████████ for his split of the apportioned profit between IV

and FedEx.  (Ex. 7, ¶ 474.)  Aside from those two issues, ████████████████████████████

██████████████████████ have minimal probative value.  (Ex. 7, ¶¶ 298-317, Tab 6 at Sch. 1.1.)

IV is concerned that FedEx may seek to rely ████████████████████████ while

seeking through this motion to preclude IV from presenting related evidence and testimony from

FedEx expressing FedEx's belief that ████████████████████████████████████████

████████████████████████████████████  (Ex. 17 at 190:21-192:12,

201:17-202:7; 213:21-214:23, 221:6-18.)  To the extent FedEx is permitted to rely on licenses that

derived from ████████████████ as evidence of the amount of a reasonable royalty, IV should

be permitted to present evidence and testimony pertaining to the circumstances of those licenses.

Dated:   April 6, 2018

Respectfully submitted,

By: /s/ *Jordan N. Malz*

William E. Davis, III
**THE DAVIS FIRM P.C.**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661
bdavis@bdavisfirm.com

Alan S. Kellman (*pro hac vice*)
Jordan N. Malz (*pro hac vice*)
Lauren M. Nowierski
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
(212) 351-3400 (Tel)
(212) 351-3401 (Fax)
akellman@desmaraisllp.com
jmalz@desmaraisllp.com
lnowierski@desmaraisllp.com

*Counsel for Plaintiff*
*Intellectual Ventures II LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing sealed document and all attachments thereto are being served via email on all counsel of record on this April 6, 2018.

/s/ *Jordan N. Malz*
Jordan N. Malz

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order (D.I. 70) entered in this case.

/s/ *Jordan N. Malz*
Jordan N. Malz