**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **INTELLECTUAL VENTURES II LLC,** | |
| **Plaintiff,** | **Civil Action No.  2:16-cv-00980-JRG** |
| **v.** | **JURY TRIAL DEMANDED** |
| **FEDEX CORP., FEDERAL EXPRESS CORP., FEDEX GROUND PACKAGE SYSTEM, INC., FEDEX FREIGHT, INC., FEDEX CUSTOM CRITICAL INC., FEDEX OFFICE AND PRINT SERVICES, INC., and GENCO DISTRIBUTION SYSTEM, INC.,** | |
| **Defendants.** | |

**PLAINTIFF INTELLECTUAL VENTURES II LLC'S
MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b)
AND MOTION FOR A NEW TRIAL UNDER RULE 59**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................... 2

    A.    IV Presented Incontrovertible Infringement Evidence ............................ 2

        1.    IV Established Infringement of the '581 patent.......................... 2

        2.    IV Established Infringement of the '586 patent.......................... 3

        3.    IV Established Infringement of the '356 and '715 patents. ........ 3

    B.    FedEx's Misplaced Trial Presentation ..................................................... 4

        1.    FedEx's Experts Failed To Apply The Court's Claim
             Constructions. ............................................................................ 4

        2.    FedEx's Experts Failed To Explain Their Invalidity Analyses. ... 5

        3.    FedEx's Experts Contradicted FedEx's Own Fact Witnesses. ... 6

        4.    FedEx Provided Egregiously Poor Evidence On '581 Patent
             Invalidity. .................................................................................. 7

        5.    FedEx's Lack Of Relevant Evidence And Witnesses' Missteps
             Forced FedEx's Counsel To Resort To Improper Evidence And
             Arguments.................................................................................. 8

III.  LEGAL STANDARDS ......................................................................................... 11

IV.   THE OVERWHELMING WEIGHT OF THE EVIDENCE AND FEDEX'S
    PREJUDICIAL PRESENTATION WARRANTS JMOL AND A NEW TRIAL ........... 12

    A.    The Court Should Enter JMOL In IV's Favor On Patent Infringement and
        Validity For The '581 Patent And On Validity For The '356 Patent. ........ 12

        1.    JMOL For IV Is Warranted for '581 Infringement and Validity. ............. 12

            a)    IV presented abundant, unrebutted evidence that FedEx infringes
                the '581 patent............................................................................. 13

            b)    FedEx failed to produce evidence sufficient to meet its clear and
                convincing burden on invalidity for the '581 patent.................... 19

        2.    JMOL For IV Is Warranted for '356 Validity. ......................... 26

i

B.      The Court Should Grant IV A New Trial On All Issues........................................ 28

      1.     Having Failed To Provide Evidence Sufficient To Sustain Its Burden On Validity Or Rebut IV's Evidence Of Infringement, FedEx Had To Make An Irrelevant, Improper, and Prejudicial Trial Presentation............................................................................................. 28

      2.     A New Trial On '586 Patent Infringement Is Separately Justified Because Of The Strength Of IV's Infringement Evidence. ...................... 31

      3.     A New Trial On '586 Patent Invalidity Is Separately Justified. ............... 34

V.     CONCLUSION............................................................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) .................................................................. 25, 26, 28

*Aetna Casualty & Surety Co. v. Yeatts*,
122 F.2d 350 (4th Cir. 1941) ................................................................................. 2

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ....................................................................... 13, 31

*Amway Corp. v. BHIP Global, Inc.*,
No. 4:10-cv-00549, 2013 WL 2355083 (E.D. Tex. May 29, 2013) .................................. 30, 31

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
69 F.3d 337 (9th Cir. 1995) ................................................................................. 29

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
448 F.3d 1324 (Fed. Cir. 2006) ....................................................................... 31, 33

*Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*,
750 F.2d 1569 (Fed. Cir. 1984) ....................................................................... 26, 28

*Dystar Textilfarben GmbH v. C.H. Patrick Co.*,
464 F.3d 1356 (Fed. Cir. 2006) ............................................................................. 28

*Genentech, Inc. v. Chiron Corp.*,
112 F.3d 495 (Fed. Cir. 1997) ......................................................................... 30, 34

*Graham v. John Deere Co.*,
383 U.S. 1 (1966)............................................................................................. 24

*Hitachi Consumer Elecs. Co. v. Top Victory Elecs. Taiwan Co.*,
No. 2:10-cv-00260, 2013 WL 5273326 (E.D. Tex. Sep. 18, 2013)........................... 11, 12, 19

*Hodges v. Mack Trucks, Inc.*,
474 F.3d 188 (5th Cir. 2006) ............................................................................... 11

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
292 F.3d 728 (Fed. Cir. 2002) ............................................................................. 23

*Key Pharms. v. Hercon Labs. Corp.*,
161 F.3d 709 (Fed. Cir. 1998) ............................................................................. 29

iii

*MobileMedia Ideas LLC v. Apple Inc.*,
 780 F.3d 1159 (Fed. Cir. 2015) ............................................................... 34

*Moody v. Ford Motor Co.*,
 506 F. Supp. 2d 823 (N.D. Okla. 2007) ................................................... 30

*Nissho–Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*,
 729 F.2d 1530 (5th Cir.1984) ................................................................... 12

*Par Pharm., Inc. v. TWI Pharms., Inc.*,
 773 F.3d 1186 (Fed. Cir. 2014) ............................................................... 27

*Procter & Gamble v. Teva Pharms.USA, Inc.*,
 566 F.3d 989 (Fed. Cir. 2009) ................................................................. 26

*Sandt Tech. Ltd. v. Resco Metal & Plastics Corp.*,
 264 F.3d 1344 (Fed. Cir. 2001) ............................................................... 23

*Schumer v. Lab. Computer Sys.*,
 308 F.3d 1304 (Fed. Cir. 2002) ............................................................... 28

*Shows v. Jamison Bedding, Inc.*,
 671 F.2d 927 (5th Cir. 1982) ................................................................... 12

*Smith v. Transworld Drilling Co.*,
 773 F.2d 610 (5th Cir. 1985) ............................................................... 2, 11

*The Barbed Wire Patent Case*,
 143 U.S. 275 (1892)................................................................................. 23

*Waddington N. Am., Inc. v. Sabert Corp.*,
 No. 09-cv-04883, 2011 WL 3444150 (D.N.J. Aug. 5, 2011)................... 30

*Woodland Trust v. Flowertree Nursery, Inc.*,
 148 F.3d 1368 (Fed. Cir. 1998) ............................................................... 23

**Statutes**

35 U.S.C. § 102 ............................................................................................... 31

35 U.S.C. § 103 ............................................................................................... 31

**Rules**

Fed. R. Civ. P. 50 ........................................................................................... 11

Fed. R. Civ. P. 59 ....................................................................................... 2, 11

Fed. R. Civ. P. 60 ............................................................................................. 1

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| IV | Plaintiff Intellectual Ventures II LLC |
| FedEx | The FedEx Defendants |
| TT-#A | Trial Transcript, Day #, Morning Session |
| TT-#P | Trial Transcript, Day #, Afternoon Session |
| JMOL | Judgment as a matter of law |
| '581 patent | United States Patent No. 8,494,581 |
| '586 patent | United States Patent No. 9,047,586 |
| '356 patent | United States Patent No. 6,909,356 |
| '715 patent | United States Patent No. 7,199,715 |
| Corp. | FedEx Corporation |
| Ground | FedEx Ground Package System, Inc. |
| Express | Federal Express Corporation |
| Office | FedEx Office and Print Services, Inc. |
| CLS | Common Label Service |
| DWS | Dispatch Work Station |
| PTO | United States Patent and Trademark Office |

## TABLE OF EXHIBITS

| Exhibit Number | Description |
|---|---|
| Ex. 01 | Excerpt of TT-1P |
| Ex. 02 | Excerpt of TT-2A |
| Ex. 03 | Excerpt of TT-2P |
| Ex. 04 | Excerpt of TT-3A |
| Ex. 05 | TT-3P |
| Ex. 06 | TT-4A |
| Ex. 07 | Excerpt of TT-4P |
| Ex. 08 | Excerpt of TT-5A |
| Ex. 09 | Excerpt of April 11, 2018 Motions Hearing Transcript (4/11 Tr.) |
| Ex. 10 | FedEx Defendants' Opening Demonstrative 16 |
| Ex. 11 | Robin Fluke Trial Demonstrative 4 |
| DTX-100 | USPN 6,094,642 issued to Stephenson et al. |
| DTX-101 | The Federal Express DADS Handheld - An Introduction DRAFT Version 1.2 |
| DTX-406 | Dispatch Work Station An Overview, Version 1.0, Russ Johnson *(FILED UNDER SEAL)* |
| PTX-0001 | Ribbon Copy of U.S. Patent No. 6,909,356 |
| PTX-0002 | Ribbon Copy of U.S. Patent No. 7,199,715 |
| PTX-0003 | Ribbon Copy of U.S. Patent No. 8,494,581 |
| PTX-0004 | Ribbon Copy of U.S. Patent No. 9,047,586 |
| PTX-0082 | FedEx Ship Manager Software User Guide, Version 3000 |
| PTX-0088 | FedEx Express & FedEx Ground - Typography Specification for EPIC Electronic Commerce Shipping Label, Version 1.5 (04-13-2012) *(FILED UNDER SEAL)* |
| PTX-0089 | FedEx 1D Barcode Specification, Version 1.3 (02-12-2016) *(FILED UNDER SEAL)* |
| PTX-0090 | FedEx Express and FedEx Ground - 2D Content Guide - Version 2.5.2 (08-05-2016) *(FILED UNDER SEAL)* |
| PTX-0099 | Software Requirements Specification: ITG 138772 SmartPost, JCLS (07-14-2014) *(FILED UNDER SEAL)* |
| PTX-0117 | FedEx Freight: Freight 2020 Strategy Framework *(FILED UNDER SEAL)* |
| PTX-0119 | FedEx Freight - FXF RFID Shipment Tracking POC (07-10-2017) *(FILED UNDER SEAL)* |

| PTX-0161 | FedEx Ground: Star IV P&D Scanner Workbook, FXG: Ground, Optimized for P&D Version 12.3 (08-29-2016) *(FILED UNDER SEAL)* |
| --- | --- |
| PTX-0162 | FedEx Ground: Star IV P&D Scanner Workbook, FHD: Home Delivery, Optimized for P&D Version 12.3 (08-29-2016) *(FILED UNDER SEAL)* |
| PTX-0166 | Dispatch Workstation (DWS) Applications *(FILED UNDER SEAL)* |
| PTX-0201 | FedEx, PowerPad Functional Specification WR 142192 GPS Phase 2 GPS Application, Version 1.1 (12-26-2014) *(FILED UNDER SEAL)* |
| PTX-0213 | FedEx Ground dataflow for system used in pickup and delivery operations *(FILED UNDER SEAL)* |
| PTX-0220 | Excerpt of Motorola - MC9500-K Mobile Computer User Guide, Rev. B (2011) |
| PTX-0341 | Detail Design Specification: INET - 144355 - EACI Phase 2, FedEx Ship Manager @ fedex.com, Software Version INET-JAN 14 CL, Version 2.0 (01-29-2013) *(FILED UNDER SEAL)* |
| PTX-0342 | Software Requirements Specification, ITG 140583 IRD, JCLS (07-22-2014) *(FILED UNDER SEAL)* |
| PTX-0425 | Software Requirements Specification: Common Label Service - CLS 1110 - 114686 EPIC (07-09-2010) *(FILED UNDER SEAL)* |
| PTX-0467 | Software Requirements Specification: FedEx Ship Manager (CAFE) - CAFE2600 - 124070 - Intelligent Mail Package Barcode (IMpb) Phase 2 (04-20-2012) *(FILED UNDER SEAL)* |
| PTX-0499 | Excerpt of Email chain from C. Morgan to N. Holmes containing PowerPad Communications Interface Control Document (12-20-2016) *(FILED UNDER SEAL)* |
| PTX-0625 | Excerpt of Source code: Cls.java *(FILED UNDER SEAL)* |

Unless, otherwise noted, all emphasis is added.

## I.      INTRODUCTION

IV moves to set aside the jury verdict and the judgment in favor of FedEx on four U.S. patents—the '581 patent, the '586 patent, the '356 patent, and the '715 patent.[1] At trial, IV's case was supported by substantial evidence and consistent with the Court's jury instructions and governing statutory and Federal Circuit law. In contrast, FedEx presented a misguided case that consisted of testimony from witnesses who failed to follow the Court's claim construction Order and other prevailing legal principles. FedEx had to compensate for its witnesses' missteps and lack of relevant evidence throughout the trial with arguments that were far afield from the facts and law. Ultimately, FedEx did not provide the jury with reliable tools and evidence necessary to compare the construed claims to the accused instrumentalities and the prior art.

By the end of trial, FedEx used closing argument to address the otherwise incurable problems FedEx's lack of evidence and defective testimony caused. Counsel asked the jury to disregard the testimony of FedEx's experts, and to credit instead what was allegedly in their minds and expert reports. Contrary to the plain record evidence, FedEx's counsel argued that each of FedEx's experts did "rely upon the Court's claim construction" (TT-5A, 73:18-24):

> They didn't spend a lot of time talking about [the Court's claim constructions] in front of you, but they did with regard to each of their expert opinions and each of their expert reports, and with regard to the testimony rely on the claim construction.

Obviously, the jury never saw the expert reports because they are not evidence, and the jury could not have known what was in the experts' minds. The jury was required to rely only on the evidence in the record, which weighed overwhelmingly in favor of IV on all issues.

---

[1] The Court entered judgment of non-infringement as to all four patents. (Dkt. 538.) The Court further entered judgment of anticipation as to claim 7 of the '586 patent, and obviousness of claims 1, 18, and 20 of the '581 patent, claim 7 of the '586 patent, and claim 1 of the '356 patent. (*Id.*) IV believes the jury's finding of no invalidity of claims 1 and 4 of the '715 patent should be reflected in the judgment, and hereby moves pursuant to FRCP 60 for the Court to correct that omission.

FedEx's prejudicial trial presentation resulted in a verdict almost uniformly one-sided against the evidence in the record. For certain issues in FedEx's case-in-chief—invalidity of the '356 and '581 patents—FedEx's presentation suffered from a complete failure of proof. The evidence presented did not come even remotely close to the "substantial evidence" required to sustain the jury's verdict. Similarly, for at least one issue in IV's case-in-chief—infringement of claims 18 and 20 of the '581 patent—IV presented extensive evidence of infringement that was not disproved either in cross-examination or in FedEx's rebuttal case. For those issues, the Court should enter judgment as a matter of law in favor of IV.[2]

For the remaining issues, because FedEx was forced to resort to misleading and prejudicial tactics to remedy its lack of evidence, and because the verdict was against the weight of the evidence presented, this Court has not only the right—but the ***duty***—to order a new trial. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985); Fed. R. Civ. P. 59. Courts have long recognized the power of a trial judge to set aside a verdict (while still according due respect to the jury's findings) and "grant a new trial in any case where the ends of justice so require." *Aetna Casualty & Surety Co. v. Yeatts*, 122 F.2d 350, 354 (4th Cir. 1941) (detailing history of Rule 59). While courts are reluctant to disturb verdicts, here, justice demands that the Court grant IV's motion for a new trial under Rule 59 on all remaining issues.

## II.    FACTUAL BACKGROUND

### A.    IV Presented Incontrovertible Infringement Evidence

#### 1.    IV Established Infringement of the '581 patent.

IV presented evidence of infringement of claims 1, 18, and 20 of the '581 patent through expert Dr. Jacob Sharony. (PTX-0003, 13:37-50, 14:55-15:2, 15:5-7.) For each claim, Dr. Sharony

---

[2] This is a renewed motion for JMOL. (TT-4P, 31:12-20, 33:12-34:8, 48:8-50:5, 55:7-56:9.)

provided the Court's claim constructions and carefully explained, limitation-by-limitation, how Corp., Ground, and Express infringed each of those claims as construed by using the accused PowerPad and Star IV handheld devices. For method claim 1, Dr. Sharony explained how each defendant performed the four distinct steps of claim 1.[3] For claims 18 and 20, Dr. Sharony addressed each limitation for the FedEx Express PowerPad and FedEx Ground Star IV: (1) "means for establishing" (TT-1P,151:25-152:13, 153:4-25, 154:1-155:9); (2) "means for accessing" (*id.*, 155:10-20, 156:24-157:20, 157:21-159:15), (3) "means for managing data" (*id.*, 159:16-164:18), (4) "means for determining" (*id.*, 164:19-166:3), (5) "means for enabling" (*id.*, 166:4-168:6, 168:14-169:8, 169:9-170:11), and (6) for claim 20, "means for enabling." (*Id.*, 170:12-173:8.) IV clearly established infringement of the '581 patent at trial.

### 2.    IV Established Infringement of the '586 patent.

IV presented evidence of infringement of claim 7 of the '586 patent through expert Dr. Daniel Engels. (PTX-0004, 10:29-40.) Dr. Engels explained in detail how Corp, Ground, Express, and Office make and use products ("FedEx Automation Products") that infringe claim 7 by utilizing the Common Label Service ("CLS") to create and send electronic shipping labels. (TT-2P, 64:2-80:19; PTX-0082, -0088, -0089, -0090, -0099, -0341, -0342, -0467, -0625.) Dr. Engels also explained how Corp., Ground, and Express induce customers to infringe. (TT-2P, 80:21-82:24.)

### 3.    IV Established Infringement of the '356 and '715 patents.

IV presented evidence of infringement of claim 1 of the '356 patent and claims 1 and 4 of the '715 patent through Dr. Engels. For the '356 patent, Dr. Engels explained in detail how the

---

[3] TT-1P, 127:8-12, 130:18-133:22, 136:22-139:2, & 139:3-141:19 (using the handheld device to access an assessment program); *id.* at 141:20-142:4, 142:5-143:5, 143:6-144:11, 144:12-20, & 145:1-14 (collecting field data); *id.* at 147:8-148:20, 148:21:149:25, & 150:1-4 (using the handheld device to determine a geographical location of the device); and *id.*, 148:21-149:25, 150:5-151:5 (communicating the field data).

FedEx Freight 2020 systems infringed each limitation of claim 1. (TT-2P, 120:3-129:12.) For the '715 patent, Dr. Engels explained how GENCO infringed claims 1 and 4 of the '715 patent in their Milwaukee facility, and how FedEx Freight systems infringed those claims in their Jonesboro, AR, Northeast Memphis, TN, and Lowell, AR facilities. (*Id.*, 97:3-120:2.) For each of those claims, Dr. Engels presented abundant evidence from FedEx documentation, videos, and witness testimony demonstrating that FedEx infringed each limitation under the Court's claim construction. (*E.g.*, *Id.*, 97:3-98:11; PTX-0117, -0119.)

**B.    FedEx's Misplaced Trial Presentation**

In an effort to support its non-infringement arguments and establish its invalidity defense, FedEx cross-examined IV's witnesses and called nine witnesses, including FedEx's experts—Mr. David Williams, Mr. Sprague Ackley, and Dr. V. Thomas Rhyne.

**1.    FedEx's Experts Failed To Apply The Court's Claim Constructions.**

By their own admissions, FedEx's expert witnesses failed to apply the Court's claim constructions in their analyses. For example, Mr. Williams failed to apply the claim constructions when presenting his three non-infringement positions for the '581 patent. Although two of those positions relied on the "means for accessing" limitation of claim 18, Mr. Williams never compared the PowerPad or the Star IV to the Court's construed structure or function of that limitation during his analysis. (TT-3A, 97:4-105:3; 110:4-7.) In his analysis of the "means for enabling" limitation of claims 18 and 20 (*id.*, 115:12-118:17), Mr. Williams remarkably criticized IV's expert for ***properly*** applying the Court's construction for that limitation. (TT-3P, 33:13-21.)

Mr. Ackley's non-infringement and invalidity analysis of the '586 patent addressed limitations in claim 7 that contain construed terms, including extensive analysis of the term "data tags." Yet Mr. Ackley conceded he never once compared for the jury the accused products or prior art to any of the Court's claim constructions, including "data tags" (*id.*, 191:25-192:17):

Q. So we've spent, what, two hours listening to you testify and not once have you mentioned one of the Court's claim constructions, right?

A. That's correct.

Q. So throughout your entire non-infringement analysis, not one reference to the Court's claim construction, right?

A. Yes.

Q. And throughout -- your entire invalidity analysis, not one reference to the Court's claim construction, right?

A. That's correct.

Similarly, Dr. Rhyne admitted his 90-minute presentation never provided the jury with any comparison of the prior art to the asserted '356 and '715 patent claims as construed by the Court. (TT-4A, 115:18-117:8.) He routinely qualified his answers with statements such as "if you properly interpret [the Court's] construction," suggesting that IV's expert used the wrong construction and claiming that he used that same wrong construction.[4] (*E.g.*, *id.*, 118:1-2, 7-8, 18-19; 119:2, 18-19; 120:5; 120:6-10.) But Dr. Rhyne later conceded in cross-examination that Dr. Engels actually used the ***Court's*** claim construction. (*Id.*, 120:11-18.)

## 2. FedEx's Experts Failed To Explain Their Invalidity Analyses.

Rather than explaining what anticipation or obviousness is, the relevant framework for each, or even which theory was being applied, FedEx's experts vaguely referred to "invalidity" generally, showed demonstratives with discrete sections of prior art, and checked boxes next to claim elements. (*E.g.*, TT-3P, 4:19-5:13, 162:1-7, 168:10-13.)

For obviousness combinations, notwithstanding the failure of proof relating to the features of the alleged "FedEx Prior Art systems" or their allegedly respective dates (addressed below), none of FedEx's experts provided evidence or analysis as to why any of the alleged prior art

---

[4] IV moved to preclude Dr. Rhyne from presenting such prejudicial testimony, but the Court allowed the issue to proceed to trial. (4/11 Tr., 97:14-99:4.) What resulted was the situation IV sought to avoid: intentionally confusing, irrelevant testimony untied to what Dr. Engels presented.

references would be combined or that a skilled artisan would have had a reasonable expectation of success in doing so. (*E.g.*, TT-3A, 125:22-126:18; TT-3P, 4:19-5:13, 8:5-9:10.)

### 3.    FedEx's Experts Contradicted FedEx's Own Fact Witnesses.

FedEx's technical experts admittedly contradicted earlier live testimony of knowledgeable fact witnesses. First, Mr. Williams testified that FedEx does not infringe because "[t]here's another set of middle men" between the accused handheld devices and the remote programs. (TT-3A, 115:7-11; *see also id.*, 111:4-18, 113:9-24, 114:14-115:2.) But Mr. David Smith testified that those "middle men" are merely hoses and funnels for moving data. (*Id.*, 64:6-12, 80:2-8, 82:4-7, 82:10-15, 83:22-84:6.) Mr. Williams later admitted under cross-examination that StarBase "acts as a hose, a pipe, simple plumbing when it connects DWS to the PowerPad" and that from "DWS or from ROADS a list of instructions is provided right to the PowerPad or to the Star IV device" — precisely what is required by the '581 patent. (TT-3P, 21:7-16; 37:20-23; *see also, id.*, 21:25-22:2.)

Second, Mr. Ackley testified that when using interNetShip, an electronic document "is sent from the FedEx back end system to your browser . . . ." (TT-3P, 182:19-183:3; 216:15-19.) But Tracy Bailey had already testified that the interNetShip documentation shows that the label "is generated and displayed ***on the customer's computer***" and that no documentation "describe[s] sending an electronic label from anywhere to a computer screen." (TT-3A, 27:2-6, 47:20-48:3.) Mr. Ackley later conceded he would not disagree with Mr. Bailey. (TT-3P, 216:20-217:22.)

Third, Dr. Rhyne based his non-infringement opinions on private conversations with Ms. Melissa Wagner during which he allegedly learned FedEx was not using or testing the accused portions of the FedEx Freight 2020 systems. (TT-4A, 105:3-11, 107:10-17.) Yet despite testifying extensively on direct examination, Ms. Wagner never even once suggested that FedEx was not using or testing the accused portions of the Freight 2020 systems as Dr. Rhyne claimed. Dr. Rhyne could not explain his reliance on a private conversation with Ms. Wagner rather than Ms. Wagner's

live testimony in the courtroom. (*See id.*, 105:3-22, 106:5-107:21.)[5]

> **4.**     **FedEx Provided Egregiously Poor Evidence On '581 Patent Invalidity.**

FedEx's invalidity case for each asserted claim of the '581 patent was fundamentally based on the so-called "FedEx Prior Art Systems," which—despite FedEx's joint presentation of them—actually encompassed several devices and systems of varying capabilities and alleged availability dates.[6] FedEx's only evidence of those systems consisted of scattered, high-level testimony from a *single FedEx employee*, Mr. Bailey, who introduced three documents allegedly relevant to those systems: (i) the Stephenson patent (DTX-100), (ii) a "Confidential" *Draft* document regarding only the DADS Handheld device (DTX-101), and (iii) a Dispatch Work Station ("DWS") Overview *dated July 15, 2015* (DTX-406)—*15 years after* the filing date of the '581 patent. Mr. Bailey attempted to use just those three documents and his alleged, uncorroborated recollection from 20 years ago to suggest that FedEx was practicing the asserted '581 patent claims before September 2000 through the "FedEx Prior Art Systems." (TT-3A, 8:8-12:5, 13:16-17:3.)  But the documents and Mr. Bailey's haphazard and unsubstantiated testimony, provided primarily through leading questions, failed to account for several critical '581 patent claim elements, including, e.g., an "assessment program," "program," and "collected in response to," among others. And because Mr. Williams relied on Mr. Bailey and those same three documents, he also failed to account for all of the limitations of the asserted claims when he opined that the FedEx Prior Art Systems (including Stephenson) rendered obvious claim 1, that the FedEx Prior Art Systems and Gildea

---

[5] On redirect, FedEx suggested IV should have asked Ms. Wagner additional questions on cross-examination. (TT-4A, 131:5-7.) But that was FedEx's job—not IV's, and there was no way for IV to know that Dr. Rhyne would choose to rely on hearsay testimony FedEx did not put in the record.

[6] The amorphous, all-encompassing "FedEx Prior Art Systems" included the SuperTracker ("ST"), Enhanced SuperTracker ("EST"), DADS Terminal, DADS Handheld, COSMOS, and DADS all combined with U.S. Patent No. 6,094,642 ("Stephenson").

(U.S. Patent No. 5,589,835) rendered obvious claims 1 and 18, and that the FedEx Prior Art Systems, including with Stephenson, Gildea, and Khalessi (U.S. Patent No. 6,633,900) rendered obvious claim 20. (TT-3A, 121:5-136:14; TT-3P, 3:23-9:10.) Mr. Williams needed Gildea and Khalessi because the FedEx Prior Art Systems and Stephenson indisputably do not teach, suggest, or disclose GPS hardware and software and "updating field operation assignments" as required by claims 18 and 20. And, also incurably, Mr. Williams never explained why a person of ordinary skill in the art would have combined *any* of those references to arrive at the asserted claims. (TT-3A, 121:10-23, 122:11-17, 123:3-:124-16.)

> **5.      FedEx's Lack Of Relevant Evidence And Witnesses' Missteps Forced FedEx's Counsel To Resort To Improper Evidence And Arguments.**

**Improper And Prejudicial Questioning**: While cross-examining IV's expert witnesses, FedEx's counsel unreasonably published to the jury woefully inaccurate demonstratives that directly conflicted with the expert's testimony and prejudicially left the demonstratives published for undue time periods. (*E.g.*, TT-2P, 158:12-16 ("Q. So what we have when we look at the diagram that we just had up . . . , correct? A. *That's not correct*.").) IV objected during the examination and again during a break. (*Id.*, 158:21-161:3 ("Your Honor, FedEx is using demonstrative exhibits which don't comport with what the witness actually says. They're prejudicial because . . . he disagreed with Mr. Ivey's statement, and then it's still continuing to remain up despite the fact that the completely disagreed with what Mr. Ivey --"); 162:9-163:10 ("Mr. Ivey is repeatedly putting up on the screen demonstratives that, A, are his own testimony before the expert says anything. And second of all, don't even reflect what the expert says. . . . [T]o write up his own testimony when it's not even the witness's testimony is just completely unfair, Your Honor.").)

FedEx also improperly questioned its own witnesses presumably to ensure that its

witnesses would avoid testifying about the (relevant) bad facts. For example, FedEx repeatedly led its own witnesses despite sustained objections and warnings from the Court. (TT-2P, 226:18-21 ("You're going to have to ask non-leading questions on direct."); TT-3A, 43:5-6 ("[Counsel], you're going to need to ask a single question in a non-leading form."), 65:1-2 ("That was still a leading question, but there was no objection. Try to avoid leading."); TT-4A, 129:24-130:6.) Although there were prolonged periods of exclusively leading questions, IV refrained from objecting to every leading question to avoid disrupting the trial even further.

Presumably to ensure its experts would not deviate from scripts, FedEx asked vague questions about premade slides eliciting lengthy narratives. The Court warned (TT-3P, 141:8-16):

> Let -- let me interrupt just a minute. Let me interrupt just a minute. [Counsel] you're going to have to ask specific questions. It can't just be what does this slide say? What does this slide show? Because, otherwise, we just get a narrative lecture from the witness. You're going to have to examine the witness with specific questions.

Yet, two questions later, counsel asked: "And is there anything else regarding this table that you would like to tell the jury?" (*id.*, 141:24-25), and the Court reaffirmed (*id.*, 142:4-11):

> And see, that's what I'm talking about. It's not an invitation for him to give a lecture to the jury, what would you like to talk about? . . . . So please pose specific questions, and his answers need to be limited to those questions that are asked.

**Violations of Pretrial Orders**: As the Court recognized, at least three of FedEx's witnesses violated the Court's pretrial orders. First, the Court struck testimony from Mr. Smith that violated a pretrial order precluding FedEx from presenting evidence on "experimental use" of GPS. (Dkt. 505, 2; TT-3A, 55:12-56:21; 56:22-57:22.) Second, in lieu of discussing the Court's construction, Mr. Williams resorted to discussing the *reasoning* underlying the constructions, in clear violation of the *Markman* Order. (TT-3P, 24:23-26:6; Dkt. 165, 90-94.) In response to that violation, the Court dismissed the jury and admonished Mr. Williams (TT-3P, 27:4-29:25):

> In my view, you have violated that portion of my [claim construction] order by testifying that the Court's claim construction order requires the performance of a

certain algorithm. You are gone -- you have gone well beyond the actual construction adopted by the Court regarding the construed terms.

The Court's admonition and directive not to go beyond in the presence of the jury the actual construction adopted is not new. It came out with the claim construction order. It's in the document. It's right above my signature. And if you've read the claim construction orders, you just told me that you have, then you've already read and are charged with notice of the prohibition about talking before this jury about anything other than the construed term and the adopted construction.

If you violate that in any further fashion, I'm going to hold you in contempt of Court. Do you understand me?

Third and finally, the Court struck Mr. Ackley's testimony that violated orders that precluded him from testifying about CLS Java source code. (TT-3P, 152:10-155:21; *see* Dkts. 506, 519.)

**Testimony Inconsistent With Black Letter Patent Law**: FedEx's experts also offered arguments that were inconsistent with patent law principles. For example, although the asserted claims of the '581 and '586 patents use the open-ended word "comprising," Mr. Williams and Mr. Ackley wrongly opined that the claims were limited to only the recited elements. (TT-3A, 115:7-11; TT-3P, 19:11-18 (testifying that FedEx's handheld devices cannot access an assessment program if the access is not direct); (*id.*, 149:2-8, 201:8-12 (testifying that the claim does not allow printing because the claim does not say "to print").) Mr. Ackley also incorrectly testified that in his opinion the "data tag" and the "data item" in claim 7 "can't be the same thing" in determining whether the FedEx 1D barcode meets the claim elements. (TT-3P, 134:19-135:1.)

**Misleading Focus on Issue Dates**: Starting with FedEx's opening demonstrative 16 (Ex. 10), FedEx misdirected the jury's attention on the dates the patents-in-suit *issued* (2013, 2015, 2005, 2007) rather than their priority dates, and compared those issue dates to the date in 1971 that FedEx Corp. was founded. (TT-1P, 57:2-3.) And FedEx reiterated in closing (TT-5A, 63:16-25):

So we also get to the point of talking about the four patents in this case. The issuance date for these is July 2013, for the '581 patent, we don't use that technology. June 2, 2015, for the '586 patent, we don't use that technology. For the '356 patent, June 21, 2005, we don't use that technology. And for the '715 patent, April 3, 2007,

> FedEx does not use that technology. []  None of these patents are infringed, and
> they are invalid with regard to everything that's been claimed in this courtroom.

Those arguments distracted the jury from the priority dates that are relevant to validity, which are

the ***much-earlier*** dates stipulated to in the Joint Pretrial Order (Dkt. 469, 12).

    **Reliance on Out-of-Record Evidence:** After FedEx's experts admitted they did not apply

the Court's constructions, FedEx's counsel addressed that failure in closing (TT-5A, 73:18-24):

> Now, you also had Dr. Rhyne, who did as was true with each of our witnesses, rely
> upon the Court's claim construction. They didn't spend a lot of time talking about
> them in front of you, but they did with regard to each of their expert opinions and
> each of their expert reports, and with regard to the testimony rely upon the claim
> construction.

But FedEx's experts' reports were not admitted as record evidence.

## III.   LEGAL STANDARDS

    **Judgment As A Matter of Law (Fed. R. Civ. P. 50)**:  JMOL is appropriate when "a

reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that

issue." Fed. R. Civ. P. 50 ; *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 193 (5th Cir. 2006). "The

jury's verdict must be supported by 'substantial evidence' in support of each element of the

claims." *Hitachi Consumer Elecs. Co. v. Top Victory Elecs. Taiwan Co.*, No. 2:10-cv-00260, 2013

WL 5273326, at *1 (E.D. Tex. Sep. 18, 2013).

    **New Trial (Fed. R. Civ. P. 59)**:  "The court may, on motion, grant a new trial on all or

some of the issues[.]"  Fed. R. Civ. P. 59(a)(1). "Rule 59 of the Federal Rules of Civil Procedure

confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness

of the trial and the reliability of the jury's verdict." *Transworld Drilling*, 773 F.2d at 612-13. The

trial court's power to grant a new trial has "long been regarded as an integral part of trial by jury."

*Id.* at 613. "[I]f the trial judge is not satisfied with the verdict of a jury, he has the right—and

indeed the duty—to set the verdict aside and order a new trial." *Id.*

Examples of grounds for granting a Rule 59 motion include "if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Id.* In deciding to grant a new trial, the Court "need not take the view of the evidence most favorable to the verdict winner, but may weigh the evidence." *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982) ("This standard, of course, is lower than that for a directed verdict or a judgment notwithstanding the verdict. A verdict can be against the 'great weight of the evidence', and thus justify a new trial, even if there is substantial evidence to support it."). "A trial judge may order a new trial if he suspects that the jury verdict reflects confusion." *Nissho–Iwai Co., v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1538 (5th Cir. 1984).

## IV.   THE OVERWHELMING WEIGHT OF THE EVIDENCE AND FEDEX'S PREJUDICIAL PRESENTATION WARRANTS JMOL AND A NEW TRIAL

While the overwhelming weight of the evidence and FedEx's prejudicially defective trial presentation demonstrates that IV should be granted a new trial on all issues, on three issues— infringement and validity of the '581 patent and validity of the '356 patent—the evidence is so grossly in IV's favor that JMOL is appropriate. *See Hitachi*, 2013 WL 5273326, at *1.

### A.   The Court Should Enter JMOL In IV's Favor On Patent Infringement and Validity For The '581 Patent And On Validity For The '356 Patent.

#### 1.   JMOL For IV Is Warranted for '581 Infringement and Validity.

IV presented abundant evidence that the PowerPad and Star IV handheld devices made and operated by and for Corp., Express, and Ground meet every limitation of apparatus claims 18 and 20 of the '581 patent. In response, FedEx presented three non-infringement arguments, all of which were inconsistent with the plain claim language, the Court's claim constructions, and the actual evidence. Because IV established a clear, methodical infringement case, and FedEx presented no evidence of non-infringement, JMOL in IV's favor is appropriate.

a)      ***IV presented abundant, unrebutted evidence that FedEx infringes the '581 patent.***

Dr. Sharony's infringement analysis for apparatus claims 18 and 20 of the '581 patent provided overwhelming (and uncontroverted) evidence that Corp., Express, and Ground infringe, and that evidence warrants JMOL in IV's favor, or at the very least, a new trial.[7] After explaining again to the jury what a "means plus function" limitation is (TT-1P, 151:17-23), for each of the five means limitations of claim 18 and for the additional means limitation of claim 20, Dr. Sharony meticulously (and properly) (i) identified the Court's claim construction—both the function and the corresponding structure—and then, (ii) explained how the evidence shows that each device (the Star IV for Ground and the PowerPad for Express) met that function and that structure as construed. *E.g.*, *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (describing a proper infringement analysis). For each limitation, Dr. Sharony directed the jury to the specific evidence he relied on—either documents or FedEx fact witness deposition testimony—in forming his opinion that the element was met. (TT-1P, 151:6-173:18.)

First, regarding the "means for establishing" limitation, Dr. Sharony identified the Court's claim construction (*id.*, 152:5-13) and explained how FedEx Ground's device (the Star IV) and FedEx Express's device (the PowerPad) met the ***function*** of that limitation as construed. (*Id.*, 152:14-153:12 (Ground); 153:13-154:11 (Express).) For the Star IV, Dr. Sharony based his analysis, at least in part, on FedEx's document PTX-0213, and for the PowerPad, PTX-0166. (TT-1P, 152:18-154:11.) In his analysis, he explained how he knew that the device was "located at a field geographically distant from the server." Afterwards, Dr. Sharony explained how he knew that the Star IV and PowerPad met the ***structure*** required by the Court's claim construction, basing

---

[7] For the purposes of its JMOL motion, IV moves only on claims 18 and 20.

that opinion on, e.g., PTX-0220. (*Id.*, 154:8-155:4.) Dr. Sharony finally concluded that both the Star IV and the PowerPad met that first limitation.  (*Id.*, 155:5-9.)

Second, regarding the "means for accessing a program" limitation, Dr. Sharony, again, identified the Court's claim construction (*id.*, 155:15-20), and explained how both the Star IV and the PowerPad met the ***function*** of that limitation as construed by the Court. (*Id.*, 155:21-156:23 (Ground), 156:24-157:25 (Express).) In particular, Dr. Sharony explained how the devices "accessed" a "program" stored at the server—which is more than accessing a database—using his expertise as well as FedEx documents (*e.g.*, PTX-0213 and PTX-0499). (*Id.*) For the claimed structure, Dr. Sharony referenced FedEx documents (*e.g.*, PTX-0220) and explained how each of the Star IV and PowerPad had that structure performing the claimed function. (TT-1P, 158:1-159:9.) Dr. Sharony concluded that both devices met that second limitation. (*Id.*, 159:10-15.)

Third, regarding the "means for managing data" limitation, Dr. Sharony identified the Court's construction (*id.*, 159:16-160:3), and then explained how in his opinion, each of the Star IV and PowerPad devices performed that function (*id.*, 160:4-12), using the claimed structure. (*Id.*, 160:13-164:10). For this particular limitation, the Court's construction required that the claimed structure (the software) perform one or more of the algorithms as represented in Figures 7-13 and the accompanying references in the specification. (Dkt. 165, 87-90.) In his analysis for the jury, Dr. Sharony focused on the algorithm in Figure 9 (TT-1P, 160:21-25); and, relying on FedEx documents (e.g., PTX-0161, PTX-0162, PTX-0166, PTX-0213, PTX-0220), he carefully walked the jurors through each step of that algorithm for the software he identified, namely, the "PowerPad" software for the PowerPad and "P&D" software for the Star IV. (TT-1P, 161:1-164:10.) Dr. Sharony then concluded that both devices met that third limitation. (*Id.*, 164:15-18.)

Fourth, regarding the "means for determining a geographic location" limitation, Dr.

14

Sharony identified the Court's claim construction (TT-1P, 164:23-165:2), and then explained how in his opinion, each of the Star IV and PowerPad devices performed that function, using the claimed structure (*id.* at 165:3-24). Dr. Sharony explained that he relied on FedEx documents including PTX-0220 in reaching that conclusion. Finally, Dr. Sharony concluded that both of those devices met the fourth limitation. (*Id.*, 165:25-166:3.)

Fifth, regarding the "means for enabling communicating" limitation—the final limitation of claim 18, Dr. Sharony identified the Court's claim construction (TT-1P, 166:10-21), and then explained how in his opinion, (and relying on earlier-discussed evidence) each of the Star IV and PowerPad devices performed that function (*id.*, 166:22-167:4), using the claimed structure (*id.*, 167:5-170:4). For this limitation, the Court's construction required that the handheld devices be configured to implement the algorithm represented in Figure 13 and accompanying references in the specification. (Dkt. 165, 90-94.) In his analysis for the jury and relying on FedEx witness testimony and FedEx documentation, Dr. Sharony carefully explained how the algorithm in Step 1304 of Figure 13 performed the construed function (TT-1P, 167:17-168:21):

> Q. What algorithm in Figure 13 performs this function as construed by the Court?
> A. So the last Step 1304 basically reads data provided to remote server. The previous steps I discussed earlier in the previous claim elements and the 1304 says – collected data in GPS coordinate associated with a collection of data to generally be the two most important articles of a given scenario. And they are basically sent back to the remote server.
> Q. And what portion of the specification are you referring to here on this slide?
> A. Figure 13.
> Q. And which portion of the specification -- which column and line number?
> A. This is Column 12, Row 38 to 47, Figure 13.
> Q. And is there any evidence that FedEx Ground performs Step 1304?
> A. Again, collected the stop data, collected signature, provide it to the back end. Mr. Stanley, employee of FedEx, was asked a question: So the stop data -- the stop, as well as the GPS data, now communicated to the back end server? Answer: Yes.
> Q. And what evidence did you rely on for FedEx Express performing Step 1304?
> A. FedEx Express moving -- referring to Exhibit PTX-201, which is the PowerPad functional spec, described in the project summary, collecting scan data, pickup,

pickup exception, the proof of delivery, delivery exception and the like, together
with the GPS location recorded, stored, and transmitted.

Dr. Sharony concluded that both devices met the fifth and final limitation. (*Id.*, 170:5-7.) In

conclusion, Dr. Sharony explained that because all limitations of claim 18 were met, that the Star

IV and PowerPad devices infringed claim 18. (*Id.*, 170:8-11.)

With regard to the additional limitation of claim 20 (which depends from claim 18), namely

the "means for enabling updating field operation assignments" limitation, Dr. Sharony identified

the Court's claim construction (TT-1P, 170:17-171:2), and explained in detail how the Star IV and

PowerPad devices performed the claimed function (*id.*, 171:3-13) using the structure, as construed

by the Court (*id.*, 171:14-173:2). For this limitation, the Court's construction required that the

device perform the algorithm of Figure 9, like the third limitation of claim 18. (Dkt. 165, 97-100.)

Dr. Sharony explained to the jury that he already presented that evidence based on FedEx

documentation such as PTX-0220, along with PTX-0161, -0162, -0166, and -0213. (TT-1P,

171:14-173:2.) Thus, Dr. Sharony concluded that the additional limitation of claim 20 was satisfied

by both the Star IV and PowerPad devices, and that claim 20 was infringed. (*Id.*, 173:3-8.)

After Dr. Sharony's thorough and legally proper infringement presentation, FedEx's cross-

examination did nothing to discredit Dr. Sharony or disprove any of his opinions. (*Id.*, 178:13-

194:23; TT-2A, 5:12-23:3.) Because FedEx had no actual evidence of non-infringement, FedEx's

counsel was forced to focus on irrelevant (and therefore, confusing and prejudicial) lines of

questioning to try to conflate the infringement issues that the jury was tasked with deciding. For

example, on cross-examination, FedEx questioned Dr. Sharony on the algorithm provided in

Figure 13 and implied that Dr. Sharony failed to perform a proper and complete analysis of the

Figure 13 algorithm required for the fifth limitation of claim 18. (*Id.*, 17:10-20:25.) FedEx's

counsel asked misleading questions such as "[D]id you show the entirety of Figure 13 yesterday?"

(*Id.*, 20:23-25.) But, as Dr. Sharony explained in redirect (*Id.*, 23:13-27:10) and as FedEx's own expert Mr. Williams ***admitted*** – that line of questioning was ***irrelevant*** to the Court's construction because Dr. Sharony properly focused his testimony on the parts of Figure 13 that were pertinent to the Court's construction of the limitation. (TT-3P, 33:13-21 (Mr. Williams agreeing that he was faulting Dr. Sharony for properly applying the Court's construction).) The remainder of Dr. Sharony's cross-examination likewise focused on points irrelevant to FedEx's infringement of claims 18 and 20. At best, FedEx was able to find a typographical error in one of the dozens of slides Dr. Sharony presented, but did nothing to discredit Dr. Sharony's opinions.

Similarly, none of the testimony Mr. Smith or Mr. Williams provided in rebuttal overcame Dr. Sharony's infringement showing. Because he had no legitimate non-infringement positions, Mr. Williams focused on irrelevant facts that were untied to the asserted claims as construed by the Court and even tried to manufacture a new non-infringement position that did not appear in his expert report. Mr. Williams presented three purported non-infringement positions: (1) that FedEx did not perform Step 1303 in connection with the fifth limitation of clam 18 (TT-3A, 115:12-118:17); (2) that the GPS data goes back to a different "computing device" (*e.g.*, TT-3P, 96:21-97:3); and (3) that the handheld devices do not "directly access" the assessment programs (TT-3A, 114:4-115:2). But all three arguments contradicted the evidence or had no bearing on whether FedEx infringes claims 18 and 20. First, as mentioned above, Mr. Williams admitted that Step 1303 had ***nothing*** to do with the construed function for the fifth limitation of claim 18, and his argument on that point was actually faulting Dr. Sharony for ***properly*** applying the Court's construction. (TT-3P, 32:23-25, 33:13-21.) Thus, his first non-infringement position could not refute Dr. Sharony's analysis of claim 18.

Second, contrary to Mr. Williams' newly manufactured suggestion, ***claim 18 does not***

*require that the GPS data be sent back to the same computing device*.[8] (PTX-0003, cl. 18.)

Instead, claim 18 requires that the location data be sent to "other devices or the server." (*Id.*) At

trial, Mr. Williams never stated that the "other devices" referred to in claim 18 could not include

other servers, and nor could he, given that he never provided that opinion in his expert report. To

that end, the Court sustained objections from IV based on that new non-infringement position with

respect to claim 18.  (*E.g.*, TT-3A, 109:14-110:9.) In fact, Mr. Williams agreed that FedEx, at the

very least, sends GPS data and collected field data to other devices in accordance with claim 18.

(*See* TT-3A, 99:12-18 (agreeing that for Express, GPS data goes to a server other than DWS and

ROADS), 103:22-104:5 (testifying that for Ground, GPS data goes to DIRE and GPS stamp

transform).) Given that claim 18 does not require location data to be sent back to the same

computing device, any testimony from Mr. Williams that suggested that such a requirement existed

is wrong and irrelevant for determining infringement of claims 18 and 20.

Mr. Williams' third and final non-infringement argument—that the handheld devices did

not directly access the "assessment program"—was both irrelevant to the issue of infringement

and factually wrong.  As an initial matter, neither claim 18 nor claim 20 required that there be no

intermediate program or layer between the assessment program and the device. (PTX-0003.)

Moreover, those claims use "comprising" language, which necessarily means that additional

features of the system can be present without negating infringement. But more critically, the idea

that the PowerPad and Star IV devices did not "access" the assessment programs was belied by

the fact and expert testimony provided at trial. Indeed, before Mr. Williams even testified, FedEx's

---

[8] FedEx's evidence for claim 1 contradicts the '581 patent itself, which recognizes that the claimed "computing device" can consist of multiple servers that are part of the same enterprise. (*E.g.*, TT-3A, 97:7-104:16; PTX-003, Abstract, 3:61-67, 6:24-26; TT-2A, 28:4-23.) FedEx offered no evidence to the contrary other than Mr. Williams' bare conclusion. Indeed, FedEx's own witnesses acknowledged that multiple physical computers can form a single system. (*E.g.*, TT-3A, 77:9-11.)

fact witness Mr. David Smith[9] testified that updates on the road were provided directly from the assessment program to the PowerPad devices. (TT-3A, 83:11-84:6.)  Mr. Smith also agreed that any intermediary systems, such as StarBase or JMSQ, acted merely as "pipes" or "hoses." (*Id.*, 79:19-80:10, 82:11-15.) Mr. Williams ultimately agreed that alleged intermediary systems acted as conduits for data. (TT-3P, 21:7-16, 21:25-22:2.) And he agreed that the manifests from DWS and ROADS were "provided right to the PowerPad or Star IV devices." (TT-3P, 37:20.) Thus, Mr. Williams' third non-infringement argument could not have served to discredit or refute Dr. Sharony's testimony, and was, in fact, simply wrong.

In sum, FedEx's non-infringement positions for claims 18 and 20 of the '581 patent were not "supported by 'substantial evidence' in support of each element of the claims." *Hitachi*, 2013 WL 5273326, at *1. In fact, that part of the verdict was wholly unsupported. Because the relevant infringement evidence points entirely in IV's favor, no reasonable juror could return a contrary verdict, and JMOL on infringement of claims 18 and 20 is warranted.

b)      ***FedEx failed to produce evidence sufficient to meet its clear and convincing burden on invalidity for the '581 patent.***

FedEx's invalidity case for the '581 patent was fraught with remarkable errors including:

- a failure to adequately identify the features of the alleged, disparate "FedEx Prior Art Systems" forming the bases for all invalidity theories and compare them to all limitations of the asserted claims; and

- a failure to apply the *Graham* factors and explain why a person of ordinary skill would combine several references together to arrive at the asserted claims (or would have a reasonable degree of success in doing so).

Each of those abject failures is independently fatal to sustaining a jury verdict in FedEx's favor on

---

[9] Mr. Smith testified as to the Express systems; FedEx did not provide fact testimony on behalf of Ground or Corp. For Ground, Mr. Williams did not rebut Dr. Sharony's testimony that P&D Login web service was accessed by the Star IV. (*Compare* TT-1P, 131:16-22 *with* TT-3A, 114:14-17.)

invalidity of the '581 patent claims 1, 18, and 20. JMOL in IV's favor is warranted.

FedEx's first fatal error was that neither Mr. Williams nor Mr. Bailey adequately identified the purportedly invalidating features of the alleged "FedEx Prior Art Systems," which were—notably—a collection of unrelated devices and systems **and not a single system**, creating several issues for FedEx. Even assuming they could be treated as one—which they cannot—FedEx lacked evidence that any of those alleged systems disclosed or rendered obvious all limitations of claims 1, 18, and 20. For example, Mr. Williams never identified the "assessment program" required by claim 1. Instead, he concluded—without **any** explanation or evidence—that COSMOS and DADS were the alleged "remote computing devices storing an assessment program" (TT-3A, 123:9-14, 132:12-18):

> Q.  And can you give an example of one of those remote computing devices?
> A.  The COSMOS system and DADS system.
> Q.  And did that computing device store an assessment program?
> A.  Yes, it did. ….
> Q. And, again, sir, can you just explain with reference to Figure 1 how that function would be accomplished?
> A.  The – as shown here, the example is the DADS handheld or the SuperTracker, Enhanced SuperTracker in combination with the DADS terminal, either one of them would communicate and **access a program** stored in the – in COSMOS, and utilize – **utilize that program** to then collect field data afterwards.

Not only did Mr. Williams fail to identify an "assessment program" allegedly accessed by a handheld device (which the Court construed as being "more than accessing a database to store data"), but also, critically, Mr. Williams never identified documents evidencing that the required "assessment program" was present in the FedEx Prior Art Systems. And neither Mr. Bailey's simplistic testimony (TT-2P, 212; TT3A-7-17) nor FedEx's documents (DTX-100, -101) filled that gap. Indeed, Mr. Bailey never once used the word "program" and never described the functionality of any alleged handheld device as accessing an "assessment program."  Thus, the only evidence FedEx presented regarding the "assessment program" was Mr. Williams'

conclusory statement that computing devices, identified as COSMOS and DADS, stored some assessment program, without identifying any such program or explaining what alleged functionality made it more than a database. (*Id.*, 122:25-124:16; Dkt. 165, 76.)

As a second example relevant to claim 1, Mr. Williams never identified what field data was allegedly "collected in response to" the unspecified assessment program, which of the several "FedEx Prior Art Systems" performed that step, or which documents corroborated that they did. (TT-3A, 123:22-124:16.) Again, neither FedEx's documents nor Mr. Bailey's testimony filled that gap, and Mr. Williams never even attempted to address that limitation in claim 1. (*Id.*)

Similarly, as an example relevant to claims 18 and 20, which require the handhelds to access a "program," Mr. Williams limited his testimony to generically identifying that the handhelds ***could*** allegedly access and utilize some program, without identifying a single program that was accessed by these systems or explaining how accessing those programs is "more than accessing a database storing data." (*Id.*, 131:23-134:5; Dkt. 165, 86.) Mr. Williams' brief, vague reference to "online help screens and tutorials" for meeting claim 18's "program" element is also insufficient to provide clear and convincing evidence that the limitation was met. That fleeting mention failed to identify any evidence that these "online help screens and tutorials" were "programs," that accessing them met the Court's construction in the context of the whole claim, or that the online help screens and tutorials resided on a geographically distant server or network of servers. Again, Mr. Williams did not provide any documentary evidence or testimony from Mr. Bailey showing that those alleged handheld devices accessed the claimed "program."

As another example, Mr. Williams admitted he did not provide evidence that there was an instruction or task list sent to the handheld device, as claims 1 and 18 require (TT-3P, 38:7-21):

> Q.  The SuperTracker and the Enhanced SuperTracker, those didn't get manifests like the current product does, right?

A.  Correct.

Q.  Same thing with the DADS handheld.  Mr. Bailey didn't tell us about manifests coming to the DADS handheld, right?

A.  I don't believe so.

Q.  You're agreeing with me, correct?

A.  Yes.

Q.  *So in order to invalidate the Claim 1 or Claim 18, you would have to show that there were some kind of instruction or task list going to the handheld device and something being done in response to that, right, sir?*

A.  *Correct.*

Q.  Okay.  And Mr. Bailey didn't provide any of that, right?

A.  I – I believe so – correct.

(*See also id.*, 37:3-23.) Thus, after acknowledging that claim 18's "means for managing" element requires "something being done in response to" "some kind of instruction or task list going to the handheld device," Mr. Williams openly admitted that FedEx's only witness on the FedEx Prior Art Systems did not provide testimony or a single document that establishes that claim element. (*Id.*; PTX-0003, cl. 18 ("means for managing data collected at the field using the at least one handheld device *responsive to program*.").) And Mr. Bailey's trial testimony confirms that Mr. Williams' concession on cross-examination was correct: dispatch information was *not* communicated to FedEx's prior art scanning devices. (TT-3A, 16:1-9 (testifying that DTX-406 describes a dispatch process where the *in-vehicle* DADS terminal held the dispatch information), 29:12-16 ("In a circumstance where there was no DADS terminal . . . [the devices] wouldn't know where the courier was supposed to go.").)

Given that neither Mr. Bailey nor Mr. Williams provided evidence that at least two limitations of each of claims 1, 18, and 20 were met by the FedEx Prior Art Systems—which Mr. Williams relied on to invalidate those limitations—JMOL is warranted in IV's favor on validity.

Moreover, FedEx impermissibly relied on Mr. Bailey's oral testimony—without corroboration—to try to remedy deficiencies in the documents, including, for example the lack of

description of the functionality relevant to the "program", "assessment program," and "in response to" limitations addressed above. (*E.g.*, TT-2P, 211:13-218:5, 220:10-226:21; TT-3A, 6:18-17:3.) But Mr. Bailey's oral testimony alone is insufficient as a matter of law to fill in the gaps, particularly given that he is an interested witness testifying about facts that happened over two decades ago and brought no documentary evidence to corroborate his gap-filling attempts. *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737-38 (Fed. Cir. 2002) ("[O]ral testimony of prior public use must be corroborated in order to invalidate a patent."); *see also Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1369 (Fed. Cir. 1998) ("[U]ncorroborated oral testimony, particularly of interested persons recalling long-past events, does not, of itself, provide the clear and convincing evidence required to invalidate a patent…."); *The Barbed Wire Patent Case*, 143 U.S. 275, 284 (1892) ("In view of the unsatisfactory character of testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt.").

Moreover, the documents Mr. Bailey (and, therefore, Mr. Williams) relied on were insufficient to corroborate Mr. Bailey's oral testimony. For example, the DWS document DTX-406—which Mr. Bailey used as a starting point to try to fill the gaps of how the Supertracker and DADS devices allegedly communicated with COSMOS (TT-3A, 13:16-17:3, 34:2-8)—was dated *July 2015*. That very recent document is not even close to being the type of contemporaneous document necessary to corroborate oral testimony. *E.g.*, *Sandt Tech. Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001); *Woodland Trust*, 148 F.3d at 1373 ("It is rare indeed that some physical record (e.g., a written document . . . or some other contemporaneous

record) does not exist."). And, while Mr. Bailey testified at length about the DADS Handheld, Mr. Bailey presented no evidence that the DADS Handheld was ever used, publicly or otherwise. The only document that Mr. Bailey relied on to evidence its functionality was a "draft" document marked "CONFIDENTIAL" on almost every page. (DTX-101; TT-3A, 10:20-11:23.) Under cross-examination, Mr. Bailey conceded that he did not show the jury a "single document that references the *use* of the hand – DADS handheld." (*Id.* at 32:21-24; 33:13-16.) And Mr. Williams had no other evidence. That is insufficient to sustain FedEx's "clear and convincing" burden.

Finally, FedEx never presented evidence analyzing the *Graham* factors or any evidence about why a skilled artisan would have combined FedEx's prior art references to arrive at the asserted claims or would have had a reasonable expectation of success in doing so. Indeed, in the final jury instructions, the jury was instructed that the law requires obviousness determinations to be based on *Graham* factors, including scope and content of the prior art, and the differences between the claimed invention and the prior art. (TT-5A, 34:22-35:19). *See Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). But Mr. Williams never explained the *Graham* factors, why they are important to obviousness, or how he applied them. First, for claims 1, 18, and 20, which all are based on the FedEx Prior Art Systems, those systems were not a single system or device. But Mr. Williams never offered evidence or testimony that a person of ordinary skill would have been motivated to combine all of those systems to work together or would have reasonably expected success in doing so. (TT-3A, 121:10-23, 122:11-17, 123:3-124-16.) That alone is dispositive.

For claim 18, Mr. Williams opined that the FedEx Prior Art Systems would have been combined with Gildea, but never offered any reason whatsoever as to why a skilled artisan would have combined ***Gildea*** with the amorphous "FedEx Prior Art Systems." (Section II.B.4, *supra*.) Instead, Mr. Williams offered a single statement that a skilled artisan would have combined

generic "GPS prior art" with the FedEx Prior Art Systems. That is insufficient to sustain an obviousness verdict for the Gildea combination. Moreover, Mr. Williams even admitted that Gildea has "nothing to do with FedEx" and is "just some GPS prior art" (TT-3P, 36:5-13.) Mr. Williams similarly never explained Gildea's teachings, Gildea's scope and content, or why a person of ordinary skill would have looked to Gildea to arrive at the claims of the '581 patent.

Mr. Williams' obviousness analysis for claim 20 was similarly deficient. Despite expressly admitting that, in order to find claim 20 invalid, a person of ordinary skill in the art would need to combine (i) FedEx Prior Art, (ii) Stephenson, (iii) Gildea, *and* (iv) *Khalessi*, Mr. Williams' analysis was so incredibly devoid of evidence that it cannot possibly support an obviousness verdict that invalidates claim 20 by clear and convincing evidence. (*E.g.*, TT-3P, 36:14-25 ("[Q:] … you need all four of those to be put together in order to say that Claim 20 of the '581 patent is invalid, right?" A. Correct.").) Aside from not even attempting to explain why a person of ordinary skill would have combined *all four of those references*, at best, Mr. Williams merely testified that the Khalessi patent had a title and had a "Figure 5," which he put on a slide. (TT-3P, 7:15-9:10.) Mr. Williams never provided any context for Figure 5, never bothered to explain anything on what Khalessi was, and why or how it would be combined with the other three alleged references, or even what Figure 5 was in the context of the Khalessi patent. Nor did Mr. Williams provide any expert testimony that discussed what the steps of Khalessi's Figure 5 are or how they would be combined with the FedEx prior art systems to arrive at claim 20's required function and structure. Such conclusory and unsupported testimony is insufficient to sustain a verdict. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327-28 (Fed. Cir. 2012).

For at least these reasons, individually, or taken together, this Court should enter JMOL on validity of the '581 patent and (in light of Section IV.A.1.a) grant IV a trial on damages for the

25

'581 patent. In the alternative, Mr. Williams' barebones presentation, ignoring the Court's claim constructions, the legal rubric relevant to a proper invalidity analysis, and lack of documentary evidence, warrants a new trial on this invalidity issue. *See* Section IV.B.1, *infra*.

### 2.      JMOL For IV Is Warranted for '356 Validity.

The jury was not provided a legally sufficient evidentiary basis to find invalidity of the '356 patent by clear and convincing evidence. *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1573 (Fed. Cir. 1984). Not only did Dr. Rhyne fail to present ***any*** evidence that a skilled artisan would have been motivated to combine Bowers (U.S. Patent No. 5,963,134) and Muhme (U.S. Patent No. 5,886,634)—the only prior art he presented—or would have had reasonable success in doing so, Dr. Rhyne candidly admitted that the combination did not even disclose all of the limitations of claim 1. Those exceptional failures warrant judgment in IV's favor.

Dr. Rhyne's minimalist approach to his obviousness analysis alone warrants entry of judgment of no invalidity. Dr. Rhyne's entire obviousness theory (which was notably and confusingly ***not*** preceded by any discussion of (i) the legal standard for obviousness, (ii) how he conducted his obviousness analysis, or (iii) the Court's claim constructions relevant to claim 1 (TT-4A, 77:16 - 88:14)), was that because both Bowers and Muhme "deal with inventory and trying to provide ways of tracking the movement of inventory within a secure facility," it would be obvious to combine them. (*Id.*, 79:4-9.) But that paltry conclusion devoid of supporting facts or evidence is insufficient as a matter of law to support an obviousness verdict. *See, e.g.*, *ActiveVideo*, 694 F.3d at 1327 ("To invalidate a patent claim based on obviousness, a challenger must demonstrate 'by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, ***and*** that the skilled artisan would have had a reasonable expectation of success in doing so.'") (quoting *Procter & Gamble v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009)).  Dr. Rhyne simply

never explained how or why Bowers and Muhme would have been or could have been combined and that failure alone justifies JMOL.

Similarly egregiously, despite initially stating that "when you put [Bowers and Muhme] together, you end up with everything that's in the claim that's asserted of the '356 patent," Dr. Rhyne admitted on cross-examination that *neither* Bowers nor Muhme disclosed the final element. Specifically, Dr. Rhyne admitted that "*wherein at least one of the objects is automatically returned or picked up as a result of such notification*" was missing (TT-4A, 125:23-126:10):

> Q. Right. So -- now, let's go back to that claim element at the bottom of the automatically that I was talking about. You see that I've highlighted it?
> A. Yes.
> Q. That claim -- *that part of the claim, you believe, sir, that that's not disclosed under the Court's claim construction even when you combine Bowers and Muhme, correct*?
> A. I think that -- *yes, I have that opinion*.
> Q. So, again, *even if you put together Bowers and Muhme, you still don't get the '356 patent, Claim 1, correct*?
> A. *I believe that's correct*, at least -- well, I won't add anything else.

That omission is fatal to the jury's obviousness finding, and JMOL should be entered.  *E.g.*, *Par Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1194 (Fed. Cir. 2014) (challenger has the "burden to prove that *all* claimed limitations are disclosed in the prior art").

In sum, given that Dr. Rhyne never presented legally sufficient evidence on motivation to combine, squarely admitted that neither Bowers nor Muhme disclosed at least one limitation of claim 1, *and never opined* that the combination of Bowers and Muhme would somehow render obvious that missing limitation as construed by the Court, a jury could not rightfully conclude that FedEx met its burden of *clear and convincing* evidence of invalidity. Accordingly, IV's motion for JMOL is appropriate.  In the alternative, at the very least, Dr. Rhyne's confusing presentation, divorced from the Court's constructions and the legal rubric relevant to a proper invalidity analysis, warrants a new trial on this invalidity issue. *See* Section IV.B.1, *infra*.

**B.     The Court Should Grant IV A New Trial On All Issues.**

In addition to the three issues addressed above, which exemplify exceptional instances in which the evidence overwhelmingly supported IV and no substantial evidence existed to sustain a verdict in FedEx's favor, FedEx's prejudicial trial presentation coupled with its lack of critical evidence merits a new trial on all remaining issues.

> **1.     Having Failed To Provide Evidence Sufficient To Sustain Its Burden On Validity Or Rebut IV's Evidence Of Infringement, FedEx Had To Make An Irrelevant, Improper, and Prejudicial Trial Presentation.**

On the whole, FedEx failed to provide the jury with relevant evidence necessary to sustain a verdict in its favor on either validity or infringement. That failure forced FedEx to provide instead a confusing and prejudicial presentation warranting a new trial on all issues, including willfulness.

For invalidity, FedEx bore a "clear and convincing" burden. *Atlas Powder*, 750 F.2d at 1573. To meet that burden, FedEx's experts had to explain their invalidity analyses.[10] Yet, the experts did not even identify requirements for anticipation or obviousness, nor show how alleged prior art disclosures met those requirements to anticipate or render obvious any asserted claims. Rather, they generically discussed "invalidity" without specifying an actual analysis (*e.g.*, TT-3P, 162:3-7). Their testimony became merely an exercise in finding disparate prior art teachings and placing check marks next to claim elements. Such conclusory testimony cannot support FedEx's heavy burden. *ActiveVideo*, 694 F.3d at 1327-28 (affirming JMOL where "the expert's testimony on obviousness was essentially a conclusory statement that a [POSITA] would have known").

FedEx's experts also ignored the Court's constructions, each admitting to testifying about

---

[10] Anticipation, requires a witness to "explain in detail how each claim element is disclosed in the prior art reference." *Schumer v. Lab. Computer Sys.*, 308 F.3d 1304, 1315-16 (Fed. Cir. 2002). Similarly, the "complicated subject" of obviousness requires a "sophisticated analysis." *Dystar Textilfarben GmbH v. C.H. Patrick Co.*, 464 F.3d 1356, 1367 (Fed. Cir. 2006).

infringement (Williams), invalidity (Rhyne), or both (Ackley) without comparing the products or art to properly construed claims. (*See, e.g.*, TT-3P, 33:13-21; *id.*, 191:25-192:9; TT-4A, 115:18-117:8.) Thus, FedEx's experts failed to consider the first of the two steps for infringement and validity, and left the jury without the relevant evidence to determine whether all claim limitations were present. *See Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 714 (Fed. Cir. 1998).

Finally, each of FedEx's technical experts testified without regard for the facts that had already been proven earlier in the case. For example, Mr. Williams testified differently from Mr. Smith (TT-3P, 19:11-18;), Mr. Ackley contradicted Mr. Bailey (TT-3P, 182:19-183:3, 216:15-19), and Dr. Rhyne ignored Ms. Wagner (*see* TT-4A, 105:3-22, 106:5-107:21). Those inconsistencies starkly emphasized the failure of FedEx's experts to base their opinions on actual facts.

Having failed to present relevant evidence, FedEx's trial presentation devolved into a mix of confusing and improper evidence, which had the combined prejudicial effect of distracting the jury from FedEx's evidentiary failures. It also unfairly forced IV to risk antagonizing the jury by repeatedly objecting. *See Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995) (recognizing that constant objections "could antagonize the jury"); (*Cf.* 4/11 Tr., 20:18-23 (recognizing that objections are "disruptive" and "break[] the flow of the evidence").)

FedEx's presentation was replete with inappropriate questioning of witnesses that effectively replaced witness testimony with impermissible testimony from FedEx's attorneys. On cross-examination, FedEx purported to impeach IV's witnesses by publishing pre-fabricated, inaccurate demonstratives that contradicted the actual testimony. (*E.g.*, TT-2P, 157:18-159:18.) On direct examination, FedEx's leading questions (*e.g.*, TT-3A, 43:5-6, 65:1-2; TT-4A, 129:23-130:7) and vague invitations for witnesses to lecture the jury (*e.g.*, TT-2P, 216:14-24; TT-3P, 141:8-16, 142:4-11) destroyed the procedure by which witnesses testify in court. (*See id.*, 141:10-

16; *see also id.*, 142:4-11.)   Overall, FedEx's improper questioning robbed the jury of the opportunity to fairly evaluate witnesses' credibility. *See Waddington N. Am., Inc. v. Sabert Corp.*, No. 09-cv-04883, 2011 WL 3444150, at *16 (D.N.J. Aug. 5, 2011).

FedEx's witnesses also repeatedly violated Court orders. "When determining whether a new trial should be granted based on violation of court orders, the trial court is given great deference to gauge the prejudicial impact of a party's or their counsel's improper conduct during the trial." *Amway Corp. v. bHIP Global, Inc.*, No. 4:10-cv-549, 2013 WL 2355083, at *3 (E.D. Tex. May 29, 2013) (internal quotation marks omitted). "If the violation of the court's *in limine* order — *i.e.*, improper questioning of witnesses or argument — prejudices the opposing party's right to a fair trial, a motion for new trial should be granted." *Id.* (citation omitted). The Court stopped the proceeding at least three times to address violations—Mr. Williams' violation of the claim construction order (TT-3P, 24:23-29:25), Mr. Ackley's testimony about Java (TT-3P, 152:10-155:21), and Mr. Smith's testimony about experimental use (TT-3A, 55:12-57:22). Each violation prejudiced IV's right to a fair trial, and the totality compounded the unfairness. *See Amway*, 2013 WL 2355083, at *3; *Moody v. Ford Motor Co.*, 506 F. Supp. 2d 823, 847 (N.D. Okla. 2007) ("The combination of these violations, along with plaintiffs' counsel's improper conduct, leaves this Court with a firm conviction that [the party] did not receive a fair trial.").

Additionally, FedEx's experts testified contrary to patent law. Two experts (Williams and Ackley) testified that FedEx did not infringe "comprising" claims because the accused instrumentalities contained components beyond those recited. (*E.g.*, TT-3P, 149:2-8, 201:8-12.) *See Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' . . . means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."). Mr. Ackley also testified that two elements could not be met by

the same structure in the FedEx 1D barcode. *See Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("[T]he use of two terms in a claim requires that they connote different *meanings*, not that they necessarily refer to two different *structures*.").

During opening and closing, FedEx misled the jury by focusing on the dates the PTO ***issued*** the patents (TT-1P, 57:2-3; TT-5A, 63:16-25), even though validity is based on the ***priority date***. *See* 35 U.S.C. §§ 102, 103. That tactic contributed to the unfairness of the trial by predisposing the jury to believe—based on instinct, not evidence—that IV's patents were too recent to be valid.

Finally, left with no relevant evidence to argue in closing, FedEx's counsel instead encouraged the jurors to ignore the testimony that the witnesses gave on the stand. He urged them to credit information allegedly in the experts' reports and in their minds. In doing so, he uprooted most of the evidence and misled the jury regarding the crucial failures of FedEx's expert witnesses. That argument contributed to the impairment of IV's right to a fair trial and cemented the reason that justice demands at least a new trial. *See Amway*, 2013 WL 2355083 , at *3 ("When counsel or a witness for either party makes an improper statement or argument during trial, the court must determine whether the remark impaired a substantial right of the opposing party.").

### 2.   A New Trial On '586 Patent Infringement Is Separately Justified Because Of The Strength Of IV's Infringement Evidence.

IV's overwhelming evidence on infringement of the '586 patent warrants a new trial. Dr. Engels identified the Court's claim constructions and compared each limitation of the properly construed claim 7 to the accused FedEx Automation Products, *Amazon.com*, 239 F.3d at 1351, which, as Dr. Engels showed, are operated by or for FedEx Corp., Office, Express, and Ground. (TT-2P, 48:25-49:9, 52:5-21 (identifying Ground and Express labels), 52:23-55:24 (describing the features, including barcodes, of Ground and Express labels), 56:10-14 (FedEx Office retail location software), 58:15-59:2, 59:25-60:2 (creation of Ground and Express labels), 63:15-22,

67:14-21 (electronic labels for Ground and Express have a plurality of barcodes), 73:23-74:11, 75:5-15, 78:16-19, 82:1-24; PTX-0088 (Ground and Express label typography specification); PTX-0089 (Ground and Express 1D barcode specification); PTX-0090 (Ground and Express 2D barcode specification).) For the preamble, Dr. Engels showed that all FedEx Automation Products use CLS, and that the memory of the computer storing CLS is the computer-readable storage device storing executable instructions. (*Id.*, 66:7-67:9; PTX-0341.)

**First Limitation:**  For "creating an electronic document having a plurality of barcodes," Dr. Engels showed the jury the relevant claim construction (TT-2P, 64:2-25, 73:19-74:14), and provided document and source code evidence that CLS receives a "ShippingDocumentRequest" and uses a method called "getShippingDocuments" to create an electronic label having two or more barcodes. (*Id.*, 67:10-74:18, PTX-0342; PTX-0625.) For "wherein the plurality of bar codes encode respective data tags and data items," Dr. Engels explained the Court's constructions, including the construction for "data tag" (TT-2P, 75:16-75:22) and showed FedEx documents which demonstrated that each barcode in those electronic documents (the 1D, 2D, and IMPB) encodes data tags and data items. (*Id.*, 74:19-77:18; PTX-0089; PTX-0090; PTX-0467.) For "data tags," Dr. Engels relied on FedEx documents to confirm that the character in the first position of the FedEx 1D barcode is associated with the data item made up of the characters in positions 2-8 of the barcode. (TT-2P, 55:11-24, 75:5-76:6, 151:16-158:20, 168:9-171:1, PTX-0089.) For "wherein at least one of the data tags includes an identifier identifying one of the data items," Dr. Engels explained the Court's constructions and showed that each label contained a 2D barcode that has at least one data tag that include identifiers identifying the data items. (*Id.*, 77:19-78:23.)

**Second Limitation:**  For "sending the electronic document for decoding of a first one of the plurality of bar codes to recover a first data tag and a first data item," Dr. Engels provided

document and source code evidence that CLS uses a "ShippingDocumentReply" output to send the electronic document to the FedEx Automation Product so it can be printed, attached to a package, and have its barcodes decoded. (*Id.*, 78:24-80:13, PTX-0342; PTX-0625.) Thus, Dr. Engels concluded "claim 7 of the '586 patent is infringed by FedEx." (TT-2P, 80:14-19.) Through Dr. Engels, IV presented overwhelming evidence for the jury to find FedEx infringes claim 7.

FedEx's three non-infringement positions were inconsistent with the plain claim language, the Court's constructions, FedEx's invalidity positions, and patent law principles. And FedEx failed to discredit Dr. Engels' infringement opinions. *First*, FedEx's first non-infringement argument—that the FedEx 1D barcode does not encode the "data tags" of claim 7—failed to account for the Court's construction for "data tag" and was inconsistent with patent law principles. Indeed, during his examination, Mr. Ackley never once acknowledged that the Court construed "data tag" and never explained why Dr. Engels' "data tags" were not "one or more characters associated with a data item." (Dkt. 165, 114.) Instead, as Mr. Ackley later admitted on cross-examination, that non-infringement argument improperly added a "strippable" requirement which was not in the Court's construction (TT-3P, 193:17-194:10, 195:16-196:19), and relied on the incorrect belief that "data tag" and "data item" could not be met by the same structure. (*Id.*, 134:19-135:1); *see Applied Med.*, 448 F.3d at 1333 n.3 (allowing two claim elements to be met by the same structure in an accused product).

*Second*, FedEx's second non-infringement argument—that CLS creates a "label buffer," not a "document"—was largely discredited by Mr. Robin Fluke's own (misleading) testimony and was not endorsed by Mr. Ackley. (TT-3P, 103:19-104:14.) Indeed, despite claiming that a "label buffer" was not a "document" (contradicting documentary and source code evidence), Mr. Fluke testified that the label buffer could be printed directly, and that CLS conforms the "label buffer"

to a depicted shipping label. (TT-3P, 105:2-16; 114:14-115:10; 117:17-118:10; PTX-0088, 36.) And Mr. Fluke actively misled the jury by changing the name of source code from "Shipping**Document**Request" to "Shipping *Details* Request" in his demonstrative. (PTX-0425; TT-3P, 112:7-114:13; Ex. 11.) Mr. Ackley—who was not permitted to discuss the source code— did not endorse that implausible position other than stating: "It's not an electronic document because it's just data." (TT-3P, 155:18-21.) That cryptic sentence cannot save FedEx's non-infringement defense. *E.g.*, *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1172 (Fed. Cir. 2015) ("Conclusory statements by an expert, however, are insufficient to sustain a jury's verdict.").

**Third,** FedEx's third non-infringement argument—that claim 7 precludes printing electronic documents and requires scanning barcodes from screens—is factually and legally incorrect. Factually, (as Dr. Engels explained) claim 7 does not use "scanning" or "printing," and decoding does not ever require scanning barcodes, including from screens. (TT-2P, 150:2-14, 150:15-151:2.) Legally, as Mr. Ackley admitted on cross-examination, although claim 7 does not specify a "printing" step, claim 7 uses "comprising" and, therefore, does not preclude additional steps from being performed.[11] (TT-3P, 147:3-11; 203:24-25); *E.g.*, *Genentech*, 112 F.3d at 501.

In sum, a reasonable jury would not have a legally sufficient evidentiary basis to deny FedEx's infringement of claim 7, and that separately warrants a new trial on that issue.

### 3.    A New Trial On '586 Patent Invalidity Is Separately Justified.

The jury's determination that claim 7 was anticipated and obvious is nearly impossible in view of Mr. Ackley's convoluted testimony, including a failure to identify legal theories,[12] and the

---

[11] Mr. Ackley also confused the jury by showing a different patent claim that contains an element directed to "scanning a printed form of the electronic document."  (TT-3P, 148:8-149:1.)

[12] FedEx's counsel suggested that FedEx presented anticipation and obviousness by *ANSI* as printed publication and as prior use; obviousness by *Multicode* as prior use; and obviousness by *Multicode* as printed publication combined with the interNetShip system. (TT-4P, 59:13-60:15.)

absence of evidence on the "sending" element of claim 7. For *ANSI*,[13] Mr. Ackley testified only about generic ways information can be exchanged between trading partners, but did not describe any disclosure of "sending" "an electronic document having a plurality of bar codes." (TT-3P, 167:10-16.) Regarding the *Multicode* and interNetShip combination, Mr. Ackley relied exclusively on interNetShip for the "sending" limitation, even though Mr. Bailey (FedEx's own fact witness) admitted earlier that day that interNetShip ***did not*** teach that limitation. (TT-3A, 27:2-6, 47:20-48:3.) And for FedEx's prior use theories, there is no evidence in the record comparing the alleged prior use to the "sending" element. Importantly, for the *ANSI* prior use theory, the Court precluded Mr. Ackley from providing fact testimony about how, if at all, the *ANSI* reference was ever sent for decoding of barcodes. (TT-3P, 157:6-158:24.) And for the *Multicode* prior use theory, Mr. David Grus's fact testimony about the alleged creation and dissemination of *Multicode* was never compared by any witness to the "sending" element of claim 7.

To the extent it can be determined what invalidity theories FedEx presented, FedEx's presentation suffered from a lack of evidence on at least the "sending" limitation of claim 7. Mr. Ackley's failure to provide any explanation of the analyses he performed also renders his testimony insufficient to sustain a jury verdict. Because FedEx bears a heavy burden on invalidity, the evidence substantially weighs against FedEx, and the Court should grant IV a new trial.

## V.    CONCLUSION

For at least these reasons, IV respectfully requests JMOL or a new trial on all issues.

---

[13] To the extent Mr. Ackley purportedly testified about anticipation, his analysis wrongly focused exclusively about what "could" be known from *ANSI's* disparate teachings, which is not a true anticipation analysis. (TT-3P, 163:24-165:2); *see Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983).

DATED:   June 18, 2018

Respectfully submitted,

By: /s/ Alan S. Kellman

William E. Davis, III
Christian J. Hurt
**THE DAVIS FIRM P.C**.
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661
bdavis@bdavisfirm.com
churt@bdavisfirm.com

Alan S. Kellman (*pro hac vice*)
Lauren M. Nowierski
Adam Steinmetz (*pro hac vice*)
Kyle G. Petrie (*pro hac vice*)
Jordan Malz (*pro hac vice*)
Jennifer Przybylski (*pro hac vice*)
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
(212) 351-3400 (Tel)
(212) 351-3401 (Fax)
akellman@desmaraisllp.com
lnowierski@desmaraisllp.com
asteinmetz@desmaraisllp.com
kpetrie@desmaraisllp.com
jmalz@desmaraisllp.com
jprzybylski@desmaraisllp.com

*Counsel for Plaintiff*
*Intellectual Ventures II LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this the 18th day of June 2018.

<u>/s/ Alan S. Kellman</u>
Alan S. Kellman