**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **INTELLECTUAL VENTURES II LLC,** | |
| **Plaintiff,** | **Civil Action No.  2:16-cv-00980-JRG** |
| **v.** | **JURY TRIAL DEMANDED** |
| **FEDEX CORP., FEDERAL EXPRESS CORP., FEDEX GROUND PACKAGE SYSTEM, INC., FEDEX FREIGHT, INC., FEDEX CUSTOM CRITICAL INC., FEDEX OFFICE AND PRINT SERVICES, INC., and GENCO DISTRIBUTION SYSTEM, INC.,** | |
| **Defendants.** | |

**PLAINTIFF INTELLECTUAL VENTURES II LLC'S SUPPLEMENTAL BRIEF
IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW
UNDER RULE 50(b) AND MOTION FOR A NEW TRIAL UNDER RULE 59**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  ADDITIONAL FACTUAL BACKGROUND ................................................................. 1

II.  STATUTORY ESTOPPEL PRESENTS AN ADDITIONAL, INDEPENDENT
BASIS FOR THE COURT TO VACATE AND/OR REVERSE THE
JUDGMENT OF INVALIDITY AGAINST THE ASSERTED '581 AND '586
PATENT CLAIMS. ............................................................................................... 4

    A.  IPR Estoppel Under 35 U.S.C. § 315(e)(2) Takes Effect On The Date The
PTAB Issues A Final Written Decision. ............................................................. 5

    B.  IPR Estoppel Under § 315(e)(2) Takes Effect Regardless Of The PTAB's
Finding On Patentability In The Final Written Decision. ...................................... 6

    C.  Every Invalidity Challenge That FedEx Asserted At Trial Against The
'581 And '586 Patents Reasonably Could Have Been Raised In The IPR
Petitions. ..................................................................................................... 6

        1.  FedEx's '581 Patent Obviousness Challenge Is Based On Patents
That FedEx Reasonably Could Have Raised In Its IPR. ........................... 8

            a)  FedEx Should Be Estopped From Using Stephenson; FedEx
Cannot Prove "FedEx Prior Art Systems" Without It. ................... 8

            b)  None Of FedEx's Three Other Documents Is "Superior To" Or
"Separate From" Stephenson's Disclosure. ................................. 11

        2.  FedEx's '586 Patent Invalidity Challenges Are Based On Printed
Publications That FedEx Raised Or Could Have Raised In Its IPR. ........ 14

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases</u>

*Biscotti Inc. v. Microsoft Corp.*,
No. 2:13-cv-01015, 2017 WL 2526231 (E.D. Tex. May 11, 2017) .................................... 7, 15

*Biscotti Inc. v. Microsoft Corp.*,
No. 2:13-cv-01015, Dkt. 260 (June 2, 2017). ........................................................................ 7

*Biscotti Inc. v. Microsoft Corp.*,
No. 2:13-cv-01015, Dkt. 238 (May 30, 2017) ....................................................................... 7

*Clearlamp, LLC v. LKQ Corp.*,
No. 12-cv-2533, 2016 WL 4734389 (N.D. Ill. Mar. 18, 2016) ................................. 7, 8, 11, 15

*Dana Corp. v. NOK, Inc.*,
882 F.2d 505 (Fed. Cir. 1989) ................................................................................................ 5

*In re Wyer*, 655 F.2d 221 (C.C.P.A. 1981) ................................................................................ 15

*Intex Recreation Corp. v. Bestway Inflatables & Material Corp.*,
Case IPR2016-00180, Paper 33 (May 26, 2017) ................................................................. 15

*Medtronic, Inc. v. Barry*,
891 F.3d 1368 (Fed. Cir. 2018) ........................................................................................... 15

*SAS Inst., Inc. v. Iancu*,
138 S. Ct. 1348 (2018) ...................................................................................................... 2, 6

*SiOnyx, LLC v. Hamamatsu Photonics, K.K.*,
No. 15-13488, 2018 WL 4177941 (D. Mass. Aug. 30, 2018) .................................................. 6

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
778 F.3d 1311 (Fed. Cir. 2015) ............................................................................................. 5

*Star Envirotech, Inc. v. Redline Detection, LLC*,
No. 12-cv-01861, 2015 WL 4744394 (C.D. Cal. Jan. 29, 2015)................................... 7, 11, 15

*XY, LLC v. Trans Ova Genetics, L.C.*,
890 F.3d 1282 (Fed. Cir. 2018) ............................................................................................. 5

## <u>Statutes</u>

35 U.S.C. § 102 ......................................................................................................................... 15

35 U.S.C. § 103 ................................................................................................. 15

35 U.S.C. § 311 ................................................................................................... 6

35 U.S.C. § 315(e)(2) ................................................................................ passim

## **Other Authorities**

154 Cong. Rec. 22625 (Sep. 27 2008) .............................................................. 5

157 Cong. Rec. 13187 (Sept. 8, 2011) ............................................................... 5

157 Cong. Rec. 2710 (Feb. 28, 2011) ................................................................ 5

H.R. Rep. No. 112-98, pt. 1 (2011) .................................................................... 5

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| IV | Plaintiff Intellectual Ventures II LLC |
| FedEx | The FedEx Defendants |
| TT-#A | Trial Transcript, Day #, Morning Session |
| TT-#P | Trial Transcript, Day #, Afternoon Session |
| JMOL | Judgment as a matter of law |
| '581 patent | United States Patent No. 8,494,581 |
| '586 patent | United States Patent No. 9,047,586 |
| '356 patent | United States Patent No. 6,909,356 |
| '715 patent | United States Patent No. 7,199,715 |
| Corp. | FedEx Corporation |
| Ground | FedEx Ground Package System, Inc. |
| Express | Federal Express Corporation |
| Office | FedEx Office and Print Services, Inc. |
| CLS | Common Label Service |
| DWS | Dispatch Work Station |
| PTO | United States Patent and Trademark Office |
| PTAB | Patent Trial and Appeal Board |
| IPR | *Inter Partes* Review |
| FWD | Final Written Decision |
| AIA | America Invents Act |
| *ANSI* | American National Standard for Material Handling—Unit Loads and Transport Packages—Two-Dimensional Symbols, ANSI 10.8.3M-1996 (DTX 219) |
| *Multicode* | RPS Multicode Bar Code Label Guide (DTX 254) |
| *UPS* | Guide to Bar Coding with UPS For Customers Generating Bar Code Labels, Version III |

iv

| IV's Motion | Intellectual Ventures II LLC's Motion for Judgment As A Matter Of Law Under Rule 50(b) And Motion For A New Trial Under Rule 59 (Dkt. 561) |
|---|---|

**TABLE OF EXHIBITS**

| Exhibit Number | Description |
|---|---|
| Ex. 01 | Excerpt of TT-1P |
| Ex. 02 | Excerpt of TT-2A |
| Ex. 03 | Excerpt of TT-2P |
| Ex. 04 | Excerpt of TT-3A |
| Ex. 05 | TT-3P |
| Ex. 06 | TT-4A |
| Ex. 07 | Excerpt of TT-4P |
| Ex. 08 | Excerpt of TT-5A |
| Ex. 09 | Excerpt of April 11, 2018 Motions Hearing Transcript (4/11 Tr.) |
| Ex. 10 | FedEx Defendants' Opening Demonstrative 16 |
| Ex. 11 | Robin Fluke Trial Demonstrative 4 |
| Ex. 12 | Dr. Daniel Engels, Trial Demonstrative 40 (*FILED UNDER SEAL*) |
| Ex. 13 | Page 29 of PTX-499 (*FILED UNDER SEAL*) |
| **Ex. 14** | **Petition for *Inter Partes* Review:  IPR2017-00729 ('581 Patent)** |
| **Ex. 15** | **Petition for *Inter Partes* Review:  IPR2017-00750 ('356 Patent)** |
| **Ex. 16** | **Petition for *Inter Partes* Review:  IPR2017-00787 ('715 Patent)** |
| **Ex. 17** | **Petition for *Inter Partes* Review:  IPR2017-00859 ('586 Patent)** |
| **Ex. 18** | **Institution Decision:  IPR2017-00729 ('581 Patent) (July 25, 2017)** |
| **Ex. 19** | **Institution Decision:  IPR2017-00750 ('356 Patent) (July 12, 2017)** |
| **Ex. 20** | **Institution Decision:  IPR2017-00787 ('715 Patent) (July 25, 2017)** |
| **Ex. 21** | **Institution Decision:  IPR2017-00859 ('586 Patent) (Aug. 10, 2017)** |
| **Ex. 22** | **Final Written Decision: IPR2017-00729 ('581 Patent) (July 20, 2018)** |
| **Ex. 23** | **Final Written Decision: IPR2017-00859 ('586 Patent) (Aug. 9, 2018)** |
| **Ex. 24A** | **Order on Conduct of Proceeding 37 C.F.R. § 42.5  (IPR2017-00729) (May 10, 2018)** |
| **Ex. 24B** | **Order on Conduct of Proceeding 37 C.F.R. § 42.5  (IPR2017-00859) (May 11, 2018)** |
| **Ex. 25** | **Petition for *Inter Partes* Review:  IPR2017-02030 ('581 Patent)** |
| **Ex. 26** | **Petition for *Inter Partes* Review:  IPR2017-02043 ('586 Patent)** |
| **Ex. 27** | **Institution Decision:  IPR2017-02030 ('581 Patent) (Feb. 20, 2018)** |
| **Ex. 28** | **Institution Decision:  IPR2017-02043 ('586 Patent) (Feb. 26, 2018)** |
| **Ex. 29** | **Request for *Ex Parte* Reexamination:  90-014,071 ('581 Patent)** |
| **Ex. 30** | **Transcript: PTAB Conference Call (May 7, 2018) (highlighted)** |
| **Ex. 31** | **154 Cong. Rec. 22625 (Sep. 27 2008) (highlighted)** |
| **Ex. 32** | **157 Cong. Rec. 2710 (Feb. 28, 2011) (highlighted)** |
| **Ex. 33** | **157 Cong. Rec. 13187 (Sept. 8, 2011) (highlighted)** |

| Ex. 34 | **Williams Demonstratives (excerpted)** |
|---|---|
| **Ex. 35** | **Excerpt of TT-3A concerning the third limitation of claim 18 (highlighted)** |
| **Ex. 36** | **Excerpt of TT-3P concerning the fifth limitation of claim 18 (highlighted)** |
| **Ex. 37** | ***Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015, 2017 WL 2526231, (E.D. Tex. May 11, 2017)** |
| **Ex. 38** | ***Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015, Dkt. 260 (E.D. Tex. June 2, 2017)** |
| **Ex. 39** | ***Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015, Dkt. 238 (E.D. Tex. May 30, 2017)** |
| **Ex. 40** | **Excerpts of TT-2P and TT-3A** |
| **Ex. 41** | **Bailey Demonstratives Relating To '581 FedEx Prior Art Systems (excerpted)** |
| DTX-36 | FedEx.com printout (2017) |
| DTX-100 | USPN 6,094,642 issued to Stephenson et al. |
| DTX-101 | The Federal Express DADS Handheld - An Introduction DRAFT Version 1.2 |
| DTX-219 | American National Standard for Material Handling—Unit Loads and Transport Packages—Two-Dimensional Symbols, ANSI 10.8.3M-1996 |
| DTX-254 | RPS Multicode Bar Code Label Guide |
| DTX-299 | Federal Express, Video "Intro to FedEx Ship & interNetShip" |
| DTX-379 | Shipping the Internet Way - Now There's FedEx interNetShip |
| DTX-406 | Dispatch Work Station An Overview, Version 1.0, Russ Johnson *(FILED UNDER SEAL)* |
| PTX-0001 | Ribbon Copy of U.S. Patent No. 6,909,356 |
| PTX-0002 | Ribbon Copy of U.S. Patent No. 7,199,715 |
| PTX-0003 | Ribbon Copy of U.S. Patent No. 8,494,581 |
| PTX-0004 | Ribbon Copy of U.S. Patent No. 9,047,586 |
| PTX-0082 | FedEx Ship Manager Software User Guide, Version 3000 |
| PTX-0088 | FedEx Express & FedEx Ground - Typography Specification for EPIC Electronic Commerce Shipping Label, Version 1.5 (04-13-2012) *(FILED UNDER SEAL)* |
| PTX-0089 | FedEx 1D Barcode Specification, Version 1.3 (02-12-2016) *(FILED UNDER SEAL)* |
| PTX-0090 | FedEx Express and FedEx Ground - 2D Content Guide - Version 2.5.2 (08-05-2016) *(FILED UNDER SEAL)* |
| PTX-0099 | Software Requirements Specification: ITG 138772 SmartPost, JCLS (07-14-2014) *(FILED UNDER SEAL)* |
| PTX-0117 | FedEx Freight: Freight 2020 Strategy Framework *(FILED UNDER SEAL)* |

| PTX-0119 | FedEx Freight - FXF RFID Shipment Tracking POC (07-10-2017) *(FILED UNDER SEAL)* |
|---|---|
| PTX-0161 | FedEx Ground: Star IV P&D Scanner Workbook, FXG: Ground, Optimized for P&D Version 12.3 (08-29-2016) *(FILED UNDER SEAL)* |
| PTX-0162 | FedEx Ground: Star IV P&D Scanner Workbook, FHD: Home Delivery, Optimized for P&D Version 12.3 (08-29-2016) *(FILED UNDER SEAL)* |
| PTX-0166 | Dispatch Workstation (DWS) Applications *(FILED UNDER SEAL)* |
| PTX-0201 | FedEx, PowerPad Functional Specification WR 142192 GPS Phase 2 GPS Application, Version 1.1 (12-26-2014) *(FILED UNDER SEAL)* |
| PTX-0213 | FedEx Ground dataflow for system used in pickup and delivery operations *(FILED UNDER SEAL)* |
| PTX-0220 | Excerpt of Motorola - MC9500-K Mobile Computer User Guide, Rev. B (2011) |
| PTX-0341 | Detail Design Specification: INET - 144355 - EACI Phase 2, FedEx Ship Manager @ fedex.com, Software Version INET-JAN 14 CL, Version 2.0 (01-29-2013) *(FILED UNDER SEAL)* |
| PTX-0342 | Software Requirements Specification, ITG 140583 IRD, JCLS (07-22-2014) *(FILED UNDER SEAL)* |
| PTX-0425 | Software Requirements Specification: Common Label Service - CLS 1110 - 114686 EPIC (07-09-2010) *(FILED UNDER SEAL)* |
| PTX-0467 | Software Requirements Specification: FedEx Ship Manager (CAFE) - CAFE2600 - 124070 - Intelligent Mail Package Barcode (IMpb) Phase 2 (04-20-2012) *(FILED UNDER SEAL)* |
| PTX-0499 | Excerpt of Email chain from C. Morgan to N. Holmes containing PowerPad Communications Interface Control Document (12-20-2016) *(FILED UNDER SEAL)* |
| PTX-0625 | Excerpt of Source code: Cls.java *(FILED UNDER SEAL)* |

**Bolded** exhibits are filed with this supplemental brief; the remainder are attached to either the opening or reply brief.

Unless, otherwise noted, all emphasis is added.

After IV moved under Rules 50 and 59 for JMOL and/or a new trial (Dkt. 561, "IV's Motion"), the PTAB issued Final Written Decisions ("FWDs") for the claims from the '581 patent (claims 1, 18, and 20) and the '586 patent (claim 7) that IV asserted at trial. Accordingly, estoppel under 35 U.S.C. § 315(e)(2) now applies to every invalidity challenge FedEx raised at trial against those patents (and on which FedEx relies in opposing IV's Motion), as each of those challenges rests on a ground FedEx "reasonably could have raised" in its IPR petitions—even those FedEx referred to as "systems." The record demonstrates that FedEx referred to certain invalidity grounds as "systems" to cloak FedEx's actual reliance on underlying patents and printed publications and to attempt to escape the estoppel provisions of 35 U.S.C. § 315(e). The Court should reject that attempt. Beyond the evidentiary bases IV identified in its earlier briefing on these post-trial motions, statutory estoppel under § 315(e)(2) presents an additional, independent basis to vacate and/or reverse the judgment of invalidity as to the asserted claims of the '581 and '586 patents.[1]

## I.  ADDITIONAL FACTUAL BACKGROUND

In early 2017, FedEx filed IPR petitions against all asserted claims of the patents-in-suit. (Exs. 14-17.) In mid-2017, the PTAB denied institution on all '356 patent claims and some claims from each of the '581, '586, and '715 patents. (Exs. 18-21.) Relevant here, the PTAB instituted IPR trial on '581 claim 1 and '586 claim 7, but denied institution on '581 claims 18 and 20.

***'581 IPR (IPR2017-00729)***:  In FedEx's first IPR Petition seeking review of claims 1-24 of the '581 patent, FedEx sought institution on the following grounds:

|   | Claims | Basis | Prior Art |
|---|--------|-------|-----------|
| 1 | 1-15, 18-19, 21, 23-24 | § 103 | Rappaport (U.S. Patent 6,971,063) |
| 2 | 16 | § 103 | Rappaport in view of DeLorme (U.S. Patent 6,321,358) |
| 3 | 17, 22 | § 103 | Rappaport in view of Wright (U.S. Patent 5,857,201) |
| 4 | 20 | § 103 | Rappaport in view of Khalessi (U.S. Patent 6,633,900) |

---

[1] IV respectfully requests oral argument on IV's Motion, including on these estoppel issues.

(Ex. 14.) The Board initially instituted review on a subset of those claims (1-17) and grounds (1-3) (Ex. 18). On April 24, 2018, two days before the PTAB trial, the Supreme Court held in *SAS Inst., Inc. v. Iancu* that a FWD must address all claims challenged in a petition. 138 S. Ct. 1348 (2018). After the PTAB trial (including on the '581 and '586 petitions), the PTAB panel held a conference call to "give the parties further opportunity to discuss the impact of the Supreme Court's decision in [*SAS*]." (Ex. 30, 4:17-21.) During that call, FedEx conceded that:

> from the board's analysis in the institution decision, we think it follows that in the boards' [sic] opinion, the petitions did not meet the higher preponderance standard required to find those claims unpatentable in any final written decision.

(Ex. 30, 7:3-8.) And FedEx expressly agreed to a procedure in which no additional evidence or argument would be presented on claims for which institution was initially denied—including '581 claims 18 and 20. (*Id.*, 6:10-7:25; 21:1-24.) In light of the parties' agreement, the PTAB issued orders modifying its Institution Decisions to include all claims challenged in FedEx's petitions. (Exs. 24-A, 24-B.) On July 20, 2018, the PTAB issued a FWD on FedEx's petition against the '581 patent in Case IPR2017-00729. (Ex. 22.) The PTAB addressed claims 1-24 and found claims 1-17 invalid as obvious and claims 18-24 not invalid. (*Id.*)

**'586 IPR (IPR2017-00729)**: In FedEx's first IPR Petition seeking review of '586 patent claims 7, 8, 12, 13, 16, 18, and 19, FedEx sought institution on the following grounds:

|   | Claims | Basis | Prior Art |
|---|--------|-------|-----------|
| 1 | 7, 8, 12, 13, 16, 18, 19 | § 103 | *ANSI* in view of *Ett* (U.S. Patent 5,298,731) |
| 2 | 7, 12, 16, 18, 19 | § 103 | *ANSI* in view of *UPS* |
| 3 | 8, 13 | § 103 | *ANSI* in view of *UPS* and *Ett* |

(Ex. 17.) The Board initially only instituted review on ground 1 for claims 7, 8, 12, 13. (Ex. 21.) As described above, following *SAS*, the Board—with the parties' agreement—determined that the FWD would address all claims challenged in the Petition. (Ex. 24.) On August 9, 2018, the PTAB issued a FWD finding claims 7, 8, 12, and 13 invalid as obvious (over *ANSI* in view of *Ett*), and

finding claims 16, 18 and 19 not invalid. (Ex. 23.)

**_Additional Post-Grant Proceedings_:** Following the PTAB's original Institution Decisions, FedEx filed "follow-on" IPR petitions against the non-instituted claims, and a motion to stay this case pending IPR. (Dkt. 104; *see also* Exs. 25, 26.) IV opposed the stay motion, in part, because, at that time, the PTAB had denied institution on more than half of the asserted claims. (Dkt. 112.) The Court denied FedEx's stay motion, noting that a stay would do little to simplify the issues because the PTAB had "declined to institute on a majority of the Asserted Claims." (Dkt. 141, 3.) The PTAB later denied institution on all of FedEx's follow-on IPR petitions under 35 U.S.C. § 314(a), finding that FedEx's follow-on IPR strategy was inefficient and unfair to IV (tantamount to an abuse of process). (Exs. 27, 28.) Following that decision, FedEx filed a request for *Ex Parte* Reexamination on '581 claims 18-20 and 24. (Ex. 29.) That *Ex Parte* reexamination is ongoing.

**_Jury Trial:_** This Court held a five-day jury trial beginning on May 14, 2018.

**_FedEx's '581 Trial Presentation_:** Through its expert David Williams, FedEx asserted that claim 1 was invalid as obvious over what FedEx called the "FedEx Prior Art Systems," alone and/or in combination with U.S. Patent No. 5,589,835 ("Gildea"), that claim 18 was invalid as obvious over the FedEx Prior Art Systems in view of Gildea, and that claim 20 was invalid as obvious over the FedEx Prior Art Systems in view of Gildea and Khalessi. FedEx presented evidence of the alleged "FedEx Prior Art Systems" primarily through DTX-100 (U.S. Patent 6,094,642, "Stephenson"), a FedEx patent that indisputably could have been presented in FedEx's IPR petition. Mr. Williams showed a few images from two additional documents in his demonstratives, which added nothing of substance to Stephenson. *See* DTX-101 (document titled "The Federal Express DADS Handheld, An Introduction"), DTX-406 (document titled "Dispatch Work Station, An Overview" dated July 15, 2015 (about 15 years after the '581 priority date));

(Ex. 34.) FedEx did not present evidence of the software or source code that provided any of the alleged functionality of the systems. FedEx employee Mr. Tracy Bailey (an inventor on Stephenson) was the only other witness who testified relating to the "Systems." (Ex. 40; Ex. 41.) Mr. Williams' and Mr. Bailey's trial testimony heavily focused on Stephenson's disclosure.

_FedEx's '586 Trial Presentation:_ Through its expert Sprague Ackley, FedEx asserted that claim 7 was invalid as (a) anticipated by _ANSI_; or obvious over (a) _ANSI_; (c) _Multicode_; and (d) _Multicode_ + "FedEx Prior Art Systems" (a system called "interNetShip"). FedEx presented evidence of interNetShip through one printed customer automation manual (DTX 379) and one public-facing instructional video (DTX 299). FedEx did not present physical evidence of the software or source code encompassed within the interNetShip "system." Mr. Bailey was the only other FedEx witness who testified relating to interNetShip. Mr. Ackley's and Mr. Bailey's testimony focused on what the manual and video disclosed.

## II.  STATUTORY ESTOPPEL PRESENTS AN ADDITIONAL, INDEPENDENT BASIS FOR THE COURT TO VACATE AND/OR REVERSE THE JUDGMENT OF INVALIDITY AGAINST THE ASSERTED '581 AND '586 PATENT CLAIMS.

35 U.S.C. § 315(e)(2) states:

The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert [] in a civil action arising under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

It is undisputed that defendant FedEx Corp. is the petitioner (and each other defendant is a real party in interest and/or privy of FedEx Corp.) in IPRs that resulted in FWDs on '581 claims 1, 18, and 20, and '586 claim 7. (Exs. 14-17.) Thus, now that FWDs have issued, FedEx is estopped from asserting in this litigation that those claims are invalid on any ground that FedEx "raised or reasonably could have raised" in its IPR petitions. _See_ 35 U.S.C. § 315(e)(2). Because it takes effect immediately and applies to every invalidity challenge FedEx asserts against the '581 and

4

'586 patents, statutory estoppel provides an independent basis for the Court to grant IV's Motion regarding the validity of those patents, or at a minimum, vacate the invalidity judgment

### A. IPR Estoppel Under 35 U.S.C. § 315(e)(2) Takes Effect On The Date The PTAB Issues A Final Written Decision.

The AIA statute states that estoppel attaches when the FWD is issued. 35 U.S.C. § 315(e)(2). By the plain language, estoppel applies during any stage of an ongoing non-final civil action, including after a jury trial or during appeal. *Id.* (referring to a "civil action" without specifying a particular stage of such an action).[2] In this case, the PTAB issued FWDs on the '581 and '586 patents after entry of judgment on the jury's verdict, but during the pendency of IV's Motion. Estoppel under § 315(e)(2) took effect immediately at the time the FWDs were issued (i.e., July 20, 2018 as to the '581 patent and August 9, 2018 as to the '586 patent).

That result is consistent with Congress's purpose to incentivize petitioners to file IPRs as "quick and cost effective ***alternatives*** to litigation." *See* H.R. Rep. No. 112-98, pt. 1, at 48 (2011); *see also* 157 Cong. Rec. 2710 (Feb. 28, 2011) (statement of Sen. Grassley) (Ex. 32) ("These new procedures would also provide faster less costly ***alternatives*** to civil litigation to challenge patents."); *see also* 157 Cong. Rec. 13187 (Sept. 8, 2011) (Ex. 33) (noting that the final bill extends

---

[2] In the analogous collateral estoppel context, a final judgment of invalidity "has an immediate issue-preclusive effect on any pending or co-pending actions involving the patent" at any stage of a litigation, including during appeal after a jury verdict. *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018); *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1315 (Fed. Cir. 2015) ("It is also established that issue preclusion applies even though the precluding judgment [] comes into existence while the case as to which preclusion is sought [] is on appeal."); *Dana Corp. v. NOK, Inc.*, 882 F.2d 505, 507 (Fed. Cir. 1989) ("[W]e see no reason why estoppel cannot be raised during the pendency of an appeal."). The analogy is on point because, like § 315(e) estoppel, collateral estoppel is directed to concerns about "the expense and complexity of patent litigation [] and the need for judicial economy." *E.g.*, *Dana*, 882 F.2d at 507. The § 315(e) estoppel provisions are consistent with common law standards embodied by collateral estoppel. *See* 154 Cong. Rec. 22625 (Sep. 27, 2008) (statement of Sen. Kyl) (Ex. 31) ("Privity is essentially a short-hand statement that collateral estoppel is to be applied").

the proposed deadline to file an IPR "in light of the present bill's **enhanced estoppels**," *i.e.*, those provided in 35 U.S.C. § 315(e)). Here, FedEx availed itself of the **alternative** IPR process to challenge IV's patents, and its petitions resulted in FWDs.[3] Under § 315(e)(2), FedEx is estopped from asserting validity challenges it raised or reasonably could have raised in its IPR petitions.

**B.   IPR Estoppel Under § 315(e)(2) Takes Effect Regardless Of The PTAB's Finding On Patentability In The Final Written Decision.**

Estoppel attaches when an IPR "results in a final written decision under section 318(a)," regardless of whether the FWD finds the challenged claim patentable or unpatentable. 35 U.S.C. § 315(e)(2); *e.g.*, *SiOnyx, LLC v. Hamamatsu Photonics, K.K.*, No. 15-13488, 2018 WL 4177941, at *18 (D. Mass. Aug. 30, 2018) (applying estoppel both to claims the PTAB found invalid and claims the PTAB did not find invalid because "the [estoppel] statute makes no distinction between successful and unsuccessful grounds"). Thus, it is irrelevant to the estoppel issue that FedEx prevailed in the PTAB's FWDs with respect to '581 claim 1 and '586 claim 7. Regardless of the outcome at the PTAB (and any subsequent appeals), FedEx is estopped with respect to every claim that the PTAB addressed in its FWDs, including all asserted claims from the '581 and '586 patents.

**C.   Every Invalidity Challenge That FedEx Asserted At Trial Against The '581 And '586 Patents Reasonably Could Have Been Raised In The IPR Petitions.**

The AIA limited IPR petitions to challenges "under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311. Courts have interpreted § 315(e)'s "reasonably could have raised" language to encompass all patents or printed publications "that a petitioner actually knew about or that 'a skilled searcher conducting a diligent search reasonably could have been expected to discover.'" *SiOnyx*, 2018 WL 4177941, at *19

---

[3] It is irrelevant that IV opposed FedEx's motion to stay this case in favor of the IPRs because, at that time, the majority of the asserted claims were not instituted and *SAS* had not yet been decided. (*See* Dkt. 112) After the *SAS* Court found partial institution decisions to be improper, FedEx conceded that the Final Written Decisions should reflect FedEx's failure of proof. (Ex. 30, 7:3-8.)

(internal citation omitted). This Court has recognized that when "purported system art relies on or is based on patents or printed publications that [the defendant] would otherwise be estopped from pursuing at trial, . . . then [the defendant] should be estopped from presenting those patents and printed publications at trial." *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015, 2017 WL 2526231, at *8 (E.D. Tex. May 11, 2017) (Ex. 37), *R&R adopted*, No. 2:13-cv-01015, Dkt. 260 (Ex. 38); *see also* No. 2:13-cv-01015, Dkt. 238 at 2 (Ex. 39) ("While Microsoft will be permitted to present its defense of invalidity based on the [] systems, Microsoft will be limited to using any documents that qualify as patents or printed publications solely for the purpose of establishing the date on which the [] systems were in public use or on sale).

Other courts have also prevented defendants from avoiding estoppel using "system" art that is essentially identical to a challenge that could have been raised in the IPR based on patents or printed publications. *See, e.g.*, *Star Envirotech, Inc. v. Redline Detection, LLC*, No. 12-cv-01861, 2015 WL 4744394, at *4 (C.D. Cal. Jan. 29, 2015) (prior art machine must be a ***"superior and separate reference"*** from the manual describing it); *see also Clearlamp, LLC v. LKQ Corp.*, No. 12-cv-2533, 2016 WL 4734389, at *9 (N.D. Ill. Mar. 18, 2016) ("While LKQ seeks to cloak its reliance upon UVHC3000 as a product, so as to avoid § 315(e)(2) estoppel, such an argument is disingenuous as it is the UVHC3000 datasheet upon which LKQ relies to invalidate the asserted claims….Since the datasheet is a publication, it…could have been used during [IPR].").

The purported "system" art in FedEx's invalidity challenges to the '581 and '586 patents is actually a set of patents and printed publications that FedEx raised or reasonably could have raised in its IPRs. FedEx simply cannot show that the systems are superior and separate references from the documents that describe them, particularly given the void of evidence FedEx has of the systems themselves. At minimum, FedEx should be precluded from relying on patents and printed

7

publications as substantive evidence of the system's functionality.

>    1.     **FedEx's '581 Patent Obviousness Challenge Is Based On Patents That FedEx Reasonably Could Have Raised In Its IPR.**

At trial, FedEx's validity challenges to claims 1, 18, and 20 were based on the alleged "FedEx Prior Art Systems" alone or in view of Gildea and/or Khalessi (two patents). Independent of the problems with FedEx's lack of evidence of the "FedEx Prior Art Systems" (Dkt. 561, 19-26), FedEx should now be estopped from further pursuing invalidity challenges based on that purported system art because it "relies on or is based on" patents that FedEx would have otherwise been estopped from pursuing at trial.

>    a)     ***FedEx Should Be Estopped From Using* Stephenson*; FedEx Cannot Prove "FedEx Prior Art Systems" Without It.***

FedEx's use of the "FedEx Prior Art Systems" relies almost entirely on Stephenson, but FedEx is estopped from using Stephenson, at least for its substance. *Biscotti*, 2017 WL 2526231, at *8 (estopping defendant from presenting patents and publications underlying alleged "system" art at trial); (Ex. 39, 2.) Stephenson is a FedEx patent that was both known to FedEx (as early as 1997) and available to use in IPR. (DTX-100.) FedEx has never argued that it could prove obviousness of the '581 patent claims over the "FedEx Prior Art Systems" without using Stephenson, and in fact, the record demonstrates that it simply cannot prove obviousness without it. (TT-3A, 119:9-136:14; TT-3P, 3:22-9:10; Ex. 34.)

Stephenson was indispensable to FedEx expert Mr. Williams's obviousness analysis. (TT-3A, 92:8-93:7, 119:9-136:14; TT-3P, 3:22-12:7.) His testimony and accompanying demonstrative slides (Ex. 34) reveals that Stephenson was his primary source of information about the FedEx Prior Art Systems. Although some of Mr. Williams' demonstratives paid lip service to images from DTX-406 and DTX-101, those citations only cloaked FedEx's reliance on Stephenson to avoid estoppel. *Clearlamp, LLC*, 2016 WL 4734389, at *9. Mr. Williams began his testimony by

8

admitting that *Stephenson* "covers many of the elements" of the FedEx Prior Art Systems and began his invalidity analysis by presenting a highlighted copy of Stephenson. (TT-3A, 93:2-7; Ex. 34, 1) After showing the jury Stephenson, Mr. Williams explained why he believed the FedEx Prior Art "*as evidenced by Stephenson*" rendered obvious claim 1 and used *Stephenson's* 1997 date on all claim 1 slides. (TT-3A, 122:22-123:2; *see also id.* at 123:3-129:2, Ex. 34, 3-12.) During his claim analysis, Mr. Williams explicitly relied on Stephenson for every element of the claims except for the third limitation (means for managing data) and fifth limitation (means for enabling communicating the data collected) of claim 18.[4] (TT-3A, 119:9-136:14; TT-3P, 3:22-9:10.)

Stephenson was even the lynchpin of FedEx employee Mr. Bailey's testimony—the only other testimony FedEx presented at trial regarding the FedEx Prior Art Systems—a witness purporting to have personal knowledge. (TT-2P, 206:20-226:21, TT-3A, 6:18-23:7; Exs. 40, 41.) Rather than explain how the purported systems worked from personal knowledge and corroborating that knowledge with documents, nearly all of Mr. Bailey's testimony introduced and repeated portions of his patent, Stephenson. (TT-2P, 220:10-226:21; TT-3A, 6:18-10:19, 12:12-13:15; Ex. 41, 1-14.) Indeed, Mr. Bailey's testimony merely confirmed the contents of his patent. Mr. Bailey first confirmed the title and inventors (Ex. 40, TT-2P, 220:10-21), and then (with counsel's help) read to the jury or summarized several passages from the specification:

| Testimony | Passage from DTX-100 | Subject Matter |
| --- | --- | --- |
| Ex. 40, TT-2P, 221:21-222:9 | DTX-100, 1:10-17 | Patent overview |
| Ex. 40, TT-2P, 222:10-223:9 | DTX-100, 5:32-35 | COSMOS |
| Ex. 40, TT-2P, 223:10-19 | DTX-100, 10:15-28 | DADS |
| Ex. 40, TT-2P, 225:1-226:1; TT-3A, 6:24-7:12 | DTX-100, 5:49-59 | SuperTracker |
| Ex. 40, TT-3A, 9:13-10:9 | DTX-100, 5:45-47, 6:66-7:1 | Enhanced SuperTracker |

---

[4] Some of Mr. Williams' slides incorrectly cited DTX-406 and DTX-101 instead of Stephenson. (Ex. 34.) At trial, Mr. Williams asserted that the third element of claim 1 could be satisfied by Gildea *or* by DTX-101 at 20, 22. (Ex. 34, 40-42.) The information from DTX-101 at 20, 22 is also contained in Stephenson at, *e.g.*, 7:26-30.

9

| Ex. 40, TT-3A, 12:12-13:15 | DTX-100, 7:9-10, 7:14-16, 7:19-21, 7:27-29 | PowerPad |
|---|---|---|

FedEx's counsel's questions confirmed that Mr. Bailey was testifying about the Stephenson *document* itself (interspersed with a few images from DTX-36—a timeline from fedex.com). (*E.g.*, Ex. 40, TT-2P, 225:2-12 ("Q. And [DTX-100] *says here* that [the Enhanced SuperTracker] is a relatively small battery-powered device used by Federal Express personnel …? A. Yes. Q. Okay. And that's again, *an excerpt from your – from your patent, correct? A. Yes.*"); TT-3A, 9:13-19 ("Q. Okay. Okay. I'm just bringing up from your patent, again, a portion of the specification related to the Enhanced SuperTracker that we saw earlier. *And the Enhanced SuperTracker is described here on Column 5, Lines 45 to 47 and Column  6, lines 66 to 71 of your '642 patent. And it explains how it works; is that accurate*? A. Yes, that is correct."); *Id.*, 12:12-13:15 (asking Mr. Bailey to confirm how the PowerPad works "*based on*" a passage in column 7 of DTX-100).)

Other than reading or summarizing portions of Stephenson, the rest of Mr. Bailey's testimony concerning the alleged FedEx Prior Art Systems merely addressed small portions of the three other FedEx documents—DTX-36, DTX-406, and DTX-101—which were irrelevant to the '581 patent claim limitations. (Ex. 40; Ex. 41 (all of Mr. Bailey's '581 demonstratives).) For DTX-36, Mr. Bailey showed thumbnail-sized images from that timeline and described those timeline entries at a high-level. (Ex. 40, 210:25-216:13; Ex. 41, 3, 9, 10.) For example, Mr. Bailey described COSMOS as:

> a customer system—it's much like a reservation system that someone might use, say, from a travel agent reserving a ticket for an airline, you would reserve a package pickup, if you would. So customers would contact a service agent, and COSMOS is the system that the customers used to—connected the—the package itself and the scanning of the package and all of that with the customer together.

(TT-2P, 212:3-10.) Neither the stock photo from DTX-36 nor the description above provided any detail relevant to the '581 validity analysis or any detail that was not also in Stephenson. (*Compare*

DTX-36, at 3-4 *with* DTX-100, 5:32-35, *and* PTX-0003.) For DTX-406, Mr. Bailey showed the jury one image from page 6 (FDXIV00614822) showing clip art allegedly depicting COSMOS, DADS, and the "DADS terminal," and described the flow chart on that page. (Ex. 40, TT-3A, 13:16-17:3.) That flow chart did not contain any information different from Stephenson (and in fact, Stephenson provided greater detail about the dispatch process). (*See, e.g.*, DTX-100, 3:60-12:47.) Lastly, for DTX-101, Mr. Bailey just showed the jury a ***portion*** of the ***cover*** of the document, claimed that the document described "the DADS handheld terminal" (without showing the jury any passages from it) and reiterated the (brief) description he provided of the terminal in connection with DTX-36. (*Compare* TT-3A, 10:20-12:5 *with* TT-2P, 215:14-216:13.) Again, the description Mr. Bailey provided had nothing to do with the claim limitations. Moreover, Mr. Bailey never attempted to show the jury any meaningful detail in DTX-101 to corroborate any of his testimony. (*Id.*; Ex. 41) Thus, without Stephenson, Mr. Bailey's testimony also could not sustain an obviousness verdict.

In sum, without Stephenson, FedEx simply cannot prove its obviousness case against any of the '581 patent claims. And because FedEx reasonably could have raised Stephenson in IPR, FedEx should be estopped from using it now. *Biscotti*, 2017 WL 2526231, at *8.

> b)   ***None Of FedEx's Three Other Documents Is "Superior To" Or "Separate From"* Stephenson's *Disclosure.***

Although FedEx called them the "FedEx Prior Art ***Systems***," it did so only to avoid § 315(e) estoppel. FedEx tried to obscure its reliance on Stephenson through citing three other documents (DTX-101, DTX-406, and DTX-36) at trial and in briefing. But FedEx cannot show, as it must to avoid estoppel, that those documents were "superior to" or "separate from" Stephenson. *Clearlamp, LLC*, 2016 WL 4734389, at *9; *Star Envirotech*, 2015 WL 4744394, at *4.

Mr. Williams' testimony confirms that FedEx cannot show that anything from DTX-406

11

or DTX-101 is superior to and separate from Stephenson. (TT-3A, 92:8-93:7, 119:9-136:14; TT-3P, 3:22-12:7; Ex. 34.) As explained above, Mr. Williams relied on Stephenson, Gildea, or Khalessi for all claim limitations except for the third and fifth limitations of claim 18. And for those two limitations, Mr. Williams could have made the same arguments using one of those patents. For the third limitation, Mr. Williams (incorrectly) asserted that the limitation was satisfied by an ability to use "on-line help screens and tutorials" using DTX-101 at 10. (Ex. 35 (TT-3P, 134:9-136:14); Ex. 34, 20.) Even if that were true (which it is not, at least because it never addressed the claimed "program" that is accessed remotely), that same deficient disclosure appears in Stephenson. (*E.g.*, DTX-100, at 7:26-29, 10:29-53, claims 4, 32 (describing instructions being sent to the data collection device.) Similarly, for the fifth limitation, Mr. Williams (incorrectly) asserted that the limitation was satisfied by transmitting data from a van to the mainframe using DTX-406 at 6. (Ex. 36 (TT-3P, 5:14-6:23); Ex. 34, 24.) Even if that were true (which it is not, at least because, according to the claim, the data must be sent from the handheld device), that same deficient disclosure appears in Stephenson. (*E.g.*, DTX-100, 9:63-67 (discussing transmitting data from the van ("docking station") "to the central data storage facility").)

The only logical rationale behind Mr. Williams using those additional documents was to provide window dressing to avoid estoppel. Tellingly, Mr. Williams never explained to the jury the connection between Stephenson and DTX-406/DTX-101, why he selected any images from them, the context behind the images selected, or why DTX-406 and DTX-101 even are relevant to the system described in Stephenson. Remarkably, even though Mr. Bailey testified that the DADS Handheld was used allegedly as early as 1995, the DADS Handheld was not mentioned in Stephenson (dated 1997), in DTX-406 (dated 2015) or in DTX-36 (printed in 2017). Those documents could not corroborate Mr. Bailey's testimony that that device was ***ever*** in public use,

including in 1995, or that the DADS handheld was part of a single "system" (along with the other devices described in Stephenson). Thus, even if the Court finds that FedEx is not estopped from using DTX-101, that document simply cannot save FedEx because FedEx has provided no credible evidence that the DADS Handheld described therein ever existed, was in public use, or was part of the "system" that FedEx presented. Indeed, aside from the fact that the later documents never reference a "DADS Handheld" device, DTX-101 itself is marked as a draft—a fact that Mr. Bailey tried to hide from the jury during his direct examination. (TT-3A, 31:5-14; Ex. 40; Ex. 41, 12.)

Mr. Bailey also provided no other testimony to show that any of DTX-36, DTX-101, or DTX-406 is "separate from" or "superior to" Stephenson. He did not bring any components of the "Systems," or any software or source code to prove how any component operated. Mr. Bailey did not explain how the server operated or how the alleged system(s) utilized location information—both critical to the asserted claims. Despite being FedEx's only trial witness with alleged personal knowledge of the FedEx Prior Art Systems, Mr. Bailey's testimony simply identified what FedEx contended were relevant passages from Stephenson and supplemented those passages with thumbnail images from DTX-36, clip art and a flow chart from DTX-406, and an image from a portion of the cover of DTX-101. (Exs. 40, 41.) That minimal disclosure cannot suffice to show that any of those documents (or even his testimony) is separate from or superior to Stephenson.

At bottom, examination of Mr. Williams' testimony as to the validity of claims 1, 18, and 20 reveals several, fatal issues to sustaining the jury verdict (Dkt. 561.). But even further analysis of the trial record (in light of the '581 patent FWD from the PTAB) reveals that FedEx—via testimony from Mr. Bailey and Mr. Williams—merely used imagery from additional references (DTX-101, DTX-406, DTX-36) as an attempted means to shield FedEx from estoppel under 35 U.S.C. § 315(e). That attempt should be rejected, and estoppel provides a separate, independent

13

reason to grant IV's motion for JMOL and/or a new trial as to the '581 patent validity.

**2.      FedEx's '586 Patent Invalidity Challenges Are Based On Printed Publications That FedEx Raised Or Could Have Raised In Its IPR.**

At trial, FedEx (allegedly) presented four invalidity grounds against '586 patent claim 7: (a) *ANSI* § 102; (b) *ANSI* § 103; (c) *Multicode* § 103; and (d) *Multicode* + FedEx Prior Art Systems § 103. Because FedEx's only anticipation challenge was based on the *ANSI* document that FedEx actually used in its IPR that resulted in the FWD, under § 315(e)(2) the Court should vacate the judgment that claim 7 is anticipated. (*See* Dkt. 538 ¶ 2.)

The Court should similarly vacate the judgment that claim 7 is obvious because each of the three obviousness grounds reasonably could have been raised in the IPR. All three of FedEx's obviousness challenges rely on printed publications that FedEx ***actually knew about*** at the time it filed its initial IPR Petition. *ANSI* is a publication that FedEx raised in its initial IPR, and *Multicode* is a ***FedEx*** publication that FedEx raised in its follow-on IPR.[5] (Exs. 17, 26.) Thus, there can be no question that FedEx reasonably could have raised *ANSI* and *Multicode* in its initial IPR petition.[6]

Although FedEx referred to a FedEx Prior Art "System[]" (interNetShip) as its third ground, FedEx used that terminology to hide the fact that it was actually using two printed publications related to interNetShip, rather than the ***system*** itself (to avoid estoppel): a printed interNetShip manual (DTX-379) and an instructional video (DTX-299). (TT-3A, 25:2-5 ("[Q.] So the video and the DTX-379, those are the only documents you brought us today to describe the

---

[5] *Multicode* (DTX-254), titled "RPS Multicode Bar Code Label Guide," originated from "RPS," which was acquired by FedEx in 1998 and rebranded as defendant FedEx Ground.

[6] FedEx cannot now argue that its *ANSI* and *Multicode* challenges include a separate legal theory based on prior use that could not have been raised in IPR because that would directly contradict FedEx's earlier representations when opposing IV's motion to strike that undisclosed theory. (Dkt. 326, 3 ("The FedEx Defendants are ***not*** relying on the creation and dissemination of *ANSI* and *Multicode* to advance a separate, new legal theory based on prior use . . . .").)

interNetShip system, true?" A. That is correct.").). FedEx presented evidence that the manual and video were used to "instruct customers on how to use the interNetShip system" (TT-3A, 25:21-24), and were publicly accessible before the 2001 priority date of the '586 patent. (*See* TT-3A, 17:8-18:20 (testifying that DTX-379 was given to customers as early as 1996); TT-3P, 169:2-4 ("It is my understanding that this [DTX-379] was first made available to the public in 1996 . . . .").) A publicly accessible video qualifies as a printed publication for purposes of 35 U.S.C. §§ 102 and 103. *See, e.g.*, *Medtronic, Inc. v. Barry*, 891 F.3d 1368, 1371 (Fed. Cir. 2018); *In re Wyer*, 655 F.2d 221, 226-227 (C.C.P.A. 1981); *Intex Recreation Corp. v. Bestway Inflatables & Material Corp.*, Case IPR2016-00180, Paper 33 at 25 (May 26, 2017).

FedEx presented no evidence of the interNetShip system that was independent of the document and the video. Mr. Bailey's testimony entirely depended on the contents of the interNetShip manual itself. (*See* TT-3A, 17:21-11 ("Q. . . . ***Looking into the DTX-379***, . . . what exactly were the operations that could be performed using this interNetShip software system? . . . ."); TT-3A, 19:1-20:3 (referring to images in the interNetShip manual).)  The only other witness who mentioned interNetShip was FedEx's expert, who could not provide fact testimony about the functionality and relied, again, on the document and video.  (TT-3P, 169:8-170:1.)

FedEx cannot circumvent the estoppel provision of § 315(e)(2) by reframing two printed publications as evidence of the interNetShip "system." There is no evidence to support a conclusion that the interNetShip system is a "superior and separate" reference from the printed publications that FedEx relied on. *E.g.*, *Clearlamp*, 2016 WL 4734389, at *9; *Star Envirotech*, 2015 WL 4744394, at *4. And even if the Court determines that FedEx is not estopped from asserting the interNetShip system as prior art, FedEx should be estopped from presenting the manual and video as evidence of the system's functionality. *Biscotti*, 2017 WL 2526231, at *8.

DATED:   September 7, 2018                    Respectfully submitted,

                                             By: /s/ *Lauren M. Nowierski*

                                             William E. Davis, III
                                             Christian J. Hurt
                                             **THE DAVIS FIRM P.C**.
                                             213 N. Fredonia Street, Suite 230
                                             Longview, Texas 75601
                                             Telephone: (903) 230-9090
                                             Facsimile: (903) 230-9661
                                             bdavis@bdavisfirm.com
                                             churt@bdavisfirm.com

                                             Alan S. Kellman (*pro hac vice*)
                                             Lauren M. Nowierski
                                             Adam Steinmetz (*pro hac vice*)
                                             Kyle G. Petrie (*pro hac vice*)
                                             Jordan Malz (*pro hac vice*)
                                             Jennifer Przybylski (*pro hac vice*)
                                             **DESMARAIS LLP**
                                             230 Park Avenue
                                             New York, NY 10169
                                             (212) 351-3400 (Tel)
                                             (212) 351-3401 (Fax)
                                             akellman@desmaraisllp.com
                                             lnowierski@desmaraisllp.com
                                             asteinmetz@desmaraisllp.com
                                             kpetrie@desmaraisllp.com
                                             jmalz@desmaraisllp.com
                                             jprzybylski@desmaraisllp.com

                                             *Counsel for Plaintiff*
                                             *Intellectual Ventures II LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this the 7th day of September 2018.

<u>/s/ *Lauren M. Nowierski*</u>
Lauren M. Nowierski
