IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **INTELLECTUAL VENTURES II LLC,** | |
| **Plaintiff,** | |
| **v.** | |
| **FEDEX CORP., FEDERAL EXPRESS CORP., FEDEX GROUND PACKAGE SYSTEM, INC., FEDEX FREIGHT, INC., FEDEX CUSTOM CRITICAL, INC., FEDEX OFFICE AND PRINT SERVICES, INC., and GENCO DISTRIBUTION SYSTEM, INC. (d.b.a. FEDEX SUPPLY CHAIN DISTRIBUTION SYSTEM, INC.),** | Civil Action No. 2:16-cv-00980-JRG<br><br>JURY TRIAL DEMANDED |
| **Defendants.** | |

**DEFENDANTS' RESPONSE TO PLAINTIFF INTELLECTUAL VENTURES II LLC'S
SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR
JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b) AND MOTION FOR A
NEW TRIAL UNDER RULE 59**

## <u>TABLE OF CONTENTS</u>

I.   Section 315(e) does not prevent Defendants from refuting IV's attacks on the Court's invalidity judgment because Defendants no longer need to "assert . . . that the claim is invalid" to defend the judgment. ...........................................................................................3

II.  Section 315(e) does not prevent Defendants from defending their system-based prior art grounds because those grounds were not raised, nor could they have been, during an IPR proceeding. ...............................................................................................................5

    A.   '581 patent — IV's argument that the Court should exclude individual references contravenes the statute.................................................................................6

    B.   '581 patent — IV's "superior and separate" test is not the law and, in any event, is satisfied.............................................................................................8

    C.   '586 patent — IV entirely disregards evidence establishing the prior use of *ANSI, Multicode*, and interNetShip systems ...................................................9

        1.   IV ignores evidence on the *ANSI* and *Multicode* systems..................................9

        2.   Defendants properly relied on the interNetShip system.................................. 11

III. Even if Defendants were estopped from defending against IV's motions, the statute does not require—or authorize—the Court to disregard the jury's verdict. ........................................12

IV.  IV waived its estoppel argument by failing to timely raise it with the Court.........................14

V.   Defendants are not estopped from raising grounds never raised in an IPR petition. .............15

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Biscotti Inc v. Microsoft Corp.*,
   No. 2:13-cv-01015, 2017 WL 2526231 (E.D. Tex. May 11, 2017) ..........................................1

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
   508 U.S. 83 (1993) ....................................................................................................................13

*Dana Corp. v. NOK, Inc.*,
   882 F.2d 505 (Fed. Cir. 1989) ....................................................................................................5

*Delaval v. PTech Drilling Tubulars*,
   824 F.3d 476 (5th Cir. 2016) ....................................................................................................10

*Dugger v. Stephen F. Austin State Univ.*,
   232 F. Supp. 3d 938 (E.D. Tex. 2017) ........................................................................................2

*Intellectual Ventures I LLC v. Toshiba Corp.*,
   221 F. Supp. 3d 534 (D. Del. 2016) ..........................................................................................15

*Intellectual Ventures II LLC v. Kemper Corp.*,
   No. 6:16-CV-0081, 2016 WL 7634422 (E.D. Tex. Nov. 7, 2016) ..................................6, 7, 12

*Koninklijke Philips N.V. v. Wangs Alliance Corp.*,
   No. 14-12298, 2018 WL 283893 (D. Mass. Jan. 2, 2018) ........................................................15

*Ohio Willow Wood Co. v. Thermo-Ply, Inc.*,
   629 F.3d 1374 (Fed. Cir. 2011) ................................................................................................13

*Pers. Audio LLC v. Togi Entm't, Inc.*,
   No. 14-MC-80025, 2014 WL 1318921 (N.D. Cal. Mar. 31, 2014) .............................................3

*Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*,
   No. CV 12-1461, 2017 WL 6375173 (D. Del. Dec. 13, 2017) ...................................................4

*SAS Inst., Inc. v. Iancu*,
   138 S. Ct. 1348 (2018) .........................................................................................................7, 14

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
   778 F.3d 1311 (Fed. Cir. 2015) ..................................................................................................5

*Star Envirotech, Inc. v. Redline Detection, LLC*,
   No. 12-01861, 2015 WL 4744394 (C.D. Cal. Jan. 29, 2015) ..............................................8, 10

*State Farm Mut. Auto. Ins. Co. v. LogistiCare Sols, LLC*,
   751 F.3d 684 (5th Cir. 2014) .................................................................................................4, 5

*Timex V.I., Inc. v. United States*,
    157 F.3d 879 (Fed. Cir. 1998)..................................................................3

*United States v. Shanbaum*,
    10 F.3d 305 (5th Cir. 1994) ..................................................................4

*Versata Software, Inc. v. SAP Am., Inc.*,
    No. 2:07-cv-153, 2014 WL 1600327 (E.D. Tex. Apr. 21, 2014) ...........13

*Winston & Strawn, LLP v. McLean*,
    843 F.3d 503 (D.C. Cir. 2016)..................................................13

*W.L. Gore & Assoc., Inc. v. C.R. Bard, Inc.*,
    No. 11-515, 2017 WL 4231572 (D. Del. Sept. 20, 2017)...................13

*XY, LLC v. Trans Ova Genetics, L.C.*,
    890 F.3d 1282 (Fed. Cir. 2018)..................................................5

*Zitovault, LLC v. Int'l Bus. Machines Corp.*,
    No. 3:16-CV-0962, 2018 WL 2971178 (N.D. Tex. Apr. 4, 2018) ..........7

**STATUTES & RULES**

U.S. Const. amend. VII....................................................................13

35 U.S.C. § 282...........................................................................7

35 U.S.C. § 311.........................................................................5, 6

35 U.S.C. § 312...........................................................................7

35 U.S.C. § 315....................................................................*passim*

35 U.S.C. § 316..........................................................................14

35 U.S.C. § 321...........................................................................7

Fed. R. Civ. P. 50...............................................................2, 13, 14

Fed. R. Civ. P. 59..................................................................2, 14

157 Congr. Rec. 2710....................................................................3

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| IPR | *inter partes* review |
| JMOL | Judgment as a Matter of Law |
| Mot. | Plaintiff's Motion for Judgment as a Matter of Law Under Rule 50(b) and Motion for a New Trial Under Rule 59 (Dkt. 561) |
| Opp. | Defendants' Response to Plaintiff's Motion for Judgment as a Matter of Law Under Rule 50(b) and Motion for a New Trial Under Rule 59 (Dkt. 572) |
| Opp. Ex. | Exhibit to Defendants' Response (Dkt. 572) |
| TT-2P | Trial Transcript, Day 2, PM Session (Opp. Ex. 4) |
| TT-3A | Trial Transcript, Day 3, AM Session (Opp. Ex. 5) |
| TT-3P | Trial Transcript, Day 3, PM Session (Opp. Ex. 6) |
| TT-5A | Trial Transcript, Day 5, AM Session (Opp. Ex. 9) |

**TABLE OF EXHIBITS**

| Abbreviation | Meaning |
|---|---|
| Ex. 1 | Defendants' Invalidity Contentions, *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-cv-980 (E.D. Tex. Mar. 14, 2017) |
| Ex. 2 | Appendix D10 to Defendants' Invalidity Contentions, *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-cv-980 (E.D. Tex. Mar. 14, 2017) |
| Ex. 3 | Appendix D12 to Defendants' Invalidity Contentions, *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-cv-980 (E.D. Tex. Mar. 14, 2017) |
| Ex. 4 | Excerpts from Pretrial Hearing Tr. *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-cv-980 (E.D. Tex. Mar. 2, 2017) |
| DTX-092 | FedEx - ASTRA (Advanced Sorting Tracking Routing Assistance) Barcode and Label Format Specification Version 3.6 |
| DTX-100 | U.S. Patent No. 6,094,642 issued to Stephenson et al. |
| DTX-101 | FedEx - The Federal Express DADS Handheld - An Introduction DRAFT Version 1.2 |
| DTX-224 | FDX Corporation 1999 Annual Report |
| DTX-226 | New FedEx Ground Bar Code and Label Layout Specification |
| DTX-299 | Native File - Federal Express, Video "Intro to FedEx Ship & interNetShip" |
| DTX-376 | Ex. 36, Opening Expert Report of Dr. Hohberger |
| DTX-379 | Shipping the Internet Way — Now There's FedEx interNetShip |
| DTX-406 | Dispatch Work Station: An Overview, Version 1.0, Russ Johnson |

IV pushed this case to trial in May, months ahead of known statutory deadlines for the PTAB to issue final written decisions in pending *inter partes* review (IPR) proceedings involving the '581 and '586 patents. When opposing Defendants' motion to stay pending completion of the IPRs, IV argued that "allowing this case to proceed to trial is the ***fastest, most efficient, and most complete*** way to resolve ***all*** of the parties' disputes." Dkt. 112 at 15 (emphases added). As a result, before the PTAB rendered any final decision, the Court entered judgment that the '581 and '586 asserted claims were invalid. Now IV argues that § 315(e)(2) negates the trial it sought and received. But neither § 315(e)(2) nor any other authority supports IV's unprecedented position that the Court should (or can) set aside its final judgment based on later-issued agency decisions. To the contrary, the statute unequivocally does not apply to this case and provides no basis for disturbing the jury's verdict.[1]

*First*, § 315(e)(2) does not apply to IV's post-trial motion or Defendants' opposition. Section 315(e)(2) only precludes a petitioner from "assert[ing] . . . that the claim is invalid" after the final written decision issues. With the Court having rendered a judgment of invalidity before any final written decision, Defendants no longer need to "assert . . . that the claim is invalid." Instead, Defendants have only been explaining why IV's motion fails because the ***judgment is supported by the evidence*** and no other circumstances warrant a new trial. Section 315(e)(2) does not preclude Defendants from supporting the validity of the jury's verdict and the Court's judgment.

*Second*, § 315(e)(2) does not bar Defendants from defending the system-based prior art raised at trial. Section 315(e)(2) only bars "any ***ground*** that the petitioner raised or reasonably

---

[1] Defendants submit that IV's meritless request for supplemental briefing on this issue should be considered in connection with Defendants' pending motion for attorneys' fees. Dkt. 569.

could have raised during that [IPR]." Instead of basing its arguments on the **grounds** Defendants raised at trial—as the statute dictates—IV erroneously breaks each **ground** into the individual pieces of **evidence** and asserts that the statute allows the Court to ignore some pieces of evidence. But § 315(e) does not authorize dissecting the evidentiary underpinnings of a ground; it precludes only the ground itself. Moreover, the statute consistently distinguishes between grounds and the evidence in support of those grounds, confirming that IV's evidence-focused interpretation is incorrect. Here, Defendants' prior art grounds were systems that Defendants could not have presented in an IPR, as IV effectively acknowledges. Section 315(e)(2) does not apply.

*Third*, even if the Court concludes that the statutory language "assert . . that the claim is invalid" applies post-judgment and that Defendants are estopped from defending the Court's judgment during post-trial briefing, the statute does not require (or authorize) the Court to upend the jury verdict. The Court must evaluate IV's motion on the merits, considering the evidence and briefing *that IV admits was in this case prior to any alleged estoppel taking effect.* IV does not cite to any case supporting its position that the statute provides an alternative basis for granting its motion. No such case exists because IV's position is contrary to the statute, the Federal Rules of Civil Procedure, the U.S. Constitution, and the strong public interest in patent validity determinations.

*Fourth*, the Court should dismiss IV's new estoppel argument as waived. Despite being fully aware of this issue well before trial, IV did not raise it then, or within 28 days post-judgment, as required by Rules 50 and 59. IV continued to litigate its other challenges to the judgment but neglected this one until long after the deadline.[2]

---

[2] The Court should also deny as untimely IV's request for oral argument that was made for the first time in its supplemental brief. *See, e.g.*, *Dugger v. Stephen F. Austin State Univ.*, 232 F. Supp.

I.    **Section 315(e) does not prevent Defendants from refuting IV's attacks on the Court's invalidity judgment because Defendants no longer need to "assert . . . that the claim is invalid" to defend the judgment.**

Section 315(e) does not apply to the post-trial briefing because Defendants are not "assert[ing] . . . that the claim is invalid" after the final written decisions issued. Section 315(e)(2) bars a defendant only from "assert[ing] . . . that the claim is invalid." As IV concedes, this estoppel does not take effect until after the PTAB issues its final written decision. Dkt. 589 at 5; *see also Pers. Audio LLC v. Togi Entm't, Inc.*, No. 14-MC-80025, 2014 WL 1318921, at *2-3 (N.D. Cal. Mar. 31, 2014). By the time the PTAB issued the final written decisions for the '581 and '586 patents, the Court had already entered judgment of invalidity pursuant to the jury's verdict. Now, Defendants need no longer "assert . . . that the claim is invalid." Instead, Defendants are responding to IV's attack on that judgment. In doing so, Defendants are explaining how the evidence supports the jury's verdict and that no other circumstances necessitate a new trial. *See* Dkts. 572, 580. The statute does not preclude Defendants from presenting these points post-judgment.

IV ignores the statute's clear language, which is dispositive. "Because a statute's text is Congress's final expression of its intent, if the text answers the question, that is the end of the matter." *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998).

Instead of addressing the statutory language, IV quotes snippets of the legislative history, which only confirm that Defendants' interpretation is correct. For example, IV cites Senator Grassley's comment that the IPRs "would also provide faster less costly alternatives to civil litigation." Dkt. 589 (quoting 157 Congr. Rec. 2710). But the IPR process here was not "faster and

---

3d 938, 957 (E.D. Tex. 2017) (Bryson, J.) (deeming issues not raised in an opening brief waived). This is particularly true with respect to the noninfringement judgments which are irrelevant to IV's supplemental brief. The Court need not hold oral hearing on invalidity either, because estoppel does not apply based on the plain language of the statute—an issue that IV did not address in its supplemental brief and that it should not be allowed to address for a first time at oral argument.

less costly," due at least in part to IV's actions. Indeed, when opposing Defendant's motion to stay, IV argued :

> Because this case is ahead of the IPRs, **the fastest, most complete, and most efficient way to resolve the parties' disputes is to let this case proceed to trial**. **The Court can resolve** claim construction, **validity**, and infringement by May 2018, instead of waiting for months (if not years) for the PTAB and Federal Circuit to address a small fraction of FedEx's invalidity theories.

Dkt. 112 at 12 (emphases added). The Court agreed; a jury was empaneled and, after four days of hearing evidence, reached its unanimous verdict; and the Court entered judgment in May—all before the PTAB issued its final written decisions in July and August.

IV cannot now rely on § 315(e) to undo the jury's work and the Court's corresponding judgment. To accept IV's argument that Defendants are now estopped from defending that judgment would mean a defendant cannot defend a prior judgment, even if the final written decision comes much later, such as on appeal to the U.S. Supreme Court. This cannot be what Congress intended; nor has IV presented any statutory text or Congressional record to support such a position.

IV's secondary argument that the statutory estoppel of § 315(e) is "analogous" to or "consistent with" "collateral estoppel," Dkt. 589 at 5 n.2, is wrong and does not change the result. The statutory text plainly prohibits something different than collateral estoppel. "Issue preclusion is not the same as the statutory estoppel provision." *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, No. CV 12-1461-LPS-CJB, 2017 WL 6375173, at *3 (D. Del. Dec. 13, 2017). On the one hand § 315(e)(2) prohibits a defendant from "assert[ing] . . . that the claim is invalid" in a limited circumstance. On the other hand, collateral estoppel "prohibits a party from seeking another determination of the litigated issue in a subsequent action." *State Farm Mut. Auto. Ins. Co. v. LogistiCare Sols, LLC*, 751 F.3d 684, 689 (5th Cir. 2014) (quoting *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994)). Collateral estoppel thus focuses on the identity of the ultimate

*determination* of the issue in the two actions, whereas § 315(e)(2) focuses on the defendant's specific assertion at the time. Collateral estoppel also does not apply here because the prior art grounds in the IPRs were different than—not identical to—the prior art challenges in this Court. *See State Farm*, 751 F.3d at 689 (requiring issues to be "identical" for collateral estoppel to apply). Moreover, none of the three cases IV cites in footnote 2 is relevant because each case stands for the unremarkable proposition that collateral estoppel bars a patentee from asserting an already invalidated patent. *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294-95 (Fed. Cir. 2018); *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1315 (Fed. Cir. 2015); *Dana Corp. v. NOK, Inc.*, 882 F.2d 505, 507-08 (Fed. Cir. 1989).

IV ignores the plain language of § 315(e), which only precludes a defendant from asserting that a claim is invalid after a final written decision has issued. Because that issue has already been decided by the jury and incorporated into the Court's judgment, and is not the subject of post-trial briefing, § 315(e) does not apply.

## II.   Section 315(e) does not prevent Defendants from defending their system-based prior art grounds because those grounds were not raised, nor could they have been, during an IPR proceeding.

Defendants' system-based prior art grounds are not subject to § 315's estoppel provision because they were not, and could not have been, raised in IPRs, which are limited to "prior art consisting of patents or printed publications." 35 U.S.C. § 311. At trial, Defendants presented system-based prior art grounds to invalidate the '581 and '586 patents—which IV recognized in its Response to Defendants' Motion to Stay "are ***not*** subject to estoppel." Dkt 112 at 10 (emphasis added). Indeed, this Court has recognized that defendants are not estopped from raising prior art systems even if those systems are embodied by patents or printed publications:

> Regardless of any estoppel, defendants have considerable latitude in using prior art systems (for example, software) embodying the same patents or printed

publications placed before the PTO in IPR proceedings. . . . This ability to raise such prior art systems in a subsequent district court litigation is ***always*** present.

*Intellectual Ventures II LLC v. Kemper Corp.*, No. 6:16-CV-0081, 2016 WL 7634422, at *3 (E.D. Tex. Nov. 7, 2016) (emphasis added).

IV now argues that Defendants' system-based grounds are publication-based grounds in disguise. Dkt. 589 at 7. Not so. Defendants' grounds were based on underlying evidence, including testimony from FedEx employees, nonpublic documents, and business records, which could not have formed the evidentiary basis for an IPR ground. Defendants' system-based prior art grounds could not have been presented in the IPRs because—as IV concedes—they consisted of more than patents and printed publications. 35 U.S.C. § 311.

## A.   '581 patent — IV's argument that the Court should exclude individual references contravenes the statute

IV's argument that the Court should dissect Defendants' system-based grounds into their individual evidentiary bases, effectively excluding all of the prior art evidence because one piece happens to qualify as a patent or printed publication, contradicts the statute. For example, IV argues that Defendants should not be allowed to use the *Stephenson* patent to show the functionality of the FedEx prior art systems. Section 315(e) provides no basis for this exclusion. Section 315(e) prevents the petitioner from asserting that the claim is invalid based on "any ***ground*** that the petitioner raised or reasonably could have raised" in an IPR. But the statue limits IPRs to be "only on a ***ground*** that could be raised under section 102 or 103 and only on the basis of prior art ***consisting of patents or printed publications***." 35 U.S.C. § 311(b) (emphases added). The trial invalidity ground for the '581 patent is the FedEx prior art systems, which did not consist of patents or printed publications because it also included testimony from Mr. Bailey (TT-2P, 211:5-225:17, TT-3A, 6:24-17:3), and two documents that IV has already argued were not prior art printed publications (DTX-101, DTX-406). Mot. at 7. This evidence could not have been used in an IPR

and thus the ***ground*** as a whole could not have been used in an IPR because it would not have consisted of patents or printed publications.

The surrounding sections confirm that § 315 allows or disallows ***grounds*** but does not endorse picking apart the supporting ***evidence***. Section 312(a)(3) distinguishes between "grounds" and "evidence that supports the grounds." Moreover, § 321(b) and cross-referenced § 282(b) make clear that the "ground" is the statutory challenge to the claim and not the evidence upon which that challenge relies. Indeed, in *SAS Inst., Inc. v. Iancu*, the Supreme Court recognized the AIA's distinction between "the grounds for the challenge, and the evidence supporting the challenge." 138 S. Ct. 1348, 1353 (2018). This surrounding textual support confirms that § 315(e)(2)'s reference to grounds only prohibits a particular IPR-eligible ground and does not support picking apart pieces of evidence supporting an IPR-ineligible system-based ground.[3]

Moreover, the record demonstrates that Defendants' FedEx prior art systems ground was entirely different from Defendants' *Stephenson*-based ground. Defendants invalidity contentions, for example, included one chart for invalidity grounds based on *Stephenson* as a reference. Ex. 2. Defendants then presented a separate chart for invalidity grounds based on the FedEx prior art systems. Ex. 3. While the FedEx prior art systems chart includes citations to *Stephenson* as evidence supporting the public use and features of the FedEx prior art systems, the charts

---

[3] To the extent IV argues that *Biscotti Inc v. Microsoft Corp.* suggests a different outcome, Defendants respectfully submit that such an outcome would be contrary to the statute and urge the Court to consider the scope of this estoppel in light of the controlling statutory language. Further, Defendants note that both the Northern District and this Court have rendered opinions supporting Defendants' interpretation. *See Zitovault, LLC v. Int'l Bus. Machines Corp.*, No. 3:16-CV-0962-M, 2018 WL 2971178, at *4 (N.D. Tex. Apr. 4, 2018) ("Plaintiff responds that the 'accused infringer cannot avoid statutory estoppel simply by relying on a system where all of the teachings of the system also exist in patents or printed publications because that ground reasonably could have been raised during the IPR.' This argument has been rejected in at least two prior cases, including one from this Court.") (citations omitted); *see also Intellectual Ventures II LLC v. Kemper*, No. 6:16-CV-0081, 2016 WL 7634422, at *3 (E.D. Tex. Nov. 7, 2016).

demonstrate that grounds are different. Moreover, at trial, Mr. Williams made clear that his opinion that the FedEx Prior Art Systems invalidated the asserted claims was based on his review of not only *Stephenson*, but also other information, including the testimony of Mr. Bailey and other documents. *E.g.*, TT-3A, 121:5-122:17. Again, IV presented no argument or evidence at trial that contradicted Mr. Williams' testimony.

### B.    '581 patent — IV's "superior and separate" test is not the law and, in any event, is satisfied[4]

IV's other argument (also based on its misinterpretation that § 315 allows a court to dissect a prior art ground) that Defendants "must" show that the other documents are "superior to" and "separate from" *Stephenson* (Dkt. 589 at 7, 11), has no basis in the law. These words do not appear in the statute. Instead, the "superior" and "separate" language comes from a discussion of the particular facts in *Star Envirotech, Inc. v. Redline Detection, LLC*, No. 12-01861, 2015 WL 4744394, at *4 (C.D. Cal. Jan. 29, 2015). But significantly, that case never holds that documents ***must*** be superior and separate to avoid estoppel. *Id.* IV is wrong to suggest otherwise.

Nonetheless, Defendants' documents, including at least DTX-101 and DTX-406, meet IV's false requirement. First, each document is entirely separate from *Stephenson*. Second, each document teaches features of the FedEx Prior Art systems that *Stephenson* does not. For example, DTX-101 describes the DADS Handheld functionality in detail, expressly states that the DADS Handheld combined the functionality of the DADS Terminal and the SuperTracker, and corroborates Mr. Bailey's testimony that the DADS Handheld was used in public. DTX-101 at 2; Dkts. 572 at 11-16, 580 at 5-6. Likewise, DTX-406 describes a step-by-step process for sending

---

[4] IV's "superior to" or "separate from" section improperly rehashes its arguments that Defendants provided inadequate corroborating evidence for Mr. Bailey's testimony, which is outside the scope of the supplemental briefing agreed to by the parties and authorized by the Court and should be ignored. Dkt. 589 at 11-14.

dispatch information to a courier and receiving information from the courier. DTX-406 at 5-6.

Thus, Defendants' additional documents pass IV's invented and statutorily impermissible test.

### C.    '586 patent — IV entirely disregards evidence establishing the prior use of *ANSI, Multicode*, and interNetShip systems[5]

At trial, Defendants explained how systems embodying *ANSI*, *Multicode*, and interNetShip were in public use before the '586 patent's priority date. IV's supplemental brief never confronts this evidence. Instead, IV wrongly assumes that Defendants relied only on printed publications (a position the Court has already rejected) and advances its flawed "superior and separate" test. Neither argument succeeds.

### 1.    IV ignores evidence on the *ANSI* and *Multicode* systems

Defendants relied on the prior use of *ANSI* and *Multicode* systems as prior art against the '586 patent. IV ignores the prior use prong of this invalidity ground, assuming without explanation that Defendants relied on *ANSI* and *Multicode* solely as printed publications. Dkt. 589 at 14. This premise is wrong because, as IV knows, the Court **expressly denied** IV's prior attempt to limit *ANSI* and *Multicode* to printed publications in this way. *See* Dkt. 506 at 2-3. In doing so, the Court unequivocally allowed Defendants to rely on the prior uses of these systems at trial.[6] *Id.* Further, the Court admitted some exhibits like DTX-376 for the **sole purpose** of establishing *ANSI* and *Multicode*'s prior use. *See* Ex. 4 at 120:4-18, 121:24-122:12. Defendants did so, adducing

---

[5] As it did for the '581 patent, IV's '586 patent arguments improperly repeat its arguments that Defendants provided inadequate evidence to demonstrate invalidity, which is outside the scope of the supplemental briefing agreed to by the parties and authorized by the Court and should be ignored. Dkt. 589 at 14-15.

[6] As the Court noted, Defendants' made clear even in their invalidity contentions that they were not relying on *ANSI* and *Multicode* only as prior publications. Dkt. 506 at 2-3. The same applies for the interNetShip system. Indeed, Defendants' invalidity contentions expressly characterized each of *Multicode* and *interNetShip* as prior art "system[s]" that were "publicly known, in public use, and offered for sale . . . ." Ex. 1 at 12-13.

testimony that DTX-376 "demonstrates the prior use of ANSI . . . [and] Multicode." *See, e.g.*, TT-3P, 185:23-186:6. Voluminous other evidence confirms the prior use of these systems. *See, e.g.*, TT-3P, 47:17-48:1, 50:9-52:8, 52:15-54:12, 55:25-57:2, 57:10-59:9, 59:12-60:23, 61:3--64:16, 67:13-68:11, 70:16-71:21, 73:7-20, 74:3-77:3, 173:16-176:7, 177:17-179:4, 179:15-180:3, 180:24-182:12, 183:2-12, 183:19-186:6. IV ignores all of it.[7] IV's position in its supplemental brief also contradicts its statements in its motion, where it acknowledged that Defendants raised an "*ANSI* prior use theory" and a "*Multicode* prior use theory." Mot. at 35.

IV also never disputes that the *ANSI* and *Multicode* systems are "superior and separate" from the printed publications describing them (thereby waiving any argument to the contrary). But even if IV had taken such a position, it would fail. First, the law does not impose a "superior and separate" requirement at all. As explained above, IV generated this test from a faulty reading of *Star Envirotech*, an out-of-circuit opinion having no such holding. Second, even if a "superior and separate" requirement existed, Defendants' evidence meets the test. Defendants presented various other internal documents, such as DTX-226 and DTX-376, which are "separate" from *ANSI* and *Multicode*. These documents confirm beyond question that *ANSI* and *Multicode* systems were used

---

[7] In a footnote, IV erroneously argues that Defendants abandoned its prior use theories for *ANSI* and *Multicode*. Dkt. 589 at 14 n.6. IV is wrong. Defendants stated only that these theories were not "new" because they were timely disclosed. *See* Dkt. 326 at 1. The Court agreed. *See* Dkt. 506 at 2-3. And even if IV's interpretation were correct (it is not), the statement IV cites pertains only to the "creation and dissemination" of the *ANSI* and *Multicode* **printed publications**, not entire ecosystems implementing *ANSI* and *Multicode*. The prior uses of these systems were always available as invalidity theories. *See* Dkt. 506 at 2-3 ("FedEx disclosed that the ANSI and Multicode references applied to invalidity contentions **not just under the prior publication clauses**, but under several prongs of § 102 [including prior use]." (emphasis added)). Indeed, the Court preadmitted of DTX-376 solely for the purpose of establishing prior use. Ex. 4 at 120:4-18, 121:24-122:12. This ruling would have been nonsensical if Defendants were precluded from raising a prior use invalidity ground. Indeed, IV acknowledged during the same hearing that Defendants could raise prior use at trial. *Id.* at 120:23-121:18. IV's argument is also waived for being relegated to a footnote. *See Delaval v. PTech Drilling Tubulars*, 824 F.3d 476, 479 n.2 (5th Cir. 2016).

in public—more so than the *ANSI* and *Multicode* printed publications might imply on their faces—and further corroborate witness testimony on this point. *See, e.g.*, TT-3P, 71:22-72:13, 73:7-77:3, 183:13-184:7, 185:17-186:6. Thus, Defendants' additional documents satisfy IV's invented and incorrect legal standard.

### 2.     Defendants properly relied on the interNetShip system

IV concludes by arguing that Defendants did not rely on interNetShip as a system and instead relied only on two printed publications to explain its features. Dkt. 589 at 14-15. This too is wrong. In addition to Mr. Bailey's oral testimony about the interNetShip system (*see, e.g.*, TT-2P, 218:7-16, 219:11-25; TT-3A, 20:19-21:16, 22:2-10, 41:11-19), Defendants also relied on several other documents substantiating features of interNetShip. For example, nonpublic document DTX-92 (discussed by Mr. Bailey) describes the content of the ASTRA barcodes encoded on interNetShip labels. *See, e.g.*, TT-3A, 20:19-21:16. Defendants' technical expert Mr. Ackley used this information to explain how interNetShip encoded data tags and data items in its barcodes. *See, e.g.*, TT-3P, 176:8-177:16. Because DTX-92 was confidential (*see* DTX-92 at 2), Defendants could not have used it in an IPR and thus could not have described the content of the interNetShip barcodes to the Patent Office. As another example, DTX-224 (also discussed by Mr. Bailey) established how interNetShip earned the Computerworld Smithsonian Award for its shipping functionalities. *See, e.g.*, TT-3A, 22:12-23:2. This evidence corroborates Mr. Bailey's testimony and further evidences interNetShip's actual use prior to the priority date. Other documents, such as DTX-226, show the types of labels interNetShip generated after Defendants acquired RPS in 1999 (renamed FedEx Ground). *See, e.g.*, TT-3A, 22:2-10; TT-3P, 46:6-9, 70:16-20, 71:12-72:11, 183:8-186:6. In sum, this additional evidence renders the interNetShip system "superior and separate" from the two printed publications IV points to in its motion (a requirement contravening the plain language of the statute that need not be satisfied).

IV is therefore simply wrong when it asserts that Defendants relied solely on "a printed interNetShip manual (DTX-379) and an instructional video (DTX-299)" to describe the features and use of the interNetShip system. Dkt. 589 at 14. IV once again overlooks all of the other documents and evidence presented at trial. Finally, as it did with the '581 patent, IV summarily asks the Court to estop Defendants from using DTX-299 and DTX-379 in their entirety as evidence in the case. Dkt. 589 at 15. But as explained above, the statute expressly distinguishes **grounds** from **evidence** and estops only the former. *See* 35 U.S.C. § 315(e)(2). Nowhere does the statute contemplate estopping Defendants from using patents and printed publications as **evidence** for its system-based prior art grounds "always present" in district court litigation. *See Intellectual Ventures II v. Kemper*, 2016 WL 7634422, at *3.

### III.   Even if Defendants were estopped from defending against IV's motions, the statute does not require—or authorize—the Court to disregard the jury's verdict.

IV's bald assertion that § 315(e) "provides an independent basis for the Court to **grant** IV's Motion regarding invalidity," Dkt. 589 at 5 (emphases added), is unprecedented and unsupported by the statute or case law. IV's assertion also contravenes the Federal Rules of Civil Procedure, the U.S. Constitution, and the strong public interest in deciding issues of patent validity.

First, the statute only precludes a **petitioner** from asserting that a claim is invalid. It does not preclude **the Court** from upholding a jury verdict that is supported by the evidence of record—evidence that IV admits was introduced before any estoppel that it alleges.[8] The statute does not divest this Court of the authority to review the evidence at trial, or of its duty to confirm the jury's

---

[8] IV admits that estoppel does not take effect until the final written decision, which issued after all evidence was presented at trial. Dkt. 589 at 5. Thus, at most, the statute would preclude Defendants from making arguments after the Board's decisions issued in July and August, and not before. The briefing on IV's motion was also complete before the PTAB rendered its final written decision in the '586 patent, and the briefing was complete except for FedEx's sur-reply when the PTAB rendered its final written decision in the '581 patent.

verdict if IV fails to meet its high burden of establishing that it is entitled to JMOL or a new trial. Even if IV's motion were unopposed, the Court should review it on the merits: "Notwithstanding the lack of opposition to the JMOL motion, the Court must nonetheless apply the same legal standards, and the lack of opposition does nothing to erase the substantial evidence that was presented at trial, and which fully justifies the jury verdict." *W.L. Gore & Assoc., Inc. v. C.R. Bard, Inc.*, No. 11-515-LPS, 2017 WL 4231572, at *1 (D. Del. Sept. 20, 2017); *see also Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 506-08 (D.C. Cir. 2016) (striking local rule that treated unopposed summary judgment motions as "conceded"). Indeed, Rule 50 allows the Court to grant JMOL only "if . . . the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a).

IV's unprecedented reading of § 315(e) as providing a reason for the Court to ***overturn*** the jury's verdict based on an agency's subsequent decisions also violates the separation of powers and Defendants' Seventh Amendment right to a jury trial. "To hold that later proceedings before the PTAB can render nugatory [the trial court's invalidity judgment], and the time and effort of all of the judges and jurors who have evaluated the evidence and arguments would do a great disservice to the Seventh Amendment and the entire procedure put in place under Article III of the Constitution." *Versata Software, Inc. v. SAP Am., Inc.*, No. 2:07-cv-153, 2014 WL 1600327, at *2 (E.D. Tex. Apr. 21, 2014) (denying request to vacate judgment under Rule 60(b) in light of PTAB's later determination of invalidity).

Finally, IV's request violates the traditionally recognized public interest in invalidating bad patents. "In a patent case, especially where a patent has been invalidated, the public interest is overwhelming." *Ohio Willow Wood Co. v. Thermo-Ply, Inc.*, 629 F.3d 1374, 1376 (Fed. Cir. 2011) (Moore, J., concurring); *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 100 (1993)

13

(discussing the "strong public interest in the finality of judgments in patent litigation," especially "questions of patent validity"). The jury found each asserted claim of the '581 and '586 patent invalid based on prior art systems that existed long before these patents were filed. The jury's verdict demonstrates that these claims never should have issued, and the public is entitled to rely on that finding that came after the expenditure of great resources on behalf of the jurors, the Court, and both parties. Section 315(e) provides no basis to discard that verdict.

Section 315(e) does not authorize or require the Court to overturn the jury's verdict based on the subsequent issuance of a PTAB final written decision. The Court should decide IV's motion on the merits. Even if the Court decides that Defendants were estopped from advancing their positions after the final written decisions, all evidence was entered and nearly all briefing was complete before those decisions issued, and the Court should take them into account.

## IV.   IV waived its estoppel argument by failing to timely raise it with the Court.

The Court should also reject IV's arguments in its supplemental briefing because they came too late. IV did not include the § 315(e) estoppel issue in its Rule 50(a) motion, nor did it include this issue in its initial briefing under Rules 50(b) or 59. Thus, IV did not raise this issue in the time prescribed by the rules. Fed. R. Civ. P. 50, 59 (28 days to file renewed JMOL and new trial motions). Nor did IV object to the jury instructions defining prior art as including products and systems or to the general jury verdict form on invalidity. TT-5A, 31:12-32:2; Dkt. 535 at 4.

IV failed to timely raise this issue despite knowing about it before trial. IV knew before trial that the Board was required to issue final written decisions by July 25 ('581 patent) and August 10 ('586 patent), absent a rarely invoked six-month extension. 35 U.S.C. § 316(a)(11). IV also knew at least as of the Board's May 10 and May 11 orders that the Board's final written decision was going to address all challenged claims in view of *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348 (2018). Dkts. 589-11, -12. Thus, IV knew or should have known at trial that it was going to raise

14

this issue, but it did not raise it with the Defendants or the Court until months later. The Court can deny IV's new request based on waiver alone.

Moreover, at trial IV never raised or provided evidence to support its argument that Defendants' system-based evidence is not "superior to" and "separate from" the printed publication evidence nor that Defendants' system-based evidence was, in fact, printed publication evidence, despite being aware of Defendants' prior art grounds and supporting evidence before trial. Defendants first outlined their invalidity grounds over a year ago in their invalidity contentions. Defendants then served expert reports setting forth the evidence supporting those the invalidity grounds. And then Mr. Williams and Mr. Ackley testified at trial about these invalidity grounds. IV provided no rebuttal at trial and never offered any report, evidence, or testimony relevant to its "superior and separate" test or its argument that Defendants' system-based ground was a printed-publication ground in disguise. IV thus also waived these arguments.

## V.   Defendants are not estopped from raising grounds never raised in an IPR petition.

Although this Court has held otherwise, multiple districts have held that prior art grounds not raised in a previously instituted IPR do not fall within the scope of § 315(e). *See, e.g.*, *Koninklijke Philips N.V. v. Wangs Alliance Corp.*, No. 14-12298, 2018 WL 283893, at *3-4 (D. Mass. Jan. 2, 2018) (holding that invalidity grounds included in invalidity contentions but not raised in an IPR petition were not subject to estoppel); *Intellectual Ventures I LLC v. Toshiba Corp.*, 221 F. Supp. 3d 534, 553-54 (D. Del. 2016) (holding that there was no "reasoned way around the Federal Circuit's interpretation in *Shaw*" that would support applying estoppel to non-petitioned grounds). Defendants contend that they are not estopped from presenting any prior art ground not presented in a previously instituted IPR, and the grounds IV complains about were not presented in a previously instituted IPR. This provides another reason to deny IV's requested relief.

Dated: September 21, 2018

/s/ Jeffrey A. Berkowitz
Jeffrey A. Berkowitz (VA Bar No. 65149)
 Email: jeffrey.berkowitz@finnegan.com
Elliot C. Cook (pro hac vice)
 Email: elliot.cook@finnegan.com
John Derek McCorquindale
 Email: derek.mccorquindale@finnegan
Michael V. Young, Sr. (pro hac vice)
 Email: michael.young@finnegan.com
Daniel C. Tucker (pro hac vice)
 Email: daniel.tucker@finnegan.com
Joseph M. Schaffner (pro hac vice)
 Email: joseph.schaffner@finnegan.com
Alexander M. Boyer (pro hac vice)
 Email: alexander.boyer@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive, Suite 800
Reston, VA 20190-5675
(571) 203-2700
Fax: 202-408-4400

Gerald F. Ivey (pro hac vice)
 Email: gerald.ivey@finnegan.com
Aliza George Carrano (VA Bar No. 78510)
 Email: aliza.carrano@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000
Fax: (202) 408-4400

Eric H. Findlay (Bar No. 00789886)
 Email: efindlay@findlaycraft.com
Roger B. Craft (Bar No. 0004972020)
 Email: bcraft@findlaycraft.com
FINDLAY CRAFT, P.C.
102 North College Avenue, Suite 900
Tyler, TX 75702
(903) 534-1100
Fax: (903) 534-1137

**Attorneys for Defendants FedEx Corp.,**

**Federal Express Corp., FedEx Ground Package System, Inc., FedEx Freight, Inc., FedEx Custom Critical, Inc., FedEx Office and Print Services, Inc., and GENCO Distribution System, Inc. (d.b.a. FedEx Supply Chain Distribution System, Inc.)**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on September 21, 2018, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Jeffrey A. Berkowitz*
Jeffrey A. Berkowitz